G:\docs\P3323\0705775.DOC

Ronald F. Remmel  (#87628)
Lenell Topol McCallum  (#84024)
NEWTON REMMEL
A Professional Corporation
1451 Grant Road, P.O. Box 1059
Mountain View, CA  94042
Telephone:  (650) 903-0500
Facsimile:  (650) 967-5800

Email: rremmel@newtonremmel.com
          lmccallum@newtonremmel.com

Attorneys for Defendant
FEDERAL INSURANCE COMPANY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| SECOND WALNUT CREEK MUTUAL, | Case No.:  C08-02874 CW |
| Plaintiff, | **CERTIFICATE OF SERVICE OF NOTICE TO ADVERSE PARTY OF REMOVAL TO FEDERAL COURT AND OTHER DOCUMENTS AS LISTED** |
| vs. | |
| TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA, FEDERAL INSURANCE COMPANY and DOES 1 through 20, inclusive, | |
| Defendants. | |

The undersigned certifies and declares as follows:

I am over the age of 18 years and not a party to this action.

My business address is 1451 Grant Road, Mountain View, California 94040, where the mailing described below took place.

On June 11, 2008, I deposited in the United States Mail at Mountain View, California, a copy of the following documents to the parties listed below:

/////
/////
/////
/////

CERTIFICATE OF SERVICE OF NOTICE TO ADVERSE PARTY OF REMOVAL TO FEDERAL COURT - 1

G:\docs\P3323\0705775.DOC

| | |
|---|---|
| Attorneys for Plaintiff SECOND WALNUT CREEK MUTUAL | Michael J. Hughes, Esq.<br>Hughes & Gill, P.C.<br>1600 South Main Street, Suite 315<br>Walnut Creek, CA 94596<br>Telephone; (925) 926-1200<br>Fax: (925) 926-1202<br>Email: mhughes@hughes-gill.com |
| Attorneys for Defendant TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA | Marjie D. Barrows, Esq.<br>Rudloff Wood & Barrows LLP<br>Watergate Office Towers<br>2000 Powell Street, Suite 900<br>Emeryville, CA 94608<br>Phone: (510) 740-1500<br>Fax: (510) 740-1501<br>Email: mbarrows@rwblaw.com |

1.      Notice to Adverse Party of Removal to Federal Court dated June 10, 2008, filed in the Superior Court of California, County of Contra Costa, Action No. C-08-00998;

2.      Demand for Jury Trial;

3.      Notice of Interested Parties;

4.      Civil Cover Sheet;

5.      Order Setting Initial Case Management Conference and ADR Deadlines;

6.      Notice re Motion Schedule and Standing Order for All Judges of the Northern District of California;

7.      Location Guide to Court Offices – Oakland Federal Building;

8.      Public Notice re Magistrate Judge – U.S. District Court, Northern District of California;

9.      U.S. District Court Northern California – ECF Registration Information Handout; and

10.     Brochure entitled "Consenting to a Magistrate Judge's Jurisdiction in the Northern District of California."

Copies of the above listed documents are attached to this Certificate.

G:\docs\P3323\0705775.DOC

1    I declare under penalty of perjury under the laws of the State of California that the

2    foregoing is true and correct. Executed on June 11, 2008, at Mountain View, California.

3

4    _____

     Elise Dresser

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

G:\docs\P3323\0705773.DOC

1 | Ronald F. Remmel  (#87628)
Lenell Topol McCallum  (#84024)
2 | NEWTON REMMEL
A Professional Corporation
3 | 1451 Grant Road, P.O. Box 1059
Mountain View, CA  94042
4 | Telephone:  (650) 903-0500
Facsimile:  (650) 967-5800
5 |
Email:  rremmel@newtonremmel.com
6 |       lmccallum@newtonremmel.com

7 | Attorneys for Defendant
FEDERAL INSURANCE COMPANY

8 |

F I L E D

JUN 1 1 2008

R. TORRE CLERK OF THE COURT
SUPERIOR COURT OF THE STATE OF CALIFORNIA
COUNTY OF CONTRA COSTA

By_____, Deputy Clerk

9 |              SUPERIOR COURT OF THE STATE OF CALIFORNIA

10 |              IN AND FOR THE COUNTY OF CONTRA COSTA

11 |

12 | SECOND WALNUT CREEK MUTUAL,        ) Case No. C-08-00998
                                      )
13 |            Plaintiff,             ) **NOTICE TO ADVERSE PARTY OF**
                                      ) **REMOVAL OF ACTION TO FEDERAL**
14 |       vs.                         ) **COURT**
                                      )
15 | TRAVELERS PROPERTY CASUALTY       )
COMPANY OF AMERICA; FEDERAL           )
16 | INSURANCE COMPANY, and DOES 1     )
through 20, inclusive                 )
17 |                                   )
            Defendants.               )
18 |                                   )

19 | ────────────────────────────

20 | TO PLAINTIFF SECOND WALNUT CREEK MUTUAL AND TO ITS ATTORNEYS OF
RECORD:

21 |       PLEASE TAKE NOTICE that a Notice of Removal of this action was filed in the

22 | United States District Court for the Northern District of California on June 9, 2008, under

23 | Federal Case No. CV 08-02874 CW.  A copy of said Notice of Removal is attached to this

24 | Notice as Exhibit A, and is served and filed herewith.

25 | Dated: June 10, 2008                  NEWTON REMMEL

26 |

27 |                                       By:_____

28 |                                          Ronald F. Remmel
                                             Attorneys for Defendant
                                             FEDERAL INSURANCE COMPANY

NOTICE TO ADVERSE PARTY OF REMOVAL OF ACTION TO FEDERAL COURT - 1

**EXHIBIT A**



G:\docs\P3323\0705767.DOC

1   Ronald F. Remmel  (#87628)
    Lenell Topol McCallum  (#84024)
2   NEWTON REMMEL
    A Professional Corporation
3   1451 Grant Road, P.O. Box 1059
    Mountain View, CA  94042
4   Telephone:  (650) 903-0500
    Facsimile:  (650) 967-5800
5
    Email:  rremmel@newtonremmel.com
6           lmccallum@newtonremmel.com
7   Attorneys for Defendant
    FEDERAL INSURANCE COMPANY
8
9
                    UNITED STATES DISTRICT COURT
10
                    NORTHERN DISTRICT OF CALIFORNIA
11
                              SAN FRANCISCO
12
13  SECOND WALNUT CREEK MUTUAL,          Case No.:  CV 08 2874
14                                        )
            Plaintiff,                     )   [Contra Costa Superior Court Action
15                                        )   No. C-08-00998]
        vs.                               )
16                                        )   **NOTICE OF REMOVAL OF CIVIL**
    TRAVELERS PROPERTY CASUALTY          )   **ACTION PURSUANT TO 28 U.S.C. §**
17  COMPANY OF AMERICA, FEDERAL          )   **1441(b) – DIVERSITY**
    INSURANCE COMPANY and DOES 1          )
18  through 20, inclusive,                )
                                          )
19          Defendants.                    )
                                          )
20  _____
21  TO THE CLERK OF THE ABOVE-ENTITLED COURT:
22          PLEASE TAKE NOTICE that defendant FEDERAL INSURANCE COMPANY
23  ("FEDERAL") removes to this Court the state court action described below:
24          1.      On April 8, 2008, an action was commenced in the Superior Court of the State
25  of California in and for the County of Contra Costa, captioned <u>Second Walnut Creek Mutual v.</u>
26  <u>Travelers Property Casualty Company of America; Federal Insurance Company; and Does 1</u>
27  <u>through 20, inclusive</u>, Case No. C 08-00998.  A copy of the Complaint for Breach of Contract,
28

1   Breach of Implied Covenant of Good Faith and Fair Dealing, Declaratory Relief and Punitive

2   Damages in that action is attached as Exhibit A to this Notice.

3       2.     On May 14, 2008, plaintiff SECOND WALNUT CREEK MUTUAL mailed

4   said complaint and a summons from the state court, a Notice and Acknowledgement of Receipt,

5   a Notice of Case Management Conference, a blank case management conference statement, a

6   Notice to Plaintiffs, a Notice to Defendants, a blank Stipulation and Order to Attend ADR and

7   Delay First Case Management Conference 90 Days, and Contra Costa County Superior Court

8   Alternative Dispute Resolution (ADR) Information, to CT Corporation, FEDERAL's statutory

9   agent for service of process, who received them on May 23, 2008. Copies of these documents

10   are attached hereto as Exhibit B. Pursuant to California Code of Civil Procedure section

11   415.30, service is deemed complete on the date the acknowledgement of receipt is signed.

12   FEDERAL did not sign the Acknowledgement of Receipt before the filing of this Notice or

13   Removal.

14       3.     Similarly, on May 14, 2008, plaintiff SECOND WALNUT CREEK MUTUAL

15   mailed said complaint and a summons from the state court, a Notice and Acknowledgement of

16   Receipt, a Notice of Case Management Conference, a blank case management conference

17   statement, a Notice to Defendants, a blank Stipulation and Order to Attend First Case

18   Management Conference and Alternative Dispute Resolution (ADR) Information to CT

19   Corporation, the statutory agent for service of process for defendant TRAVELERS

20   PROPERTY CASUALTY COMPANY OF AMERICA ("TRAVELERS"). TRAVELERS

21   signed the Acknowledgement of Receipt on June 3, 2008, which is attached hereto as Exhibit

22   C.

23       4.     This Court has original jurisdiction of this action under 28 U.S.C. § 1332, and

24   this action may be removed to this Court by defendants under 28 U.S.C. § 1441(b). This is a

25   civil action between citizens of different states as neither defendant FEDERAL nor defendant

26   TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA ("TRAVELERS") is a

27   citizen of the State of California, and the amount in controversy in this matter exceeds the sum

28   of $75,000, exclusive of interest and costs, because plaintiff asserts claims for bad faith as well

1  as for breach of contract and seeks attorneys' fees and other expenses and punitive damages,

2  arising out of its payment of $70,000 in costs that were allegedly necessary to repair the

3  damage to certain underground pipes, which FEDERAL and TRAVELERS determined were

4  not covered under the involved property insurance policy.

5       5.    Complete diversity of citizenship exists. As alleged in the Complaint attached

6  as Exhibit A, plaintiff was, at the time this action was filed, and still is a California corporation

7  with its principal place of business in Walnut Creek, California. Thus, it is a citizen of the

8  State of California.

9       6.    Defendant FEDERAL was, at the time this action was filed, and still is,

10 incorporated in the State of Indiana, with its principal place of business in Warren, New Jersey.

11 Thus, defendant FEDERAL is not a citizen of the State of California.

12      7.    Defendant TRAVELERS was, at the time this action was filed, and still is,

13 incorporated in the State of Connecticut, with its principal place of business in Hartford,

14 Connecticut. Thus, defendant TRAVELERS is not a citizen of the State of California.

15      8.    This is an insurance coverage dispute in which plaintiff contends that defendants

16 TRAVELERS and FEDERAL have an obligation to pay for the repair of certain underground

17 pipes.

18      9.    In accordance with Northern District Local Rule 3-2, the proper venue for this

19 action is either the San Francisco Division or the Oakland Division in that the underlying action

20 was filed in Contra Costa County.

21      10.   Defendant TRAVELERS joins in this Notice of Removal to this Court by the

22 filing of a separate Joinder In Notice Of Removal Of Action.

23 DATED: June 9, 2008                    NEWTON REMMEL

24

25                                        By: _____

26                                        Ronald F. Remmel
                                          Attorneys for Defendant
27                                        FEDERAL INSURANCE COMPANY

28

EXHIBIT A

1  Michael J. Hughes, Esq., SBN 60336
   Amy K. Tinetti, Esq., SBN 199651
2  **HUGHES & GILL, P.C.**
   1600 South Main Street, Suite 315
3  Walnut Creek, CA 94596
   Telephone:       925-926-1200
4  Facsimile:       925-926-1202

5  Attorneys for Plaintiff
   SECOND WALNUT CREEK MUTUAL
6

F I L E D

APR - 8 2008

K. TORRE CLERK OF THE COURT
SUPERIOR COURT OF THE STATE OF CALIFORNIA
COUNTY OF CONTRA COSTA
By
S. HARDNECHT, Deputy Clerk

7

8                **SUPERIOR COURT OF CALIFORNIA**

9              **COUNTY OF CONTRA COSTA**   C  0 8 - 0 0 9 9 8

10

11  SECOND WALNUT CREEK MUTUAL,          No.

12            Plaintiff,                  **COMPLAINT FOR BREACH OF**
                                          **CONTRACT, BREACH OF IMPLED**
13      v.                                **COVENANT OF GOOD FAITH AND**
                                          **FAIR DEALING, DECLARATORY**
14  TRAVELERS PROPERTY CASUALTY           **RELIEF AND PUNITIVE DAMAGES**
    COMPANY OF AMERICA, FEDERAL
15  INSURANCE COMPANY and DOES 1
    through 20, inclusive,
16
                                          FEE EXEMPT DUE TO
17            Defendants.                 PASS. ACT (SECTION 30)

18

19          Plaintiff SECOND WALNUT CREEK MUTUAL (the "Mutual") complains of

20  Defendants, and each of them, as follows:

21                         **GENERAL ALLEGATIONS**

22          1.      At all times herein mentioned, the Mutual was, and now is, a non-profit

23  corporation duly organized under and by virtue of the laws of the State of California, with its

24  principal place of business in Walnut Creek, Contra Costa County, State of California.

25          2.      The Mutual is one of many common interest developments (as defined in *Civil*

26  *Code* section 1351) located in the community known as Rossmoor, located in Walnut Creek,

27  California.

---

COMPLAINT FOR BREACH OF CONTRACT AND BAD FAITH                          1

**EXHIBIT A**

3.    The Mutual and other common interest developments in Rossmoor are managed by the Golden Rain Foundation ("GRF").    GRF obtained the property insurance policy described below for and on behalf of the Mutual.

4.    Travelers Property Casualty Company of America ("Travelers") is, and at all times mentioned was, a business organization of a form unknown to Plaintiff.  Plaintiff is informed and believes, and thereupon alleges that Travelers is a corporation authorized under the laws of the State of California to transact business in this state as an insurance company.

5.    Federal Insurance Company ("Federal") is, and at all times mentioned was, a business organization of a form unknown to Plaintiff.  Plaintiff is informed and believes, and thereupon alleges that Federal is a corporation authorized under the laws of the State of California to transact business in this state as an insurance company.

6.    Plaintiff is informed and believes, and thereupon alleges that Chubb & Son ("Chubb") is a division of Federal.  Chubb is, and at all times mentioned was, a business organization of a form unknown to Plaintiff.  Plaintiff is informed and believes and thereupon alleges that Chubb is a corporation authorized under the laws of the State of California to transact business in this state as an insurance company.  For the purposes of this Complaint, all references to Federal shall be deemed to refer to Chubb as well.

7.    Plaintiff does not know the true names, capacities and identities, whether corporate, partnership, individual or otherwise, of defendants sued herein as Does 1 through 20, inclusive, and for this reason sues such defendants by such fictitious names in accordance with Section 474 of the Code of Civil Procedure.  Plaintiff is informed and believes, and on that basis alleges, that each of the fictitiously-named defendants is legally responsible for the events and action referred to this Complaint and wrongfully caused injury and damages to Plaintiff, as alleged below.  Plaintiffs will seek leave to amend this Complaint to state these defendants' true names and capacities when they are ascertained.

8.    Travelers issued a property insurance policy to GRF, policy number KTJ-CMB-187D484-4-05, which took effect on or about January 1, 2005 (the "Policy"), a true and correct

1    copy of which is attached hereto as Exhibit A.  Travelers and Federal share coverage under the

2    Policy.  Both Travelers and Federal agreed to pay fifty percent (50%) of the first $50,000,000 of

3    a covered loss under the Policy, per the Participating Companies Schedule included with the

4    Policy.  Federal signed the Participating Companies Schedule and assigned its own policy

5    number to the Policy, that policy number being 661-82-25.

6        9.      The Policy was obtained to provide coverage in the event of a casualty, such as a

7    fire, to certain real property and improvements located within Rossmoor, including the real

8    property and improvements that constitute the Mutual.

9        10.     The Policy provides that Travelers and Federal "will pay for direct physical loss

10   or damage to Covered Property at premises described in the most recent Statement of Values or

11   other documentation on file with the Company. . . ."

12       11.     The Statement of Values, a true and correct copy of which is attached hereto as

13   Exhibit B, lists the various projects located within Second Walnut Creek Mutual as "SWCM."

14   The Mutual, therefore, is a direct beneficiary of the Policy, the Policy having been obtained by

15   GRF on the Mutual's behalf, to cover the property and improvements owned by the Mutual and

16   located within its boundaries.

17       12.     On June 9, 2005, a fire broke out at 3136 Tice Creek Drive, a two-story building

18   located within project 10 of the Mutual that contains eight residential units (the "Property").

19   The fire caused direct physical loss to the Property, including the plumbing system.

20       13.     The Mutual promptly reported a claim to Travelers and Federal and otherwise

21   performed all terms and conditions of the Policy which they were required to perform for

22   payment of insurance benefits.

23       14.     Travelers and Federal responded to the Mutual's claim, agreeing that some of the

24   damage to the Property was covered under the Policy.  Travelers and Federal paid a portion of

25   the Mutual's claim for damage to the Property, including damage to a portion of the Property's

26   plumbing system damaged as a result of the June 9, 2005 fire.

27   ///

15.    However, despite their obligation to pay for direct physical loss or damage to the Property, Travelers and Federal denied coverage to the Mutual for damage to the portion of the Property's plumbing system located underground. The Mutual paid approximately $70,000 to repair the damage to the portions of the plumbing system which Travelers and Federal determined were not subject to coverage under the Policy.

16.    Travelers and Federal denied coverage on the grounds that the damage to the portion of the plumbing system underground was not caused by the fire, even though the damage to the above-ground portion of the plumbing system was caused by the fire and coverage was extended for that loss under the Policy.

17.    With respect to the denial of Travelers and Federal based on causation, in California first-party claims are covered if an insured peril is the "efficient proximate cause" of the loss even if non-insured perils may have contributed to that loss. The expert hired by the Mutual concluded that the damage to the Property's plumbing system was typical of a stress load fracture pattern caused by excessive heat.

18.    Travelers and Federal also denied coverage on the basis of a provision of the Policy that provides the following property is not "Covered Property": "underground tanks, pipes, flues, drains or tunnels, all whether or not connected to buildings, mines or mining property."

19.    The Property's plumbing system is comprised of plumbing fixtures, and "fixtures" are specifically covered under the Policy.

20.    The provision relied upon by Travelers and Federal to deny coverage is ambiguous, in that it refers to non-residential building components such as flues and tunnels. When the Policy is read as a whole, the relied-upon provision clearly relates to mining or industrial operations, particularly when construed in the context of the circumstances of this particular case. To do otherwise would result in a policy that is illusory and defies common sense.

21.    The Policy was obtained to provide coverage for numerous buildings within the

1   Rossmoor development, including the Property. Plaintiff is informed and believes, and thereon

2   alleges that, within the footprint of the buildings covered under the Policy, some have plumbing

3   systems located entirely above ground and some have plumbing systems where, like the

4   plumbing system on the Property, a portion of the fixtures are located above-ground and a

5   portion are located underground. The purpose of the Policy is frustrated if some plumbing

6   systems are covered and portions of some are not, when the Policy provision on which that

7   determination is made does not appear to have any relevance in a residential development.

8           22.     The Mutual, as an express beneficiary of the Policy, reasonably expected that all

9   damage to the Covered Property caused by a fire would be covered under the Policy. The

10  Mutual had no reason to believe that an exclusionary clause regarding mining operations would

11  result in a denial of coverage.

12                          **FIRST CAUSE OF ACTION**
                      **(For Breach of Contract Against Defendants)**

13

14          23.     Plaintiff realleges and incorporates by this reference the allegations contained in

15  Paragraph 1 through 22 of this Complaint.

16          24.     Plaintiff duly performed each and every condition and obligation that it was

17  required to perform under the Policy.

18          25.     Defendants breached their contractual duties to Plaintiff by failing to fulfill the

19  express obligations assumed by Defendants, including but not limited to Defendants' duty to

20  pay insurance benefits under the Policy for direct physical loss or damage to the Property.

21          26.     As a direct and legal result of Defendants' breach of their obligations, Plaintiff

22  has suffered and will continue to suffer damages, including but not limited to loss of insurance

23  benefits, interest on those benefits, attorneys' fees, expert's fees, other financial losses and

24  incidental damages, out-of-pocket expenses, and loss of use of the property, all to its damage in

25  an amount well in excess of the jurisdiction of this Court to be shown according to proof.

26  ///

27  ///

---

COMPLAINT FOR BREACH OF CONTRACT AND BAD FAITH

5

1

## SECOND CAUSE OF ACTION
### (For Breach of Implied Covenant of Good Faith and Fair Dealing Against Defendants)

2

3      27.    Plaintiff realleges and incorporates by this reference the allegations contained in

4    Paragraph 1 through 26 of this Complaint.

5      28.    Defendants owed to Plaintiff the duties of good faith and fair dealing implied by

6    law in every contract of insurance.

7      29.    Defendants breached these duties by refusing, without proper cause, to

8    compensate Plaintiff for a loss covered by the Policy.  Defendants' refusal to cover the loss was

9    conscious and deliberate, and frustrated the agreed-upon common purpose of the Policy –

10   namely to provide coverage for losses to buildings and property owned by the Mutual.

11   Defendants' refusal to provide coverage for the entire loss disappointed the reasonable

12   expectations of the Mutual and its members, and deprived the Mutual of the benefits of the

13   Policy.

14     30.    As a direct and legal result of Defendants' breach of their obligations, Plaintiff

15   has suffered and will continue to suffer damages, including but not limited to loss of insurance

16   benefits, interest on those benefits, attorneys' fees, expert's fees, other financial losses and

17   incidental damages, out-of-pocket expenses, and loss of use of the property, all to its damage in

18   an amount well in excess of the jurisdiction of this Court to be shown according to proof.

19     31.    The acts complained of in this Complaint were without justification, willful,

20   wanton, malicious, fraudulent and oppressive, and Defendants are guilty of oppression, fraud

21   and malice.  Further, all of the alleged acts were performed, authorized or ratified by one of

22   more of Defendants' officers, directors, managing agents, or managerial employees, who acted

23   with knowledge that said conduct would cause Plaintiff harm.  Defendants are therefore subject

24   to the imposition of punitive and exemplary damages.

25   ///

26   ///

27   ///

COMPLAINT FOR BREACH OF CONTRACT AND BAD FAITH

6

### THIRD CAUSE OF ACTION
#### (For Declaratory Relief Against Defendants)

32.    Plaintiff realleges and incorporates by this reference the allegations contained in Paragraph 1 through 31 of this Complaint.

33.    An actual controversy has arisen and now exists between Plaintiff and Defendants, and each of them, regarding the obligations of Defendants to Plaintiff.

34.    Defendants contend that portions of the plumbing system serving Plaintiff's buildings but located underground are not "Covered Property" based on the provision of the Policy described in Paragraph 10 of this Complaint.

35.    Plaintiff contends that the entire plumbing system serving Plaintiff's buildings is Covered Property.

WHEREFORE, Plaintiff prays for judgment as hereinafter set forth.

### RELIEF REQUESTED

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1.    For all benefits due under the Policy, together with interest thereon at the legal rate;

2.    For a judicial declaration that the damage to the plumbing system is covered under the Policy;

3.    For consequential damages legally caused by Defendants' conduct in an amount according to proof;

4.    For attorneys' fees and other expenses incurred to obtain the benefits due under the Policy;

5.    For exemplary and punitive damages;

6.    For attorneys' fees and costs of suit herein incurred;

///

///

///

COMPLAINT FOR BREACH OF CONTRACT AND BAD FAITH

1    7.    For prejudgment interest;

2    8.    For such other and further relief as the Court may deem just and proper.

3

4    Dated: April 8, 2008                    HUGHES & GILL, P.C.

5

6                                    By:_____

7                                        Michael J. Hughes
                                         Attorneys for Plaintiff
8                                        SECOND WALNUT CREEK MUTUAL

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

# THE TRAVELERS INSURANCE COMPANIES

One Tower Square
Hartford, CT 06183

## DECLARATIONS

MS 01 00 07 99

| | |
|---|---|
| Policy Number: | KTJ-CMB-187D484-4-05 | Issue Date: | 01/20/2005 |

**NAMED INSURED AND MAILING ADDRESS:**
GOLDEN RAIN FOUNDATION
800 ROCKVIEW DRIVE
WALNUT CREEK, CA. 94595

**POLICY PERIOD:**     FROM:   01/01/2005     TO:    01/01/2006

Effective 12:01 a.m. at description and location of property covered.

**COVERAGE FORMS AND ENDORSEMENTS FORMING A PART OF THIS POLICY.**
The complete policy consists of the Declarations and the Supplemental Coverage Declarations and the forms listed
on MS CO 02 07 99.

**PREMIUM:**    Per Agency Bill Statement CMB-187D484

**INSURING COMPANIES:**
In return for payment of the premium, the Company agrees with the Named Insured to provide the insurance
afforded by this policy. That insurance will be provided by the Company designated by an "X" below.

X    Travelers Property Casualty Company of America (a Stock Company)

The company listed above has executed this policy, but it is valid only if countersigned by our authorized
representative.

Secretary

President

Countersigned by: _____

Date: _____    (Authorized Representative)

**PRODUCER NAME AND ADDRESS**
WILLIS INS SERV-SF
ONE BUSH STREET 9TH FLOOR
SAN FRANCISCO, CA. 94104

X    Federal Insurance Company
Authorized Signature

By / Title _____

Date _____

MS 01 00 07 99

# THE TRAVELERS INSURANCE COMPANIES
One Tower Square
Hartford, CT 06183

## DECLARATIONS

| | | | |
|---|---|---|---|
| **Policy Number:** | KTJ-CMB-187D484-4-05 | **Issue Date:** | 01/20/2005 |

**NAMED INSURED AND MAILING ADDRESS:**
GOLDEN RAIN FOUNDATION
800 ROCKVIEW DRIVE
WALNUT CREEK, CA. 94595

| | | | | | |
|---|---|---|---|---|---|
| **POLICY PERIOD:** | **FROM:** | 01/01/2005 | **TO:** | 01/01/2006 |

Effective 12:01 a.m. at description and location of property covered.

**COVERAGE FORMS AND ENDORSEMENTS FORMING A PART OF THIS POLICY.**
The complete policy consists of this Declarations and the Supplemental Coverage Declarations and the forms listed on MS C0 02 07 99.

**PREMIUM:**    Per Agency Bill Statement CMB-187D4844

**INSURING COMPANIES:**
In return for payment of the premium, the Company agrees with the Named Insured to provide the insurance afforded by this policy. That insurance will be provided by the Company designated by an "X" below.

X    Travelers Property Casualty Company of America (a Stock Company)

_Secretary_                    _President_

The company listed above has executed this policy, but it is valid only if countersigned by our authorized representative.

| | |
|---|---|
| **PRODUCER NAME AND ADDRESS** | Countersigned by: _____ |
| WILLIS INS SERV-SF | (Authorized Representative) |
| ONE BUSH STREET 9TH FLOOR | Date: _____ |
| SAN FRANCISCO, CA. 94104 | |

MS C0 02 07 99

### INDEX OF FORMS

| | |
|---|---|
| Index of Forms | MS C0 02 07 99 |
| Supplemental Coverage Declarations | MS C0 03 07 99 |
| Property Coverage Form | MS C1 00 01 00 |
| Business Income Coverage Form Excluding Extra Expense | MS C1 02 02 00 |
| Extra Expense | MS C1 03 07 99 |
| Fungus, Rot, Bacteria and Other Causes of Loss Changes | MS C2 35 10 02 |
| Exclusion Nuclear Hazard War Military Action Electronic VMM & Pathogenic | MS C2 39 12 02 |
| Contractors Equipment | MS C3 09 07 99 |
| Utility Services - Direct Damage | MS C3 27 07 99 |
| Utility Services - Time Element | MS C4 09 07 99 |
| General Conditions | MS C5 02 01 00 |
| Replacement Cost | MS C5 05 07 99 |
| Joint or Disputed Loss Agreement | MS C5 22 07 99 |
| Extra Expense Deductible | MS C5 27 03 00 |
| Claim Data Expense | MS C5 30 10 02 |
| Exclusion Certain Computer Losses Due to Dates or Times (Prop Coverages) | MS C8 01 07 99 |
| California Changes - Cancellation And Nonrenewal | MS C8 42 01 03 |
| California Changes | MS C8 43 01 03 |
| Terrorism Risk Insurance Act of 2002 Disclosure | TR IA 02 12 02 |
| Exclusion of Certified Acts and Other Acts of Terrorism | TR IA 06 12 02 |

| | |
|---|---|
| PARTICIPATING COMPANIES SCHEDULE | Endorsement 1 |

KTJ-CMB-187D484-4-05

MS C0 03 07 99

# Supplemental Coverage Declarations

READ THE ENTIRE POLICY CAREFULLY TO DETERMINE RIGHTS, DUTIES AND WHAT IS AND IS NOT COVERED.

A.  **POLICY LIMIT:** In no event shall liability under this policy arising out of one occurrence exceed $500,000,000, nor shall liability exceed any specific Limit of Insurance applying to any insured loss, coverage or location(s).

B.  **LIMITS OF INSURANCE** – For application of Limits of Insurance refer to Section O. Limits of Insurance in the General Conditions:

|     |  |  |  |
|-----|-----------------------------------------------|---|-------------|
| 1.  | Buildings, in any one occurrence: | | Included |
|     | Included means included in the Policy Limit. | | |
| 2.  | Business Personal Property, in any one occurrence: | $ | 2,800,000 |
| 3.  | Electronic Data Processing Equipment and Electronic Data Processing Data and Media, in any one occurrence: | $ | 1,800,000 |
| 4.  | Accounts Receivable, in any one occurrence: | $ | 1,000,000 |
| 5.  | Valuable Papers, in any one occurrence: | $ | 1,000,000 |
| 6.  | Fine Arts, in any one occurrence: | $ | 500,000 |
|     | subject to a maximum per item of: | $ | 15,000 |
| 7.  | Newly Constructed or Acquired Property, at any one building, in any one occurrence: Number of days 120. | $ | 2,500,000 |
| 8.  | Outdoor Property including Debris Removal, in any one occurrence: | $ | 250,000 |
|     | Trees, shrubs and plants are subject to a maximum per item of: | $ | 1,000 |
| 9.  | Covered Property in Transit, in any one occurrence: | $ | 100,000 |
| 10. | Pollutant Cleanup and Removal, aggregate in any one policy year: | $ | 100,000 |
| 11. | Claim Data Expense, in any one occurrence: | $ | 25,000 |
| 12. | Ordinance or Law | | |
|     | Loss to the Undamaged Portion, in any one occurrence: | $ | 25,000,000 |
|     | Demolition, in any one occurrence: | | Included |
|     | Increased Cost of Construction, in any one occurrence: | | Included |
|     | Included means, included in the Limit shown for Loss to the Undamaged Portion. | | |
| 13. | Business Income, in any one occurrence: | $ | 5,000,000 |
|     | Ordinary Payroll:   Excluded | | |
|     | Extended Business Income at 60 days. | | |

KTJ-CMB-187D484-4-05

MS C0 03 07 99

Civil Authority 30 days.

| | | |
|---|---|---|
| Ordinance or Law - Increased Period of Restoration, in any one occurrence: | $ | 500,000 |
| Newly Acquired Locations, in any one occurrence: Number of days 120. | $ | 500,000 |
| Claim Data, in any one occurrence: | $ | 25,000 |

14. Extra Expense, in any one occurrence:  $  1,000,000 ✓

Civil Authority 30 days.

| | | |
|---|---|---|
| Ordinance or Law - Increased Period of Restoration, in any one occurrence: | $ | 100,000 |
| Newly Acquired Locations, in any one occurrence: Number of days 120. | $ | 100,000 |
| Claim Data, in any one occurrence: | $ | 25,000 |

15. Limited "Fungus," Wet Rot, Dry Rot and Bacteria Coverage:
    a.   Direct Damage
        In any one occurrence: $ 25,000
        Aggregate, in any one policy year: $ 250,000 ✓
    b.   Business Income and Extra Expense
        Number of days: 30

16. Contractors Equipment in any one occurrence, $ 2,600,000 ✓
Subject to a maximum per item of: $ 50,000

| | | |
|---|---|---|
| Newly Acquired Contractors Equipment in any one occurrence: | $ | 100,000 |
| Equipment Rental Expense in any one occurrence: | $ | 100,000 |

17. Utility Services – in any one occurrence:

    Utility Services Direct Damage:  $  500,000

    Utility Services Time Element:  $  500,000

C. **DEDUCTIBLES:** For application of Deductibles refer to Section B. Application of Deductibles in the General Conditions

1. To Electronic Data Processing Equipment and Electronic Data Processing Data And Media in any one occurrence:  $  5,000

2. To Accounts Receivable in any one occurrence:  $  5,000

3. To Valuable Papers, in any one occurrence:  $  5,000

4. To Fine Arts, in any one occurrence:  $  5,000

KTJ-CMB-187D484-4-05

MS C0 03 07 99

| | | | | |
|---|---|---|---|---|
| 5. | To Utility Services - Direct Damage, in any one occurrence: | | $ | 25,000 |
| 6. | To Utility Services - Time Element, in any one occurrence: | | Hours | 24 |
| 7. | To any other covered loss, in any one occurrence: | | $ | 100,000 |

D.  **VALUATION PROVISION:**

Replacement Cost applies as per MS C5 05.

E.  **SOLE AGENT PROVISION:** For any insurance afforded by this policy, GOLDEN RAIN FOUNDATION  shall act on behalf of all insureds with respect to the giving and receiving of notice of cancellation or nonrenewal, the payment of premiums and the receiving of return premiums, and accepting of any endorsement issued to form a part of this policy.

F.  **PREMIUM ADJUSTMENT:**  This policy will be adjusted Quarterly for any changes in values and premiums.

G.  **ISSUING COMPANY:** Travelers Property Casualty Company of America  (a Stock Company)

KTJ-CMB-187D484-4-05

MS C1 00 01 00

# PROPERTY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered. Words and phrases that appear in quotation marks have special meaning; refer to Section G., Definitions.

## A. INSURING AGREEMENT

The Company will pay for direct physical loss or damage to Covered Property at premises as described in the most recent Statement of Values or other documentation on file with the Company, caused by or resulting from a Covered Cause of Loss. Covered Cause of Loss means risks of direct physical loss unless the loss is excluded in Section D., Exclusions; limited in Section E., Limitations; or excluded or limited in the Supplemental Coverage Declarations or by endorsements.

## B. COVERAGE

Coverage is provided for Covered Property and Covered Costs and Expenses, as described in Sections B.1. and B.2., for which the Insured has an insurable interest, unless excluded in Section C., Property and Costs Not Covered. Coverage applies only when a Limit of Insurance is shown in the Supplemental Coverage Declarations for the specific type of Covered Property or Covered Costs and Expenses, except for items B.2. a., d., g., h. and i. which do not require a specific Limit of Insurance to be shown.

### 1. COVERED PROPERTY

   a. **Building(s)**, means the buildings or other structures at the Insured's premises, including:

   (1) Completed additions;
   (2) Fixtures, including outdoor fixtures;
   (3) Machinery and equipment permanently attached to the building;
   (4) Personal property owned by the Insured that is used to maintain or service the buildings, structures or grounds; and
   (5) If not covered by other insurance:
      (a) Additions under construction, alterations and repairs to the buildings or structures; and
      (b) Materials, equipment, supplies and temporary structures, on or within 1,000 feet of the Insured's premises, used for making alterations or repairs to the buildings or structures.

   Building(s) do not include "Outdoor Property" except as provided in Section B.1.h.

   b. **Business Personal Property** located in or on the buildings at the Insured's premises or in the open (or in a vehicle) within 1,000 feet of the Insured's premises, consisting of the following unless otherwise specified in the Supplemental Coverage Declarations:

   (1) Furniture and fixtures;
   (2) Machinery and equipment;
   (3) "Stock";
   (4) All other personal property owned by the Insured and used in the Insured's business;
   (5) Labor, materials or services furnished or arranged by the Insured on personal property of others;
   (6) The Insured's use interest as tenant in improvements and betterments. Improvements and betterments are fixtures, alterations, installations or additions:
      (a) Made a part of the buildings or structures occupied or leased, but not owned, by the Insured; and
      (b) Acquired or made at the Insured's expense but which the Insured is not permitted to remove; and
   (7) Personal Property of Others (including the Insured's employees) used in the Insured's business that is in the care, custody, or control of the Insured or for which the Insured has agreed in writing to insure prior to any loss or damage.

   However, payment by the Company for loss or damage to Personal Property of Others will only be for the account of the owner of the property.

KTJ-CMB-187D484-4-05

Business Personal Property does not include:

(1) "Electronic Data Processing Equipment" or "Electronic Data Processing Data and Media" except as provided in Section B.1.c.;
(2) Accounts Receivable except as provided in Section B.1.d.;
(3) Valuable Papers except as provided in Section B.1.e.; or
(4) "Fine Arts" except as provided in Section B.1.f.

c.   "Electronic Data Processing Equipment" and "Electronic Data Processing Data and Media"

This insurance applies to loss or damage to "Electronic Data Processing Equipment" and "Electronic Data Processing Data and Media" at or within 1,000 feet of the insured's premises.

d.   Accounts Receivable

This insurance applies to loss or damage to the accounts receivable records of the insured while at or within 1,000 feet of the insured's premises, including records stored on electronic data processing media. Credit card company charge records will be considered accounts receivable records until delivered to the credit card company.

(1) The Company will pay:
  (a) Amounts due the insured from customers that the insured is unable to collect because of loss or damage to the insured's accounts receivable records;
  (b) Interest charges on any loan required to offset amounts the insured is unable to collect because of loss or damage to the insured's accounts receivable records, pending the Company's payment of these amounts;
  (c) Collection expenses in excess of the insured's normal collection expenses that are made necessary by the loss; and
  (d) Other reasonable expenses that the insured incurs to re-establish the insured's records of Accounts Receivable.

(2) The following additional exclusions apply to Accounts Receivable:

  The Company will not pay for loss or damage caused by or resulting from any of the following:
  (a) Bookkeeping, accounting or billing errors or omissions; and
  (b) Alteration, falsification, manipulation, concealment, destruction or disposal of records of accounts receivable committed to conceal the wrongful giving, taking, obtaining or withholding of money, securities or other property but only to the extent of such wrongful giving, taking, obtaining or withholding.

(3) The Company will not pay for loss or damage that requires an audit of records or any inventory computation to prove its factual existence.

(4) In the event the insured cannot accurately establish the amount of Accounts Receivable outstanding as of the time of loss, the following method will be used:
  (a) The Company will determine the total of the average monthly amounts of Accounts Receivable for the 12 months immediately preceding the month in which the loss occurs;
  (b) The Company will adjust the total for any normal fluctuations in the amounts of Accounts Receivable for the month in which the loss occurred or for any demonstrated variance from the average for that month; and
  (c) The following will be deducted from the total amount of Accounts Receivable, however that amount is established:
    (i)   The amount of the accounts for which there is no loss;
    (ii)  The amount of the accounts that the insured is able to re-establish or collect;
    (iii) An amount to allow for probable bad debts that the insured is normally unable to collect; and
    (iv)  All unearned interest and service charges.

KTJ-CMB-187D484-4-05

MS C1 00 01 00

e.  **Valuable Papers and Records**

This insurance applies to loss or damage to Valuable Papers and Records while at or within 1,000 feet of the Insured's premises. Coverage does not apply to Valuable Papers and Records that exist on electronic data processing media.

f.  **"Fine Arts"**

This insurance applies to loss or damage to "Fine Arts" while at or within 1,000 feet of the Insured's premises.

g.  **Newly Constructed or Acquired Property**

This insurance applies to:
(1)  New buildings while being built on the Insured's premises or on a newly acquired location including materials, equipment, supplies and temporary structures which are at or within 1,000 feet of the premises;
(2)  Buildings newly acquired by the Insured at locations other than the Insured's premises;
(3)  Buildings the Insured becomes newly required to insure under a written contract; and
(4)  Personal Property of a type insured under this policy at or within 1,000 feet of a newly acquired building or a newly acquired location.

Insurance under this Coverage for each newly constructed or acquired property will end when any of the following first occurs:
(1)  This policy is cancelled or expires;
(2)  120 days expire after the Insured acquires or begins to construct the building(s);
(3)  The Insured reports the new values to the Company; or
(4)  The property is more specifically insured elsewhere.

The Company will charge the Insured additional premium for values reported from the date construction begins or the Insured acquires the property.

h.  **"Outdoor Property"**

This insurance applies to "Outdoor Property" at the Insured's premises for loss or damage only by the following Covered Causes of Loss:
(1)  Fire;
(2)  Lightning;
(3)  Explosion;
(4)  Riot or civil commotion;
(5)  Vandalism or malicious mischief; or
(6)  Aircraft or vehicles.

This insurance also applies to the necessary and reasonable expense incurred by the Insured to remove debris of "Outdoor Property" at the Insured's premises caused by or resulting from a Covered Cause of Loss listed above that occurs during the policy period. Such expenses will be paid only if reported to the Company in writing within 180 days of the date of direct physical loss or damage. This will not increase the Limit of Insurance that applies to "Outdoor Property".

i.  **Personal Effects of Officers and Employees of the Insured**

This insurance applies to the Personal Effects and "Fine Arts" owned by officers, partners or employees of the Insured.  Such property must be located at or within 1000 feet of the Insured's premises. Payment for loss or damage to Personal Effects and "Fine Arts" will only be for the account of the owner of the property.

j.  **Covered Property At Undescribed Premises**

This insurance applies to:
(1)  Covered Property at an "exhibition" including while in transit to and from the "exhibition" site. Coverage for this property applies worldwide except within any country on which the United States government has imposed sanctions, embargoes or any other similar prohibitions.
(2)  Covered Property that will or has become a permanent part of an installation project being performed for others by the Insured, or on the Insured's behalf, while such property is at the

MS C1 00 01 00

Installation premises or at other premises where the property is temporarily stored. Coverage for this installation property applies only within the Policy Territory and will apply only until the Insured's interest in the property ceases, the installation is accepted, the installation is abandoned, or this policy is cancelled or expires, whichever occurs first.

(3) Covered Property at any other premises within the Policy Territory which are not otherwise insured under this policy, and which the Insured does not own, lease or regularly operate.

This Coverage does not apply to Personal Effects of Officers and Employees of the Insured.

k. **Covered Property in Transit**

This insurance applies to Covered Property in due course of transit at the risk of the Insured between points within the Policy Territory, including inland and coastal waters and air space.

This Coverage will attach when the Covered Property leaves the initial point of shipment and will continue until the property is delivered at its destination. In the event the Covered Property is not deliverable or is rejected by the consignee, such property will be covered while in due course of transit back to the Insured and while temporarily being held by the receiver or carrier awaiting its return to the Insured.

The Company will also pay for:

(1) Any general average or salvage charges incurred by the Insured as respects losses to waterborne shipments.

(2) The Insured's contingent interest in shipments sold on a F.O.B. (Free On Board) basis but only in the event that any loss recoverable hereunder is not collectible from the consignee or any other insurance.

(3) Loss of Covered Property occasioned by the unintentional acceptance of fraudulent bills of lading, shipping receipts or messenger receipts by the Insured or any agent, customer or consignee of the Insured.

This Coverage does not apply to:

(1) Shipments by a government postal service except by registered mail;

(2) Any export shipment once the earlier of the following occurs:
  (a) The shipment is placed on the export conveyance; or
  (b) Coverage under an Ocean Marine or other insurance policy covering the shipment begins;

(3) Any import shipment until the later of the following occurs:
  (a) The shipment is unloaded from the importing vessel or conveyance; or
  (b) Coverage under an Ocean Marine or other insurance policy covering the shipment ends;

(4) Theft from a conveyance or container while unattended unless the portion of the conveyance or container containing the Covered Property is fully enclosed and securely locked, and the theft is by forcible entry of which there is visible evidence;

(5) Property of others for which the Insured is responsible while acting as a common or contract carrier, freight forwarder, freight consolidator, freight broker or public warehouseman; or

(6) Personal Effects of Officers and Employees of the Insured or to Covered Property in due course of transit to or from an "exhibition".

l. **Covered Property Overseas**

The Company will pay for loss or damage to Covered Property while in the custody of any officer or employee of the Insured while temporarily traveling outside of the Policy Territory. But this Coverage does not apply to Covered Property at, or in due course of transit to or from, an "exhibition".

Coverages j. Covered Property At Undescribed Premises, k. Covered Property in Transit and l. Covered Property Overseas are each subject to the applicable Limit of Insurance specified in the Supplemental Coverage Declarations for the coverage, but in no event will the Company pay more for loss or damage to any type of Covered Property than the amount that would have been paid if the loss or damage had occurred at or within 1000 feet of the Insured's premises.

KTJ-CMB-187D484-4-05

MS C1 00 01 00

2. **COVERED COSTS AND EXPENSES**

a. **Debris Removal**

(1) The Company will pay the necessary and reasonable expense incurred by the Insured to remove debris of Covered Property, other than "Outdoor Property", caused by or resulting from a Covered Cause of Loss that occurs during the policy period. Such expenses will be paid only if reported to the Company in writing within 180 days of the date of direct physical loss or damage. Coverage for the expense to remove debris of "Outdoor Property" is provided separately under Section B.1.h. of this Coverage Form.

(2) For this Debris Removal Coverage, the Company will pay up to 25% of:

(a) The amount the Company pays for the direct physical loss or damage to the Covered Property; plus

(b) The deductible in this policy applicable to that direct physical loss or damage.

This limit is part of and not in addition to the Limit of Insurance that applies to the lost or damaged Covered Property. But if:

(a) (i) The sum of direct physical loss or damage and debris removal expense exceeds the Limit of Insurance; or

(ii) The debris removal expense exceeds the above 25% limitation; and

(b) A Limit of Insurance is specified in the Supplemental Coverage Declarations for Debris Removal (additional);

the Company will also pay an additional amount, up to the Limit of Insurance specified in the Supplemental Coverage Declarations for Debris Removal (additional).

(3) In no event will this Debris Removal Coverage apply to:

(a) Costs to extract "pollutants" from land or water; or

(b) Costs to remove, restore or replace polluted land or water.

b. **Pollutant Cleanup and Removal**

The Company will pay the necessary and reasonable expense incurred by the Insured to extract "pollutants" from land or water at the Insured's premises if the discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused by or results from a "specified cause of loss" which occurs during the policy period.

Such expenses will be paid only if reported to the Company in writing within 180 days of the date on which the "specified cause of loss" occurs.

This Coverage does not apply to costs to test for, monitor or assess the existence, concentration or effects of "pollutants". But the Company will pay for testing which is performed in the course of extracting the "pollutants" from the land or water.

The most the Company will pay under this Coverage for the sum of all covered expenses arising out of all "specified cause of loss" occurrences that occur during each separate 12 month period of this policy is the Limit of Insurance specified for Pollutant Cleanup and Removal shown in the Supplemental Coverage Declarations.

c. **Claim Data Expense**

The Company will pay the reasonable expenses incurred by the Insured in preparing claim data required by the Company. This includes the cost of taking inventories, making appraisals and preparing other documentation to show the extent of loss. The Company will not pay for any expenses incurred, directed, or billed by or payable to insurance adjusters or their associates or subsidiaries, or any costs as provided in the General Conditions - Section C. Appraisal.

d. **Fire Department Service Charge**

When the fire department is called to save or protect Covered Property from a Covered Cause of Loss, the Company will pay for any fire department service charges incurred by the Insured that are:

(1) Assumed by contract or agreement prior to loss; or

(2) Required by local ordinance.

**e.  Fire Protective Equipment Discharge**

If fire protective equipment discharges accidentally or to control a Covered Cause of Loss, the Company will pay the Insured's cost to:
(1) Refill or recharge the system with the extinguishing agents that were discharged; and
(2) Replace or repair faulty valves or controls that caused the discharge.

**f.  Ordinance or Law**

If a Covered Cause of Loss occurs to Covered Property, the Company will pay for:

(1) **The loss to the undamaged portion of a covered building** caused by the enforcement of any ordinance or law that:
(a) Requires the demolition of parts of the same property not damaged by a Covered Cause of Loss;
(b) Regulates the construction or repair of buildings, or establishes zoning or land use requirements at the Insured's premises; and
(c) Is in force at the time of loss.

The most the Company will pay for loss or damage under this portion of Ordinance or Law is the Limit of Insurance specified for Ordinance or Law – Undamaged Portion shown in the Supplemental Coverage Declarations.

(2) **The cost to demolish and clear the site of undamaged parts of the covered building** caused by the enforcement of building, zoning or land use ordinance or law.

The Company will not pay more for loss or damage under this portion of Ordinance or Law than the lesser of:
(a) The amount the Insured actually spends to demolish and clear the site; or
(b) The Limit of Insurance specified for Ordinance or Law – Demolition shown in the Supplemental Coverage Declarations.

(3) **The increased cost to repair, rebuild or construct the Covered Property** caused by enforcement of building, zoning, land use or any other ordinance or law when the Covered Property is insured for replacement cost. If the covered building is repaired or rebuilt, it must be intended for similar occupancy as the current building, unless otherwise required by zoning or land use ordinance or law.

The Company will not pay for increased construction costs until the Covered Property is actually repaired or replaced, at the same location or elsewhere; and unless the repairs or replacement are made as soon as reasonably possible after the loss or damage but not to exceed 2 years. The Company may extend this period in writing during the 2 years.

The most the Company will pay for loss or damage under this portion of Ordinance or Law is the increased cost of construction repair or replacement:
(a) Of a building of the same size and at the same premises, or another premises if required by the ordinance or law; and
(b) Limited to the minimum requirements of such ordinance or law regulating the repair or reconstruction of the damaged property on the same site.
not to exceed the Limit of Insurance specified for Ordinance or Law – Increased Cost of Construction shown in the Supplemental Coverage Declarations.

(4) Ordinance or Law Coverages do not apply to:
(a) "Vacant" properties;
(b) Any loss due to the Insured's failure to comply with any ordinance or law that the Insured was required to comply with before the loss, even if the Covered Property was undamaged; and
(c) Costs associated with the enforcement of any ordinance or law that requires the Insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

KTJ-CMB-187D464-4-05

g.  **Preservation of Property**

If it becomes necessary to move Covered Property from an insured premises to preserve it from loss or damage by a Covered Cause of Loss, the Company will pay for:

(1)  The necessary and reasonable expenses actually incurred by the Insured to remove the Covered Property from an insured premises and to move the Covered Property back to an insured premises; and

(2)  Any direct physical loss or damage to Covered Property while it is being moved from an insured premises, while temporarily stored at another location or while it is being moved back to an insured premises.

However, this Coverage will apply only if the loss or damage occurs within 90 days after the property is first moved and will cease when the policy is amended to provide insurance at the new location, the property is returned to the existing location, or this policy is cancelled or expires, whichever occurs first.

h.  **Protection of Property**

The Company will pay the necessary and reasonable expenses actually incurred by the Insured to temporarily safeguard Covered Property against the threat of imminent direct physical loss or damage by a "specified cause of loss". This Coverage does not apply to any expenses to which the above Preservation of Property coverage applies.

i.  **Water, Other Liquids, Powder or Molten Material Damage**

If covered loss or damage caused by or resulting from water or other liquid, powder or molten material damage occurs, the Company will also pay the cost to tear out and replace any part of the building or structure to repair damage to the system or appliance from which the water or other substance escapes.

When a Limit of Insurance is specified in the Supplemental Coverage Declarations for Water, Other Liquids, Powder or Molten Material Damage, that Limit of Insurance is the most the Company will pay under this Coverage. Otherwise, this coverage is provided subject to the Limit of Insurance that applies to the covered water or other liquid, powder or molten material damage loss.

**C.  PROPERTY AND COSTS NOT COVERED**

Unless the following property or costs are added by endorsement to this Coverage Form, Covered Property and Covered Costs and Expenses do not include:

1.  Currency, deeds or other evidences of debt, money, notes, checks, drafts, or securities;

2.  Contraband or property in the course of illegal transportation or trade;

3.  Water whether in its natural state or otherwise, above or below ground (except water normally contained in plumbing, the process of manufacture or fire protection equipment) watercourses, aquifers or the cost of reclaiming or restoring water;

4.  Land whether in its natural state or otherwise (including land on which the property is located), land improvements, grain, hay straw or other harvested crops while outside of buildings, growing crops or standing timber;

5.  The cost of excavations, grading, backfilling or filling;

6.  Property sold by the Insured under an installment plan, conditional sale, trust agreement or other deferred payment plan after delivery to the purchasers;

7.  Vehicles or self-propelled machines that:
    (a)  Are licensed for use on public roads; or
    (b)  Are operated principally away from the insured premises;

8.  Aircraft or watercraft;

9.  Live animals or birds;

10.  Bulkheads, pilings, piers, wharves, docks, dikes, dams, canals, sea walls or vehicular bridges;

11. Underground tanks, pipes, flues, drains or tunnels, all whether or not connected to buildings, mines or mining property;

12. Any "Electronic Data Processing Data and Media" which is obsolete or unused by the Insured;

13. Property that is covered under another coverage form or endorsement of any other policy in which it is more specifically described, except for the excess of the amount due (whether the Insured can collect on it or not) from that other Insurance;

14. Any of the specific types of Covered Property described in Sections B.1.a. through B.1.l. of this Coverage Form for which a Limit of Insurance is not shown in the Supplemental Coverage Declarations; or

15. Any of the following Covered Costs and Expenses for which a Limit of Insurance is not shown in the Supplemental Coverage Declarations:

   a. Pollutant Clean Up and Removal, as described in Section B.2.b.;

   b. Claim Data Expense, as described in Section B.2.c.; or

   c. Ordinance or Law, as described in Section B.2.f.

## D.  EXCLUSIONS

1. The Company will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

   a.  **EARTH MOVEMENT**

   (1) Any earth movement (other than "sinkhole collapse") including earthquake, mine subsidence, landslide, erosion, the expansion or contraction of soil due to the presence of moisture or water, or the lack thereof, and any other earth sinking, rising, shifting or movement, all whether naturally occurring or due to man made or other artificial causes.

   But if earth movement results in fire or explosion, the Company will pay for the loss or damage caused by that fire or explosion.

   (2) Volcanic eruption, explosion or effusion. But if volcanic eruption, explosion or effusion results in "volcanic action" or fire, the Company will pay for the loss or damage caused by that "volcanic action" or fire.

   All "volcanic action" that results from all volcanic eruptions or explosions that occur within any 168 consecutive hours period will constitute a single occurrence.

   b.  **FLOOD**

   Flood meaning:

   (1) Surface water, underground water, waves, tides, tidal waves, overflow of any body of water, or their spray, all whether driven by wind or not;
   (2) Mudslide or mudflow;
   (3) Release of water impounded by a dam; and
   (4) Water or sewage which backs up through sewers, drains or sumps.

   This exclusion will not apply to direct loss or damage from resulting fire, explosion or leakage from fire protective equipment; however, the Company will be liable only for such resulting loss or damage.

   c.  **GOVERNMENTAL ACTION**

   Seizure or destruction of property by order of governmental authority except as provided for under the Covered Costs and Expenses, Section B.2.f. Ordinance or Law.

   But the Company will pay for loss or damage caused by or resulting from acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread, if the fire would be covered under this Coverage Form.

d.  **NUCLEAR HAZARD**

Nuclear reaction or radiation, or radioactive contamination however caused.

This exclusion will not apply to direct loss or damage by:
(1)  Fire resulting from nuclear reaction or radiation, or radioactive contamination; or
(2)  Sudden and accidental radioactive contamination, including resultant radiation damage to Covered Property provided:
  (a)  Such radioactive contamination arises out of material at the insured's premises;
  (b)  Such radioactive material is kept at an insured's premises for the purpose of the insured's operations; and
  (c)  At the time of such loss at the insured's premises there is neither a nuclear reactor capable of sustaining nuclear fission in a self-supporting chain reaction, nor any new or used nuclear fuel which is intended for or which has been used in a nuclear reaction.

But the most the Company will pay for Sudden and Accidental Radioactive Contamination as provided in d. (2)(a), (b) and (c) above is the specified Limit of Insurance shown in the Supplemental Coverage Declarations. This is not additional insurance.

e.  **WAR AND MILITARY ACTION**

(1)  Hostile or warlike action in time of peace or war, including action in hindering, combating or defending against an actual, impending or expected attack:
  (a)  By any government or sovereign power (de jure or de facto), or by any authority maintaining or using military, naval or air forces; or
  (b)  By military, naval or air forces; or
  (c)  By an agent of any such government, power, authority or forces.

(2)  Insurrection, rebellion, revolution, civil war, usurped power, or action taken by governmental authority in hindering, combating or defending against such an occurrence.

(3)  Any discharge, explosion or use of any weapon of war employing nuclear fission or fusion will be conclusively presumed to be such a hostile or warlike action by such a government, power, authority or forces.

f.  **COMPUTER VIRUS**

Computer Virus means intrusive codes or programming that are entered into a computer system causing direct physical loss or damage to, or destruction of, "Electronic Data Processing Equipment" or "Electronic Data Processing Data and Media".

This exclusion will not apply in the event the Computer Virus results in a "specified cause of loss"; however, the Company will be liable only for such resulting loss or damage.

g.  **PROGRAMMING ERRORS OR OMISSIONS**

Programming errors, omissions or incorrect instructions to a machine.

This exclusion will not apply in the event Programming errors, omissions or incorrect instructions to a machine results in a "specified cause of loss", however, the Company will be liable only for such resulting loss or damage.

h.  **ORDINANCE OR LAW**

The enforcement of any ordinance or law:

(1)  Regulating the construction, use or repair of any property; or
(2)  Requiring the tearing down of any property, including the cost of removing its debris;

except as provided in the Covered Costs and Expenses, Item B.2.f. Ordinance or Law.

The Ordinance or Law exclusion applies whether the loss results from an ordinance or law that is enforced even if the property has not been damaged; or from the increased costs incurred to comply with an ordinance or law in the course of construction, remodeling or demolition of property, or removal of its debris, following a physical loss to that property.

I.  **OFF PREMISES UTILITY SERVICES**

The interruption, failure or fluctuation of power or other utility service(s) provided to an insured premises if the cause of the interruption, failure or fluctuation occurs off an insured premises.

This exclusion will not apply in the event the interruption, failure or fluctuation of power or other utility service(s) results in a Covered Cause of Loss; however, the Company will be liable only for such resulting loss or damage.

J.  **COLLAPSE OF BUILDINGS**

Collapse of buildings meaning an abrupt falling down or caving in of a building or substantial portion of a building with the result being that the building or substantial portion of a building cannot be occupied for its intended purpose.

(1) This exclusion will not apply to collapse of buildings if caused only by one or more of the following:

(a) A "specified cause of loss";
(b) Decay or insect or vermin damage that is hidden from view, unless the presence of such decay or insect or vermin damage is known to the insured prior to collapse;
(c) Weight of people or personal property;
(d) Weight of rain that collects on a roof;
(e) Use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of construction, remodeling or renovation; or
(f) Use of defective material or methods in construction, remodeling, or renovation if the collapse occurs after construction, remodeling, or renovation is complete and is caused in part by a cause of loss listed in j. (1) (a) through (d) above.

In the event collapse results in a Covered Cause of Loss, the Company will be liable only for such resulting loss or damage by that Covered Cause of Loss.

(2) A building or portion of a building that:
(a) Is in imminent danger of abruptly falling down or caving in; or
(b) Suffers a substantial impairment of structural integrity;
is not considered a collapse but is considered to be in a state of imminent collapse.

(3) As respects buildings in a state of imminent collapse, the Company will not pay for loss or damage unless the state of imminent collapse first manifests itself during the policy period and is caused only by one or more of the following which occurs during the policy period:
(a) Fire; lightning; explosion; windstorm or hail; aircraft or vehicles; riot or civil commotion; "sinkhole collapse"; weight of snow, ice or sleet;
(b) Weight of people or personal property;
(c) Weight of rain that collects on a roof; or
(d) Use of defective material or methods in construction, remodeling or renovation if the state of imminent collapse occurs during the course of construction, remodeling or renovation.

As respects "Electronic Data Processing Equipment" and "Electronic Data Processing Data and Media", only exclusions D.1.a. through g. and D.1.l. apply. As respects Accounts Receivable, and Valuable Papers and Records, only exclusions D.1.a. through g. apply.  As respects Property in the due course of transit, Exclusions D.1.e. and D.1.b. do not apply.

2.  The Company will not pay for loss or damage caused by or resulting from any of the following:

a.  Artificially generated electric current, including electric arcing, that disturbs electrical devices, equipment, appliances or wires.

But in the event artificially generated electric current results in fire or explosion, the Company will be liable only for such resulting loss or damage.

b.  Indirect or remote loss or damage; delay, loss of use or loss of market; or interruption of business;

c.  (1) Wear and tear or depletion;
(2) Rust, corrosion, erosion, fungus, decay, deterioration, wet or dry rot, mold, hidden or latent defect or any quality in the property that causes it to damage or destroy itself;

MS C1 00 01 00

    (3) Settling, cracking, shrinking, bulging or expansion;

    (4) Nesting or infestation or discharge or release of waste products or secretions, by insects, birds, rodents or other animals;

    (5) Mechanical or machinery breakdown, including rupture or bursting caused by centrifugal force; and

    (6) The following causes of loss to personal property:

        (a) Dampness or dryness of atmosphere;

        (b) Changes in or extremes of temperature;

        (c) Changes in flavor, color, texture or finish; and

        (d) Contamination, evaporation or leakage.

However, in the event an excluded cause of loss that is listed in 2.c. (1) through (6) above results in a "specified cause of loss", the Company will pay for the loss or damage caused by that "specified cause of loss".

d.   Explosion of steam boilers, steam pipes, steam engines or steam turbines owned or leased by the Insured, or operated under the Insured's control. But if explosion of steam boilers, steam pipes, steam engines, or steam turbines results in fire or combustion explosion, the Company will pay for loss or damage caused by that fire or combustion explosion. The Company will also pay for loss or damage caused by or resulting from the explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

e.   Dishonest or criminal act by the Insured, any of the Insured's partners, employees (including leased employees), directors, trustees, authorized representatives or anyone (other than a carrier for hire or bailee) to whom the Insured entrusts the property for any purpose:

    (1) Acting alone or in collusion with others; and

    (2) Whether or not occurring during the hours of employment.

This exclusion does not apply to acts of destruction by the Insured's employees, (including leased employees) but theft by the Insured's employees (including leased employees) is not covered.

f.   Rain, snow, sand, dust, ice, or sleet to personal property in the open (other than to property in the custody of a carrier for hire).

g.   The cost of correcting or making good the damage to personal property attributable to such property being processed, manufactured, tested or otherwise being worked upon.

h.   Discharge, dispersal, seepage, migration, release or escape of "pollutants" unless the discharge, dispersal, seepage, migration, release or escape is itself caused by a "specified cause of loss". But in the event the discharge, dispersal, seepage, migration, release or escape of "pollutants" results in a "specified cause of loss", the Company will be liable only for such resulting loss or damage caused by that "specified cause of loss".

i.   Voluntary parting with any property by the Insured or anyone else to whom the Insured has entrusted the property.

j.   Accumulated effects of smog, smoke, vapor, liquid or dust.

k.   If the building or leased premises where loss or damage has occurred has been "vacant" for more than 60 consecutive days before that loss or damage occurs, the Company will not pay for any loss or damage caused by any of the following, even if they are Covered Causes of Loss:

    (1) Vandalism;

    (2) Sprinkler leakage;

    (3) Building glass breakage;

    (4) Water damage;

    (5) Theft; or

    (6) Attempted theft.

Buildings under construction or renovation are not considered "vacant".

l.   Continuous or repeated seepage, leakage or flow of water that occurs over a period of 14 days or more.

m.   Shortage disclosed by audit or upon taking inventory or by a profit and loss statement or other instances where there is no physical evidence to show what happened to the property.

KTJ-CMB-187D484-4-05

As respects Accounts Receivable, Valuable Papers and Records, "Electronic Data Processing Equipment" and "Electronic Data Processing Data and Media" only the following exclusions in Section D.2 apply:

    (1) Exclusions c. (1), c. (6) (a) and c. (6) (b); but if mechanical breakdown not otherwise excluded results, the Company will pay for that resulting loss or damage by mechanical breakdown; and

    (2) Exclusions b., e., g., i. and m.

3. The Company will not pay for loss or damage caused by or resulting from any of the following:

    a. Weather conditions. But this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in D.1 above to produce the loss or damage.

    b. Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

    c. Faulty, inadequate or defective:

        (1) Planning, zoning, development, surveying, siting;

        (2) Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

        (3) Materials used in repair, construction, renovation or remodeling; or

        (4) Maintenance;

    of part or all of any property on or off an insured premises.

However, in the event an excluded cause of loss that is listed in 3.a. through 3.c. above results in a Covered Cause of Loss, the Company will be liable only for such resulting loss or damage.

## E.  LIMITATIONS

1. The Company will not pay for loss of or damage to property, as described and limited in this section. In addition, the Company will not pay for any loss that is a consequence of loss or damage as described and limited in this section.

    a. Steam boilers, steam pipes, steam engines or steam turbines caused by or resulting from any condition or event inside such equipment. But the Company will pay for loss of or damage to such equipment caused by or resulting from an explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

    b. Hot water boilers or other water heating equipment caused by or resulting from any condition or event inside such boilers or equipment, other than explosion.

2. As respects furs, fur garments and garments trimmed with fur, jewelry, watches, watch movements, jewels, pearls, precious and semi-precious stones, bullion, gold, silver, platinum and other precious alloys or metals, the most the Company will pay for loss or damage by theft, regardless of the types or number of articles that are lost or damaged is $50,000.

3. The Company will not pay the cost to repair any defect to a system or appliance from which water, other liquid, powder or molten material escapes. But the Company will pay the cost to repair or replace damaged parts of the fire extinguishing equipment if the damage:

    a. Results in discharge of any substance from an automatic fire protections system; or

    b. Is directly caused by freezing.

## F.  DEDUCTIBLES

When a deductible(s) is shown in the Supplemental Coverage Declarations, refer to Section B. Application of Deductibles in the General Conditions.

## G.  DEFINITIONS

1. "Electronic Data Processing Data and Media" means:

    (a) Electronic data processing, recording or storage media such as films, tapes, discs, drums or cells, or similar magnetic recording or storage devices;

    (b) Data stored on such media; and

    (c) Original programming materials used to enter data and/or program media.

2.  **"Electronic Data Processing Equipment"** means electronic data processing equipment, facsimile machines, word processors, multi-functional telephone equipment, laptop and portable computers; related surge protection devices; and their component parts and peripherals used solely for data processing operations.

3.  **"Exhibition"** means the temporary display of personal property at a convention, exposition, trade show or similar event at a location not owned or regularly occupied by the Insured.

4.  **"Fine Arts"** means paintings, etchings, pictures, tapestries, art glass windows, valuable rugs, statuary, marbles, bronzes, antique furniture, rare books, antique silver, manuscripts, porcelains, rare glass, bric-a-brac and similar property of rarity, historical value, or artistic merit.

5.  **"Finished Stock"** means goods manufactured by the Insured that in the ordinary course of the Insured's business are in their completed state and ready for sale.

    "Finished Stock" does not include goods manufactured by the Insured that are held for sale on the premises of any retail outlet insured under this Coverage Form.

6.  **"Outdoor Property"** means retaining walls not part of a building, lawns (including fairways, greens and tees), trees, shrubs, plants, bridges (excluding vehicular bridges), walks, roadways, patios or other paved surfaces.

7.  **"Pollutants"** means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, waste and any unhealthy or hazardous building materials (including but not limited to asbestos and lead products or materials containing lead). Waste includes materials to be recycled, reconditioned or reclaimed.

8.  **"Raw Stock"** means material in the state in which the Insured receives it for conversion by the Insured into "Stock in Process" or "Finished Stock".

9.  **"Sinkhole Collapse"** means the sudden sinking or collapse of land into underground empty spaces created by the action of water on limestone or dolomite.

    This cause of loss does not include:
    a.  The cost of filling sinkholes; or
    b.  Sinking or collapse of land into man made underground cavities.

10. **"Specified Cause of Loss"** means any of the following: Fire; lightning; explosion; windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire extinguishing equipment; "sinkhole collapse"; "volcanic action"; falling objects; weight of snow, ice or sleet; or water damage.

    a.  Falling objects does not include loss or damage to:
        (1)  Personal property in the open; or
        (2)  The interior of a building, or property inside a building, unless the roof or an outside wall of the building is first damaged by a falling object.

    b.  Water damage means accidental discharge or leakage of water or steam as the direct result of the breaking apart or cracking of any part of a system or appliance (other than a sump system including its related equipment and parts) containing water or steam.

11. **"Stock"** means merchandise held in storage or for sale, "Raw Stock", "Stock in Process" or "Finished Stock" including supplies used in their packing or shipping.

12. **"Stock In Process"** means "raw stock" which has undergone any aging, seasoning, mechanical or other process of manufacturing but which has not become "finished stock".

13. **"Vacant"** means:

    a.  When 90% or more of the square footage of the entire building is not rented or is not used to conduct customary operations; or
    b.  When a unit or suite rented or leased to a tenant does not contain enough Business Personal Property to conduct customary operations.

KTJ-CMB-187D484-4-05

14. **"Volcanic Action"** means direct loss or damage resulting from the eruption of a volcano when the loss or damage is caused by:
   a. Airborne volcanic blast or airborne shock waves;
   b. Ash, dust or particulate matter; or
   c. Lava flow

"Volcanic Action" does not include the cost to remove ash, dust or particulate matter that does not cause direct physical loss or damage to the Covered Property.

MS C1 02 02 00

# BUSINESS INCOME COVERAGE FORM EXCLUDING EXTRA EXPENSE

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered. Words and phrases that appear in quotation marks have special meaning; refer to Section G., Definitions in this form and to Section G., Definitions in the Property Coverage Form.

## A. COVERAGE

The Company will pay for the actual loss of Business Income and/or Rental Value sustained by the Insured due to the necessary "suspension" of the Insured's "operations" during the "period of restoration". The "suspension" must be caused by direct physical loss or damage to property, including personal property in the open (or in a vehicle) within 1,000 feet, at the Insured's premises:

- Which are described in the most recent Statement of Values or Business Income Work Sheet(s) or other documentation on file with the Company; and
- For which a value for the exposure at the premises to which this form applies has been reported.

The loss or damage must be caused by or result from a Covered Cause of Loss. Covered Cause of Loss means risks of direct physical loss unless the loss is excluded in Section C., Exclusions; limited in Section D., Limitations; or excluded or limited in the Supplemental Coverage Declarations or by endorsement.

Coverage is provided as described below only when a Limit of Insurance is shown for the specified coverage in the Supplemental Coverage Declarations.

### 1. Business Income

Business Income means the Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred by the Insured; and continuing normal operating expenses incurred by the Insured. But Business Income does not include Rental Value.

Continuing normal operating expenses incurred by the Insured exclude "ordinary payroll expenses" except when "ordinary payroll expenses" are either included or limited to a specified number of days as indicated on the Supplemental Coverage Declarations. If limited, the number of consecutive days during which coverage for "ordinary payroll expenses" applies may be used in two separate periods during the "period of restoration". The Company will also pay for those continuing fixed charges and expenses, excluding "ordinary payroll expenses" (unless otherwise included or limited), directly attributable to "research and development" activities even if the activities would not have produced income during the "period of restoration".

### 2. Rental Value

Rental Value means the:

a. Total anticipated rental income;
b. Amount of all charges which are the legal obligation of the tenant(s) and which would otherwise be the obligation of the Insured; and
c. Fair rental value of any portion of the Insured's premises that is occupied by the Insured;

less any operating expenses that do not continue from tenant occupancy of the premises as furnished and equipped by the Insured.

## B. ADDITIONAL COVERAGE EXTENSIONS – Each of the following Additional Coverage Extensions applies only when a Limit of Insurance is shown in the Supplemental Coverage Declarations except for items 1., 2. and 7. which do not require a specific Limit of Insurance to be shown:

### 1. Civil Authority

The insurance provided by this coverage form is extended to apply to such loss of Business Income or Rental Value incurred by the Insured caused by the action of civil authority that prohibits access to the Insured's premises due to direct physical loss or damage to property, other than at the Insured's premises, caused by or resulting from a Covered Cause of Loss.

Coverage for Business Income and/or Rental Value will begin 72 hours after the time of the civil authority action and will then apply for a period of up to 30 consecutive days. No other hour deductible applicable to Business Income and/or Rental Value applies to this coverage.

### 2. Extended Business Income or Rental Value

KTJ-CMB-187D484-4-05

MS C1 02 02 00

If the necessary "suspension" of the Insured's "operations" produces a Business Income or Rental Value loss payable under this policy, the insurance provided by this coverage form is extended to apply to such loss of Business Income or Rental Value incurred by the Insured during the period that:

a. Begins on the date property (except "finished stock") is actually repaired, rebuilt or replaced and "operations" are resumed or tenantability is restored; and

b. Ends on the earlier of:

    (1) The date the Insured could restore "operations", with reasonable speed, to the level which would generate the Business Income amount or Rental Value amount that would have existed if no direct physical loss or damage had occurred; or

    (2) 60 consecutive days after the date determined in 2.a. above.

However, this Additional Coverage Extension does not apply to loss of Business Income or Rental Value incurred as a result of unfavorable business conditions caused by the impact of the Covered Cause of Loss in the area where the Insured's premises are located.

Loss of Business Income or Rental Value must be caused by direct physical loss or damage to property at the Insured's premises, the premises of a "dependent property", newly acquired premises or undescribed premises, all only as insured under this coverage form, caused by or resulting from a Covered Cause of Loss.

The expiration date of this policy will not cut short the extended Business Income or Rental Value period of coverage.

3. **"Dependent Property"**

The insurance provided by this coverage form is extended to apply to such loss of Business Income or Rental Value incurred by the Insured during the "period of restoration" due to direct physical loss or damage by a Covered Cause of Loss to property at the premises of a "dependent property" within the Policy Territory.

This Additional Coverage Extension does not apply to "dependent property" for which the Insured has more specific insurance either under this policy or another.

4. **Ordinance or Law – Increased "Period of Restoration"**

a. If a Covered Cause of Loss occurs to property at the Insured's premises, the "period of restoration" is increased to include the additional period of "suspension" of "operations" caused by or resulting from the enforcement of any ordinance or law that:

    (1) Regulates the construction, repair or replacement of any property;

    (2) Requires the tearing down or replacement of any parts of property not damaged by a Covered Cause of Loss; and

    (3) Is in force at the time of loss.

b. Insurance under this Additional Coverage Extension applies only to the increased period required to repair or replace the property to comply with the minimum requirements of the ordinance or law.

c. Under this Additional Coverage Extension, the Company will not pay for:

    (1) Any loss due to any ordinance or law that:

        (a) The Insured was required to comply with before the loss, even if the property was undamaged; and

        (b) The Insured failed to comply with.

    (2) Costs associated with the enforcement of any ordinance or law which requires any Insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

5. **Newly Acquired Premises**

a. The insurance provided by this coverage form is extended to apply to such loss of Business Income or Rental Value incurred by the Insured during the "period of restoration" due to direct physical loss or damage by a Covered Cause of Loss to property within the Policy Territory at any:

    (1) Premises newly acquired by the Insured; and

    (2) Premises the Insured becomes newly required to insure under a written contract.

b. Insurance under this Additional Coverage Extension for each premises will end when any of the following first occurs:

    (1) This policy is cancelled or expires;

MS C1 02 02 00

    (2) 120 days expire after the Insured acquires or begins to construct the property or is required to insure the property;

    (3) The Insured reports the new premises to the Company; or

    (4) The Business Income or Rental Value is more specifically Insured elsewhere.

  c.  The Company will charge the Insured additional premium for values reported from the date the Insured acquires the property or is required to insure the property.

## 6. Undescribed Premises

The Insurance provided by this coverage form is extended to apply to such loss of Business Income or Rental Value incurred by the Insured during the "period of restoration" due to direct physical loss or damage by a Covered Cause of Loss to the Covered Property, as described in the Property Coverage Form, while at an Undescribed Premises. Undescribed Premises means premises not owned, leased or regularly operated by the Insured. Covered Property at an Undescribed Premises does not include:

  a.  Property at the premises of "dependent property";

  b.  Property in due course of transit; or

  c.  Property at any premises outside of the Policy Territory. But this exclusion does not apply to Covered Property at an "exhibition", unless the "exhibition" is within any country on which the United States government has imposed sanctions, embargoes or any other similar prohibitions.

## 7. Expenses to Reduce Loss

The Company will pay reasonable and necessary expenses incurred by the Insured, except the cost of extinguishing a fire, to reduce the amount of loss under this coverage form. The total of the Company's payment for Business Income or Rental Value loss and Expenses to Reduce Loss will not be more than the Business Income or Rental Value loss that would have been payable under this coverage form (after application of any Coinsurance penalty) if the Expenses to Reduce Loss had not been incurred. This coverage does not increase the Limit of Insurance for either Business Income or Rental Value. If a Coinsurance Endorsement is attached to this policy, it does not apply specifically to such Expenses to Reduce Loss, but it is used as described above to determine the aggregate amount payable.

## 8. Claim Data Expense

This insurance applies to the reasonable expenses incurred by the Insured in preparing claim data when required by the Company. This includes the cost of preparing income statements and other documentation to show the extent of loss. The Company will not pay for any expenses incurred, directed, or billed by or payable to insurance adjusters or their associates or subsidiaries, or any costs as provided in General Conditions - Section C. Appraisal.

## C. EXCLUSIONS

  1.  All of the exclusions contained in Section D. of the Property Coverage Form apply to this coverage form except:

    a.  Exclusion 1.h., Ordinance or Law, is amended by the addition of the following:

      This exclusion does not apply to the Ordinance or Law – Increased "Period of Restoration" Additional Coverage Extension.

    b.  Exclusion 1.i., Off Premises Utility Services, is replaced by the following:

      The interruption, failure or fluctuation of power or other utility service(s) provided to the Insured premises if the cause of the interruption, failure or fluctuation occurs outside a building at the Insured's premises.

      This exclusion will not apply in the event the interruption, failure or fluctuation of power or other utility service(s) results in a Covered Cause of Loss; however, the Company will be liable only for such resulting loss.

    c.  Exclusion 2.b., Indirect or remote loss or damage; delay, loss of use or loss of market; or interruption of business, does not apply to the extent coverage is specifically provided under this coverage form.

  2.  In addition, the Company will not pay for:

    a.  Any loss caused by or resulting from:

KTJ-CMB-187D484-4-05

(1) Damage or destruction of "finished stock"; or
(2) The time required to reproduce "finished stock".

b.  Any loss caused by or resulting from direct physical loss or damage to outdoor trees, shrubs, plants or lawns (including fairways, greens and tees); growing crops; standing timber; land; water; or radio or television antennas (including microwave satellite dishes), and their lead-in wiring, masts or towers.

c.  Any loss or damage to property while in due course of transit.

d.  Any increase of loss caused by or resulting from:
(1) Delay in rebuilding, repairing or replacing the property or resuming "operations" due to interference at the location of the rebuilding, repair or replacement by strikers or other persons; or
(2) Any license, lease or contract which is suspended, lapses or is cancelled. But if the license, lease or contract is suspended, lapses or is cancelled as the direct result of the "suspension" of "operations", the Company will cover such loss that affects the insured's Business Income or Rental Value during the "period of restoration" and the period of Extended Business Income or Rental Value.

e.  Any extra expense, except as provided in the Expenses to Reduce Loss Additional Coverage Extension.

f.  Any other consequential loss.

## D.  LIMITATIONS

Under Section E. of the Property Coverage Form, Limitation 2., which limits the amount the Company will pay for theft loss to specified types of personal property, does not apply to this coverage form. All other limitations contained in Section E. of the Property Coverage Form apply to this coverage form. In addition, the following limitation applies:

### Limitation – "Electronic Data Processing Data and Media"

The Company will not pay for any loss of Business Income or Rental Value caused by direct physical loss or damage to "Electronic Data Processing Data and Media" after the longer of:

1.  60 consecutive days from the date of direct physical loss or damage; or

2.  The period, beginning with the date of direct physical loss or damage, necessary to repair, rebuild or replace, with reasonable speed and similar quality, other property at the insured premises which suffered loss or damage in the same occurrence.

## E.  DEDUCTIBLES

When a deductible(s) is shown in the Supplemental Coverage Declarations, refer to Section B. Application of Deductibles in the General Conditions.

## F.  ADDITIONAL CONDITION

The following condition applies in addition to the conditions contained in the General Conditions.

### Loss Determination

1.  The amount of Business Income or Rental Value loss will be determined based on:
a.  The Net Income or Rental Value of the business before the direct physical loss or damage occurred;
b.  The likely Net Income or Rental Value of the business if no direct physical loss or damage occurred, but not including any likely increase in Net Income or Rental Value attributable to an increase in the volume of business as a result of favorable business conditions caused by the impact of the Covered Cause of Loss on customers or on other businesses;
c.  The operating expenses, including "ordinary payroll expenses" to the extent insured, necessary to resume "operations" with the same quality of service that existed just before the direct physical loss or damage; and
d.  Other relevant sources of information, including:
(1) The financial records and accounting procedures of the insured;
(2) Bills, invoices and other vouchers; and
(3) Deeds, liens, contracts or leases.

2.  The Company will reduce the amount of the insured's Business Income or Rental Value loss, to the extent the insured can resume "operations" in whole or in part, by using:

a.  Damaged or undamaged property (including merchandise or stock) at the insured's premises or elsewhere; or

KTJ-CMB-187D484-4-05

    b.  Any other available sources of materials or outlets for the Insured's products.

  3.  If the Insured intends to continue the Insured's business, the Insured must resume "operations", in whole or in part, as quickly as possible. If the Insured does not resume "operations", or does not resume "operations" as quickly as possible, the Company will pay based on the length of time it would have taken to resume "operations" as quickly as possible.

## G. DEFINITIONS

The following definitions are in addition to those contained in the Property Coverage Form:

  1.  **"Dependent Property"** means property operated by others that the Insured depends on to:

    a.  Supply materials or services to the Insured, or to others for the account of the Insured (Contributing Locations). With respect to Contributing Locations, services do not mean utility services including but not limited to water supply services, communication supply services, or power supply services supplying electricity, steam or gas;

    b.  Accept the Insured's products or services (Recipient Locations);

    c.  Manufacture products for delivery to the Insured's customers under contract of sale (Manufacturing Locations); or

    d.  Attract customers to the Insured's business (Leader Locations).

  2.  **"Exhibition"** means the temporary display of personal property at a convention, exposition, trade show or similar event at a location not owned or regularly occupied by the Insured.

  3.  **"Operations"** means:

    a.  The Insured's business activities occurring at the Insured's premises; and

    b.  The tenantability of the Insured's premises when coverage for Rental Value applies.

  4.  **"Ordinary Payroll Expenses"** means payroll expenses for all employees of the Insured except: Officers; Executives; Department managers; Employees under contract; and any Additional Exemptions for which coverage is added by endorsement for specific Job Classifications or Employees.

"Ordinary payroll expenses" include:

    a.  Payroll;

    b.  Employee benefits, if directly related to payroll;

    c.  FICA and Medicare payments;

    d.  Union dues; and

    e.  Worker's compensation premiums.

  5.  **"Period of Restoration"**

    a.  Except as provided in paragraphs b. and c. below, "period of restoration" means the period of time that:

      (1) Begins with the date and time of direct physical loss or damage to property at the Insured premises caused by or resulting from a Covered Cause of Loss; and

      (2) Ends on the earlier of the following:

        (a) The date when the property should be repaired, rebuilt or replaced with reasonable speed and similar quality; or

        (b) The date when business is resumed at a new permanent location.

    b.  If:

      (1) The direct physical loss or damage by a Covered Cause of Loss is to any of the following property at premises to which this insurance applies:

        (a) New buildings or structures, whether complete or under construction;

        (b) Alterations or additions to existing buildings or structures; or

        (c) Machinery, equipment, supplies or building materials on or within 1000 feet of the premises that are used in the construction, alterations or additions, or incidental to the occupancy of the buildings;

        and

      (2) Such direct physical loss or damage delays the start of "operations";

KTJ-CMB-187D484-4-05

the "period of restoration" for Business Income or Rental Value will be the same length of time provided in a. above, but will not begin until the date when "operations" would have begun if the direct physical loss or damage had not occurred.

   c.  When a number of hours is shown in the deductible item in the Supplemental Coverage Declarations for Business Income or Rental Value, the "period of restoration" will not begin until that number of hours immediately following the date and time the "period of restoration" would otherwise have begun, as described in a. and b. above.

   d.  "Period of restoration" does not include any increased period required due to the enforcement of any ordinance or law that:

      (1)  Regulates the construction, use, repair or replacement, or requires the tearing down of any property, except as provided under the Ordinance or Law – Increased "Period of Restoration" Additional Coverage Extension; or

      (2)  Requires any Insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess, the effects of "pollutants".

   e.  The expiration date of this policy will not cut short the "period of restoration".

6.  **"Research and Development"** means the development of new products and enhancements of existing products. "Research and development" does not mean the maintenance of existing products.

7.  **"Suspension"** means:

   a.  The partial or complete cessation of the Insured's business "operations"; or

   b.  That a part or all of the Insured premises is rendered untenantable, if coverage for Rental Value is provided.

KTJ-CMB-187D484-4-05

MS C1 03 07 99

# EXTRA EXPENSE COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered. Words and phrases that appear in quotation marks have special meaning; refer to Section F., Definitions in this form and to Section G., Definitions in the Property Coverage Form.

## A. COVERAGE

The Company will pay the actual reasonable and necessary Extra Expense sustained by the Insured during the "period of restoration" due to direct physical loss or damage to property, including personal property in the open (or in a vehicle) within 1,000 feet, at the Insured's premises:

- Which are described in the most recent Statement of Values or other documentation on file with the Company; and
- For which a value for the exposure at the premises to which this form applies has been reported.

The loss or damage must be caused by or result from a Covered Cause of Loss. Covered Cause of Loss means risks of direct physical loss unless the loss is excluded in Section C., Exclusions; limited in Section D., Limitations; or excluded or limited in the Supplemental Coverage Declarations or by endorsement.

Coverage is provided as described below only when a Limit of Insurance is shown for Extra Expense in the Supplemental Coverage Declarations.

**Extra Expense**

Extra Expense means the following expenses the Insured incurs that the Insured would not have incurred if there had been no direct physical loss or damage to property caused by or resulting from a Covered Cause of Loss:

1. Reasonable and necessary expenses to avoid or minimize the "suspension" of business and to continue "operations":
   a. At the Insured's premises; or
   b. At replacement premises or at temporary locations, including relocation expenses and costs to equip and operate the replacement premises or temporary locations;
2. Reasonable and necessary expenses to minimize the "suspension" of business if the Insured can not continue "operations"; and
3. Reasonable and necessary expenses to:
   a. Repair or replace any property; or
   b. Research, replace or restore the lost information on damaged valuable papers and records;
   to the extent they reduce the amount of loss that otherwise would have been payable under this coverage form.

## B. ADDITIONAL COVERAGE EXTENSIONS – Each of the following Additional Coverage Extensions applies only when a Limit of Insurance is shown in the Supplemental Coverage Declarations except for Item 1. which does not require a specific Limit of Insurance to be shown:

### 1. Civil Authority

The Insurance provided by this coverage form is extended to apply to the Extra Expense incurred by the Insured caused by the action of civil authority that prohibits access to the Insured's premises due to direct physical loss or damage to property, other than at the Insured's premises, caused by or resulting from a Covered Cause of Loss.

Coverage for Extra Expense will begin immediately after the action of the civil authority and will end 30 days after the date of the civil authority action.

### 2. "Dependent Property"

The Insurance provided by this coverage form is extended to apply to the Extra Expense incurred by the Insured during the "period of restoration" due to direct physical loss or damage by a Covered Cause of Loss to property at the premises of a "dependent property" within the Policy Territory.

This Additional Coverage Extension does not apply to "dependent property" for which the Insured has more specific insurance either under this policy or another.

KTJ-CMB-187D484-4-05

MS C1 03 07 99

3. **Ordinance or Law – "Increased Period of Restoration"**

   a. If a Covered Cause of Loss occurs to property at the Insured's premises, the "period of restoration" is increased to include the additional period of "suspension" of "operations" caused by or resulting from the enforcement of any ordinance or law that:

      (1) Regulates the construction, repair or replacement of any property;

      (2) Requires the tearing down or replacement of any parts of property not damaged by a Covered Cause of Loss; and

      (3) Is in force at the time of loss.

   b. Insurance under this Additional Coverage Extension applies only to the increased period required to repair or replace the property to comply with the minimum requirements of the ordinance or law.

   c. Under this Additional Coverage Extension, the Company will not pay for:

      (1) Any loss due to any ordinance or law that:

         (a) The Insured was required to comply with before the loss, even if the property was undamaged; and

         (b) The Insured failed to comply with.

      (2) Costs associated with the enforcement of any ordinance or law which requires any Insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

4. **Newly Acquired Premises**

   a. The insurance provided by this coverage form is extended to apply to the Extra Expense incurred by the Insured during the "period of restoration" due to direct physical loss or damage by a Covered Cause of Loss to property within the Policy Territory at any:

      (1) Premises newly acquired by the Insured; and

      (2) Premises the Insured becomes newly required to insure under a written contract.

   b. Insurance under this Additional Coverage Extension for each premises will end when any of the following first occurs:

      (1) This policy is cancelled or expires;

      (2) 120 days expire after the Insured acquires or begins to construct the property or is required to insure the property;

      (3) The Insured reports the new premises to the Company; or

      (4) The Extra Expense is more specifically insured elsewhere.

   c. The Company will charge the Insured additional premium for values reported from the date the Insured acquires the property or is required to insure the property.

5. **Undescribed Premises**

   The insurance provided by this coverage form is extended to apply to the Extra Expense incurred by the Insured during the "period of restoration" due to direct physical loss or damage by a Covered Cause of Loss to the Covered Property, as described in the Property Coverage Form, while at an Undescribed Premises. Undescribed Premises means premises not owned, leased or regularly operated by the Insured. Covered Property at an Undescribed Premises does not include:

   a. Property at the premises of "dependent property";

   b. Property in due course of transit; or

   c. Property at any premises outside of the Policy Territory. But this exclusion does not apply to Covered Property at an "exhibition", unless the "exhibition" is within any country on which the United States government has imposed sanctions, embargoes or any other similar prohibitions.

6. **Claim Data Expense**

   This insurance applies to the reasonable expenses incurred by the Insured in preparing claim data when required by the Company. This includes the cost of preparing statements and other documentation to show the extent of the loss. The Company will not pay for any expenses incurred, directed or billed by or payable to insurance adjusters or their associates or subsidiaries, or any costs as provided in General Conditions - Section C. Appraisal.

C. **EXCLUSIONS**

1. All of the exclusions contained in Section D. of the Property Coverage Form apply to this coverage form except:

   a. Exclusion 1.h., Ordinance or Law, is amended by the addition of the following:

      This exclusion does not apply to the Ordinance or Law – Increased "Period of Restoration" Additional Coverage Extension.

   b. Exclusion 1.i., Off Premises Utility Services, is replaced by the following:

      The interruption, failure or fluctuation of power or other utility service(s) provided to the insured premises if the cause of the interruption, failure or fluctuation occurs outside a building at the insured's premises.

      This exclusion will not apply in the event the interruption, failure or fluctuation of power or other utility service(s) results in a Covered Cause of Loss; however, the Company will be liable only for such resulting loss.

   c. Exclusion 2.b., Indirect or remote loss or damage; delay, loss of use or loss of market; or interruption of business, does not apply to the extent coverage is specifically provided under this coverage form.

2. In addition, the Company will not pay for:

   a. Any loss caused by or resulting from direct physical loss or damage to outdoor trees, shrubs, plants or lawns (including fairways, greens and tees); growing crops; standing timber; land; water; or radio or television antennas (including microwave satellite dishes), and their lead-in wiring, masts or towers.

   b. Any loss or damage to property while in due course of transit.

   c. Any increase of loss caused by or resulting from delay in rebuilding, repairing or replacing the property or resuming "operations" due to interference at the location of the rebuilding, repair or replacement by strikers or other persons.

   d. Any Extra Expense caused by or resulting from any suspended, lapsed or cancelled license, lease or contract beyond the "period of restoration".

   e. Any other consequential loss.

## D. LIMITATIONS

Under Section E. of the Property Coverage Form, Limitation 2., which limits the amount the Company will pay for theft loss to specified types of personal property, does not apply to this coverage form. All other limitations contained in Section E. of the Property Coverage Form apply to this coverage form.

## E. ADDITIONAL CONDITION

The following condition applies in addition to the conditions contained in the General Conditions.

**Loss Determination**

1. The amount of Extra Expense will be determined based on:

   a. All reasonable and necessary expenses that exceed the normal operating expenses that would have been incurred by "operations" during the "period of restoration" if no direct physical loss or damage had occurred. The Company will deduct from the total of such expenses:

      (1) The salvage value that remains of any property bought for temporary use during the "period of restoration", once "operations" are resumed; and

      (2) Any Extra Expense that is paid for by other insurance, except for insurance that is written subject to the same plan, terms, conditions and provisions as this insurance; and

   b. All necessary expenses that reduce the Extra Expense otherwise incurred.

2. The Company will reduce the amount of the insured's Extra Expense loss to the extent the insured can return "operations" to normal and discontinue such Extra Expense.

3. If the insured intends to continue the insured's business, the insured must resume all or part of the insured's "operations" as quickly as possible. If the insured does not resume "operations", or does not resume "operations" as quickly as possible, the Company will pay based on the length of time it would have taken to resume "operations" as quickly as possible.

## F. DEFINITIONS

KTJ-CMB-187D484-4-05

MS C1 03 07 99

The following definitions are in addition to those contained in the Property Coverage Form:

1.  **"Dependent Property"** means property operated by others that the insured depends on to:

    a.  Supply materials or services to the insured, or to others for the account of the insured (Contributing Locations). With respect to Contributing Locations, services do not mean utility services including but not limited to water supply services, communication supply services, or power supply services supplying electricity, steam or gas;

    b.  Accept the insured's products or services (Recipient Locations);

    c.  Manufacture products for delivery to the insured's customers under contract of sale (Manufacturing Locations); or

    d.  Attract customers to the insured's business (Leader Locations).

2.  **"Exhibition"** means the temporary display of personal property at a convention, exposition, trade show or similar event at a location not owned or regularly occupied by the insured.

3.  **"Operations"** means the insured's business activities occurring at the insured's premises.

4.  **"Period of Restoration"** means the period of time that:

    a.  Begins with the date and time of direct physical loss or damage to property at the insured premises caused by or resulting from a Covered Cause of Loss; and

    b.  Ends on the earlier of the following:

        (1) The date when the property should be repaired, rebuilt or replaced with reasonable speed and similar quality; or

        (2) The date when business is resumed at a new permanent location.

    c.  "Period of restoration" does not include any increased period required due to the enforcement of any ordinance or law that:

        (1) Regulates the construction, use, repair or replacement, or requires the tearing down of any property, except as provided under the Ordinance or Law – Increased "Period of Restoration" Additional Coverage Extension; or

        (2) Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess, the effects of "pollutants".

    d.  The expiration date of this policy will not cut short the "period of restoration".

5.  **"Suspension"** means the partial or complete cessation of the insured's business "operations".

KTJ-CMB-187D484-4-05

MS C2 35 10 02

# FUNGUS, ROT, BACTERIA AND OTHER
# CAUSE OF LOSS CHANGES

This endorsement modifies the insurance provided under this policy.

A.  The EXCLUSIONS contained in Section D. of the Property Coverage Form are amended as follows. These changes apply to all Coverage Forms and endorsements in this policy that are subject to the exclusions contained in the Property Coverage Form.

1.  The following exclusion is added to Section D.1.:

"FUNGUS", WET ROT, DRY ROT AND BACTERIA

a.  The Company will not pay for loss or damage, or any increase in the amount of loss or damage, caused directly or indirectly by, or resulting from, the presence, growth, proliferation, spread or any activity of "fungus", wet or dry rot or bacteria.

But if "fungus", wet or dry rot or bacteria results in a "specified cause of loss", the Company will pay for the loss or damage caused by that "specified cause of loss".

This exclusion does not apply:

(1)  When "fungus", wet or dry rot or bacteria results from fire or lightning; or

(2)  To the extent that coverage is provided in the Limited "Fungus", Wet Rot, Dry Rot and Bacteria Coverage in b. below with respect to loss or damage by a cause of loss other than fire or lightning.

b.  Limited "Fungus", Wet Rot, Dry Rot and Bacteria Coverage

(1)  The coverage described in b.(2) and b.(3) below only applies when the "fungus", wet or dry rot or bacteria is the result of a "specified cause of loss", other than fire or lightning, that occurs during the policy period, and only if all reasonable means have been used to save and preserve the property from further damage at the time of and after the occurrence of the "specified cause of loss".

The exclusion of loss or damage caused by or resulting from "fungus", wet rot, dry rot and bacteria in provision a. above does not apply to the insurance specifically provided under this coverage. But all other exclusions in this policy continue to apply to this Limited "Fungus", Wet Rot, Dry Rot and Bacteria Coverage.

(2)  Limited "Fungus", Wet Rot, Dry Rot and Bacteria Coverage – Direct Damage

(a)  The Company will pay for direct physical loss or damage to Covered Property caused by "fungus", wet or dry rot or bacteria, including:

(i)  The cost of removal of the "fungus", wet or dry rot or bacteria;

(ii)  The cost to tear out and replace any part of the building or other property as needed to gain access to the "fungus", wet or dry rot or bacteria; and

(iii)  The cost of testing performed after removal, repair, replacement or restoration of the damaged property is completed, provided there is a reason to believe that "fungus", wet or dry rot or bacteria are present.

(b)  The coverage described in (2)(a) above is limited as follows:

(i)  The most the Company will pay under this coverage for all "fungus", wet or dry rot and bacteria loss or damage arising out of any one occurrence of "specified causes of loss" (other than fire or lightning) is the Limit of Insurance specified in the Supplemental Coverage Declarations for Limited "Fungus", Wet Rot, Dry Rot and Bacteria Coverage – Direct Damage in any one occurrence. With respect to a particular occurrence of loss which results in "fungus", wet or dry rot or bacteria, the Company will not pay more than this limit even if the "fungus", wet

KTJ-CMB-187D484-4-05

or dry rot or bacteria continues to be present or active, or recurs, in this or a later policy period.

(ii) The most the Company will pay under this coverage for the total of all "fungus", wet or dry rot and bacteria loss or damage arising out of all "specified causes of loss" (other than fire or lightning) occurring during each separate 12 month period of this policy (starting with the beginning of the present annual policy period) is the aggregate Limit of Insurance specified in the Supplemental Coverage Declarations for Limited "Fungus", Wet Rot, Dry Rot and Bacteria Coverage – Direct Damage in any one policy year.

(c) The coverage provided under this Limited "Fungus", Wet Rot, Dry Rot and Bacteria Coverage – Direct Damage does not increase the applicable Limit of Insurance on any Covered Property. If a particular occurrence results in loss or damage by "fungus", wet or dry rot or bacteria, and other loss or damage, the Company will not pay more for the total of all loss or damage than the applicable Limit of Insurance on the Covered Property.

(d) If there is covered loss or damage to Covered Property that is not caused by "fungus", wet or dry rot or bacteria, loss payment will not be limited by the terms of this Limited "Fungus", Wet Rot, Dry Rot and Bacteria Coverage – Direct Damage, except to the extent that "fungus", wet or dry rot or bacteria causes an increase in the loss. Any such increase in the loss will be subject to the terms of this Limited "Fungus", Wet Rot, Dry Rot and Bacteria Coverage – Direct Damage.

(3) Limited "Fungus", Wet Rot, Dry Rot and Bacteria Coverage – Business Income, Rental Value and Extra Expense

The following Limited "Fungus", Wet Rot, Dry Rot and Bacteria Coverage provisions for Business Income, Rental Value and Extra Expense apply only if Business Income, Rental Value and/or Extra Expense coverage applies to the insured's premises and only if the suspension of "operations" satisfies all of the terms of the applicable Business Income, Rental Value and/or Extra Expense coverage:

(a) If the loss which results in the "fungus", wet or dry rot or bacteria does not in itself necessitate a suspension of "operations", but such suspension of "operations" is necessary due to loss or damage to property at the insured's premises caused by "fungus", wet or dry rot or bacteria, then the Company's payment for Business Income, Rental Value and/or Extra Expense is limited to the amount of loss and/or expense sustained in a period of not more than 30 days. The days need not be consecutive.

(b) If a covered suspension of "operations" is caused by loss or damage at the insured's premises by other than "fungus", wet or dry rot or bacteria, but remediation of "fungus, wet or dry rot or bacteria prolongs the "period of restoration", the Company will pay for loss and/or expense sustained during the delay, regardless of when such a delay occurs during the "period of restoration", but such coverage is limited to 30 days. The days need not be consecutive.

The coverage provided under this Limited "Fungus", Wet Rot, Dry Rot and Bacteria Coverage – Business Income, Rental Value and Extra Expense is included in, and does not increase the applicable Business Income, Rental Value and/or Extra Expense Limit of Insurance.

(4) The terms of this Limited "Fungus", Wet Rot, Dry Rot and Bacteria Coverage do not increase or reduce the coverage provided under the Water Damage, Other Liquids, Powder or Molten Damage coverage in Section B.2.i. of the Property Coverage Form or the coverage provided for collapse of buildings or structures under the Collapse of Buildings exclusion in Section D.1.j. of the Property Coverage Form.

MS C2 35 10 02

2.  The exclusions contained in Section D.2. are amended as follows:

    a.  Under exclusion D.2. c.(2), the reference to fungus, the reference to wet or dry rot and the reference to mold are deleted.

    b.  Exclusion D.2.i. is replaced by the following:

        The Company will not pay for loss or damage caused by or resulting from:

        (1)  Continuous or repeated seepage, leakage or flow of water, or

        (2)  The presence or condensation of humidity, moisture or vapor;

        that occurs over a period of 14 days or more.

B.  The following is added to the LIMITATIONS contained in Section E. of the Property Coverage Form. This limitation applies to all Coverage Forms and endorsements in this policy that are subject to the limitations contained in the Property Coverage Form:

    The Company will not pay for loss of or damage to, or any loss that is a consequence of loss or damage to the interior of any building or structure, or to personal property in the building or structure, caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:

    a.  The building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters; or

    b.  The loss or damage is caused by or results from thawing of snow, sleet or ice on the building or structure.

    Any portion of a building or structure that is within the exterior-facing surface material of a building or structure shall constitute the interior of that building or structure.

C.  The DEFINITIONS contained in Section G. of the Property Coverage Form are amended as follows. These definition changes apply wherever such defined terms are used in the policy.

    1.  The definition of "Specified Cause of Loss" is deleted and replaced by the following:

        "Specified Cause of Loss" means any of the following: Fire; lightning; explosion; windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire extinguishing equipment; "sinkhole collapse"; volcanic action; falling objects as limited below; weight of snow, ice or sleet; or water damage as defined below; all only as otherwise insured against in this policy.

        a.  Falling objects does not include loss or damage to:

            (1)  Personal property in the open; or

            (2)  The interior of a building or structure, or property inside a building or structure, unless the roof or an outside wall of the building or structure is first damaged by a falling object. Any portion of a building or structure that is within the exterior-facing surface material of a building or structure shall constitute the interior of that building or structure.

        b.  Water damage means accidental discharge or leakage of water or steam as the direct result of the breaking apart or cracking of any part of a system or appliance (other than a sump system including its related equipment and parts) containing water or steam.

        "Specified Cause of Loss" also means any cause of loss that is specifically added to the "specified causes of loss" by endorsement, but only to the extent such cause of loss is insured against under this policy.

    2.  The following definition is added:

        "Fungus" means any type or form of fungus, including but not limited to mold or mildew, and any mycotoxins, spores, scents or byproducts produced or released by fungi.

KTJ-CMB-187D4B4-4-05

D.  Under:

1.  The Ordinance or Law coverage in Section B.2.f. of the Property Coverage Form;

2.  The Ordinance or Law – Increased "Period of Restoration" Additional Coverage Extension in Section B.4. of the Business Income Coverage Form Including Extra Expense and the Business Income Coverage Form Excluding Extra Expense;

3.  The Ordinance or Law – Increased "Period of Restoration" Additional Coverage Extension in Section B.3. of the Extra Expense Coverage Form; and

4.  Any other Ordinance or Law or Ordinance or Law – Increased "Period of Restoration" coverage provided under this policy;

the following exclusion is added:

This coverage does not apply to:

a.  Loss caused by or resulting from the enforcement of any ordinance or law which requires the demolition, repair, replacement, reconstruction, remodeling or remediation of property due to the presence, growth, proliferation, spread or any activity of "fungus", wet or dry rot or bacteria; or

b.  Costs associated with the enforcement of any ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "fungus", wet or dry rot or bacteria.

MS C2 39 12 02

# EXCLUSION OF NUCLEAR HAZARD, WAR, MILITARY ACTION, ELECTRONIC VANDALISM AND PATHOGENIC OR POISONOUS BIOLOGICAL OR CHEMICAL MATERIALS

This endorsement modifies the insurance provided under this policy.

A.  The Nuclear Hazard Exclusion is replaced by the following Exclusion. With respect to any form, endorsement or coverage to which the Nuclear Hazard Exclusion does not apply, that Exclusion is hereby added as follows.

**NUCLEAR HAZARD**

1.  The Company will not pay for loss or damage caused directly or indirectly by nuclear reaction or radiation, or radioactive contamination, however caused. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

2.  With respect only to direct physical loss or damage to Covered Property occurring within the states of:

    Arizona, California, Connecticut, Georgia, Hawaii, Idaho, Illinois, Iowa, Louisiana, Maine, Massachusetts, Michigan, Minnesota, Missouri, Nebraska, New Hampshire, New Jersey, New York, North Carolina, North Dakota, Oklahoma, Oregon, Pennsylvania, Rhode Island, Virginia, Washington, West Virginia, Wisconsin

    the following exception to this Nuclear Hazard Exclusion applies:

    If nuclear reaction or radiation, or radioactive contamination, results in fire, the Company will pay for the loss or damage caused by that fire. However, this exception for fire applies only to direct loss or damage by fire to Covered Property. This fire exception does not apply to any other insurance provided under this policy including, but not limited to, any insurance provided under this policy for Business Income, Rental Value, Extra Expense, Leasehold Interest or Legal Liability coverage.

    In the event of loss or damage under this exception for fire, the value of the lost or damaged Covered Property will be determined at actual cash value at the time of loss, without allowance for any increased cost attributable to enforcement of any ordinance or law regulating the construction, use or repair of the property. Any Ordinance or Law coverage provided under this policy does not apply to loss or damage under this exception for fire.

3.  With respect to any activity that comes within the terms of the War and Military Action Exclusion and involves nuclear reaction or radiation, or radioactive contamination, the War and Military Action Exclusion supersedes this Nuclear Hazard Exclusion.

B.  The War and Military Action Exclusion is replaced by the following Exclusion. With respect to any form, endorsement or coverage to which the War and Military Action Exclusion does not apply, that Exclusion is hereby added as follows.

**WAR AND MILITARY ACTION**

1.  The Company will not pay for loss or damage caused directly or indirectly by the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

    a.  Hostile or warlike action in time of peace or war, including action in hindering, combating or defending against an actual, impending or expected attack:

        (1) By any government or sovereign power (de jure or de facto), or by any authority maintaining or using military, naval or air forces;

        (2) By military, naval or air forces; or

        (3) By an agent of any such government, power, authority or forces.

KTJ-CMB-187D484-4-05

    b.  Insurrection, rebellion, revolution, civil war, usurped power, or action taken by governmental authority in hindering, combating or defending against such an occurrence.

Any discharge, explosion or use of any weapon of war employing nuclear fission or fusion will be conclusively presumed to be such a hostile or warlike action by such a government, power, authority or forces.

2.  With respect to any action that comes within the terms of this exclusion and:

    a.  Involves nuclear reaction or radiation, or radioactive contamination, this War and Military Action Exclusion supersedes the Nuclear Hazard Exclusion.

    b.  Involves a discharge, dispersal, seepage, migration, release, escape or application of any pathogenic or poisonous biological or chemical materials that comes within the terms of the Pathogenic or Poisonous Biological or Chemical Materials Exclusion, this War And Military Action Exclusion supersedes the Pathogenic or Poisonous Biological or Chemical Materials Exclusion.

    c.  Involves Electronic Vandalism as defined in the Electronic Vandalism Exclusion, this War and Military Action Exclusion supercedes the Electronic Vandalism Exclusion.

C.  The Computer Virus Exclusion is replaced by the following Exclusion:

**ELECTRONIC VANDALISM**

1.  The Company will not pay for loss or damage caused directly or indirectly by Electronic Vandalism. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

This exclusion will not apply in the event Electronic Vandalism results in a "specified cause of loss", but the Company will be liable only for loss or damage by the resulting "specified cause of loss".

2.  Electronic Vandalism means:

    a.  Willful or malicious destruction of computer programs, content, instructions or other electronic or digital data stored within computer systems.

    b.  Unauthorized computer code or programming that:

        (1)  Deletes, distorts, corrupts or manipulates computer programs, content, instructions or other electronic or digital data, or otherwise results in damage to computers or computer systems or networks to which it is introduced;

        (2)  Replicates itself, impairing the performance of computers or computer systems or networks; or

        (3)  Gains remote control access to data and programming within computers or computer systems or networks to which it is introduced, for uses other than those intended for authorized users of the computers or computer systems or networks.

3.  With respect to any activity that comes within the terms of the War and Military Action Exclusion and involves Electronic Vandalism, the War and Military Action Exclusion supersedes this Electronic Vandalism Exclusion.

D.  The following exclusion is added:

**PATHOGENIC OR POISONOUS BIOLOGICAL OR CHEMICAL MATERIALS**

1.  The Company will not pay for loss or damage caused directly or indirectly by the discharge, dispersal, seepage, migration, release, escape or application of any pathogenic or poisonous biological or chemical materials. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

2.  With respect only to direct physical loss or damage to Covered Property occurring within the states of:

Arizona, California, Connecticut, Georgia, Hawaii, Idaho, Illinois, Iowa, Louisiana, Maine, Massachusetts, Michigan, Minnesota, Missouri, Nebraska, New Hampshire, New Jersey, New York, North Carolina, North Dakota, Oklahoma, Oregon, Pennsylvania, Rhode Island, Virginia, Washington, West Virginia, Wisconsin

the following exception to this Pathogenic or Poisonous Biological or Chemical Materials Exclusion applies:

If the discharge, dispersal, seepage, migration, release, escape or application of any pathogenic or poisonous biological or chemical materials results in fire, the Company will pay for the loss or damage caused by that fire. However, this exception for fire applies only to direct loss or damage by fire to Covered Property. This fire exception does not apply to any other insurance provided under this policy including, but not limited to, any insurance provided under this policy for Business Income, Rental Value, Extra Expense, Leasehold Interest or Legal Liability coverage.

In the event of loss or damage under this exception for fire, the value of the lost or damaged Covered Property will be determined at actual cash value at the time of loss, without allowance for any increased cost attributable to enforcement of any ordinance or law regulating the construction, use or repair of the property. Any Ordinance or Law coverage provided under this policy does not apply to loss or damage under this exception for fire.

3.  This exclusion does not apply when both 3.a. and 3.b. below apply:

    a.  The pathogenic or poisonous biological or chemical materials are normally kept at or brought onto:

        (1) The Insured's premises, with the Insured's consent, for use in the Insured's business operations at the Insured's premises; or

        (2) Any premises, other than the Insured's premises, by others for use in conducting their valid business operations at such premises;

        and

    b.  The discharge, dispersal, seepage, migration, release, escape or application of the pathogenic or poisonous biological or chemical materials is accidental and is not the result of a willful or malicious act against any persons, organizations or property of any nature;

    but all other exclusions continue to apply.

4.  With respect to any action that comes within the terms of the War And Military Action Exclusion and involves a discharge, dispersal, seepage, migration, release, escape or application of any pathogenic or poisonous biological or chemical materials that comes within the terms of this Pathogenic or Poisonous Biological or Chemical Materials Exclusion, the War and Military Action Exclusion supersedes this Pathogenic or Poisonous Biological or Chemical Materials Exclusion.

KTJ-CMB-187D484-4-05

MS C3 09 07 99

# CONTRACTORS EQUIPMENT

This endorsement modifies Insurance provided under the Property Coverage Form.

The following coverage is added:

**Contractors Equipment**

A.  The Company will pay for direct physical loss or damage by a Covered Cause of Loss to Contractors Equipment, as described in B. below, that is:

    1.  The Insured's property or property of others in the care, custody or control of the Insured; and

    2.  Described in the most recent Schedule of Contractors Equipment or other documentation on file with the Company;

    while the property is at the insured premises or away from the insured premises, or in the due course of transit, within the Policy Territory.

B.  As used in this endorsement, Contractors Equipment means mobile machinery and equipment that is:

    1.  Used by the Insured for the purpose for which it was designed and manufactured; and

    2.  Used in the Insured's business.

C.  The Company will also provide each of the following Additional Coverage Extensions for which a Limit of Insurance is shown in the Supplemental Coverage Declarations:

    **1.  Newly Acquired Contractors Equipment**

    The insurance provided for Contractors Equipment is extended to apply to direct physical loss or damage by a Covered Cause of Loss to newly acquired Contractors Equipment. This coverage will end when one of the following first occurs:

        a.  This policy is canceled or expires;

        b.  60 days expire from the date of such acquisition;

        c.  The property is reported to the Company; or

        d.  The property is more specifically insured elsewhere.

    The Company will charge the Insured an additional premium for Contractors Equipment values reported from the date that the Insured acquires the property.

    The most the Company will pay for loss or damage in any one occurrence under this coverage is the Limit of Insurance specified for Newly Acquired Contractors Equipment shown in the Supplemental Coverage Declarations.

    **2.  Equipment Rental Expense**

        a.  In the event of covered loss or damage to Contractors Equipment by a Covered Cause of Loss, the Company will pay any necessary and reasonable expenses incurred by the Insured for the rental of temporary substitute Contractors Equipment to continue, as nearly as practicable, the Insured's operations on work in progress or under contract.

        b.  Payment under this coverage is limited to such expenses incurred during the period of time that:

            (1)  Begins one working day after the date the direct physical loss or damage is reported to the Company, meaning a period of twenty four consecutive hours of a normally scheduled workday beginning at midnight on the date the loss is reported to the Company; and

            (2)  Ends on the earlier of the following dates:

MS C3 09 07 99

    (a)  The date the damaged Contractors Equipment should be repaired or replaced with reasonable speed and similar quality; or

    (b)  The date the need for the substitute equipment ceases to exist.

The expiration date of this policy will not cut short the Rental Expense.

  c.  This coverage does not apply to:

    (1)  Any expense if the Insured has suitable substitute equipment available to continue operations;

    (2)  Any expense for the rental of equipment not of the same type or not to be used for the same purpose as the equipment for which it is substituted; or

    (3)  Any loss of market, loss of income or any other consequential loss.

  d.  The most the Company will pay for loss or damage in any one occurrence under this coverage is the Limit of Insurance specified for Equipment Rental Expense shown in the Supplemental Coverage Declarations.

D.  The following changes apply to Section B. 1. of the Property Coverage Form:

  1.  Items B.1. b., Business Personal Property, and B. 1. j., Covered Property at Undescribed Premises, do not include Contractors Equipment.

  2.  Item B.1.g., Newly Constructed or Acquired Property, does not apply to newly acquired Contractors Equipment.

  3.  The provisions of Item B.1.k., Covered Property in Transit, apply to the insurance provided under this endorsement for Contractors Equipment in the due course of transit. But the most the Company will pay for loss or damage to such property is subject to the Limits of Insurance described in Section G. of this endorsement.

E.  All of the Property and Costs Not Covered in Section C. of the Property Coverage Form apply to the insurance provided under this endorsement, except:

  1.  Item C. 7. is replaced by the following:

    Vehicles or self-propelled machines that are licensed for road use.

  2.  The following items are added as property not covered:

    a.  Any Contractors Equipment while leased, rented or loaned to others;

    b.  Any Contractors Equipment while underground or underwater;

    c.  Any Contractors Equipment while waterborne, except while in the due course of transit;

    d.  Tires unless the loss or damage to the tires is coincident with other covered loss or damage to the Contractors Equipment; or

    e.  "Electronic data processing equipment" unless the "electronic data processing equipment" is an integral part of the Contractors Equipment.

F.  With respect only to the insurance provided under this endorsement, the following exclusion is added to the exclusions in Section D. of the Property Coverage Form:

The Company will not pay for loss or damage caused by or resulting from:

  1.  The weight of a load exceeding, at the time of loss, the maximum lifting or operating capacity established by the manufacturer for the property; or

  2.  Work upon or service of the Contractors Equipment, but if loss or damage by fire or explosion results, the Company will pay for loss or damage to the Contractors Equipment caused by the resulting fire or explosion.

KTJ-CMB-187D484-4-05

G. The most the Company will pay in any one occurrence under this endorsement for loss or damage to Contractors Equipment, other than newly acquired Contractors Equipment, is the applicable Limit of Insurance specified for Contractors Equipment shown in the Supplemental Coverage Declarations. The Limits of Insurance that apply to the Newly Acquired Contractors Equipment and Equipment Rental Expense Additional Coverage Extensions apply in addition to the Contractors Equipment Limit(s) of Insurance.

H. The valuation provisions of this policy are amended by the following:

In the event of a covered loss or damage, the Company will determine the value of Contractors Equipment at Actual Cash Value, meaning the cost to repair, rebuild or replace the lost or damaged property, at the time and place of the loss, with other property of comparable size, material and quality, less allowance for physical deterioration, depreciation, obsolescence and depletion.

KTJ-CMB-187D484-4-05

MS C3 27 07 99

## UTILITY SERVICES—DIRECT DAMAGE

This endorsement modifies insurance provided under the Property Coverage Form.  But this endorsement does not apply to, or amend any limits that otherwise apply for, loss or damage to Accounts Receivable records or to Valuable Papers and Records caused by the interruption, failure or fluctuation of power or utility service.

A.  The Company will pay for loss or damage to Covered Property at the Insured's premises caused by the interruption, failure or fluctuation of service to the Insured's premises. The interruption, failure or fluctuation must result from direct physical loss or damage by a Covered Cause of Loss to Utility Supply Services Property, as defined in B. and C. below, not at the Insured's premises.

B.  As used in this endorsement, Utility Supply Services Property means:

1.  **Water Supply Services Property**, meaning the following types of property supplying water to the Insured's premises:

    a.  Water treatment plants;
    b.  Water tanks;
    c.  Water mains; and
    d.  Pumping stations.

2.  **Communication Supply Services Property**, meaning property supplying communication services, including telephone, radio, microwave or television services, to the Insured's premises, such as:

    a.  Communication transmission lines (including optic fiber transmission lines), other than overhead transmission lines;
    b.  Coaxial cables; and
    c.  Microwave radio relays except satellites.

3.  **Power Supply Services Property**, meaning the following types of property supplying electricity, steam or gas to the Insured's premises:

    a.  Utility generating plants;
    b.  Switching stations;
    c.  Substations, pumping stations;
    d.  Transformers;
    e.  Transmission lines, other than overhead transmission lines; and
    f.  Tanks.

C.  When:

1.  Overhead Transmission Lines are indicated as included in the Supplemental Coverage Declarations; or

2.  An Overhead Transmission Lines Limit of Insurance is specified in the Supplemental Coverage Declarations;

Utility Supply Services Property also includes **Overhead Transmission Lines**, meaning overhead power transmission lines supplying electricity, steam or gas to the Insured's premises and overhead communication lines supplying communication services to the Insured's premises.

D.  All of the exclusions that apply to the Property Coverage Form apply to this coverage except exclusion D.1.i., Off Premises Utility Services.  In addition, the Company will not pay for any loss or damage under this coverage if the loss or damage to the Utility Supply Services Property results from any deliberate act or acts by the supplying utility to shed load or to maintain system integrity.

E.  The most the Company will pay for loss or damage under this coverage is the Limit of Insurance specified for Utility Services - Direct Damage shown in the Supplemental Coverage Declarations.  But the Company will not pay more for loss or damage to any Covered Property than the Limit of Insurance that applies to that Covered Property.

KTJ-CMB-187D484-4-05

MS C3 27 07 99

If a separate Overhead Transmission Lines Limit of Insurance is specified for this coverage in the Supplemental Coverage Declarations, the Overhead Transmission Lines Limit of Insurance is part of, and not in addition to the Utility Services – Direct Damage Limit of Insurance shown in the Supplemental Coverage Declarations.

KTJ-CMB-187D484-4-05

MS C4 09 07 99

## UTILITY SERVICES—TIME ELEMENT

This endorsement modifies insurance provided under the Business Income Coverage Forms and the Extra Expense Coverage Form.

A.  The coverage provided for loss of Business Income, Rental Value and/or Extra Expense is extended to apply to such loss and/or expense at the Insured's premises caused by the interruption, failure or fluctuation of service to the Insured's premises. The interruption, failure or fluctuation must result from direct physical loss or damage by a Covered Cause of Loss to Utility Supply Services Property, as defined in B. and C. below, that is located away from the Insured's premises or outside of a building at the Insured's premises.

B.  As used in this endorsement, Utility Supply Services Property means:

  1.  **Water Supply Services Property**, meaning the following types of property supplying water to the Insured's premises:

      a.  Water treatment plants;
      b.  Water tanks;
      c.  Water mains; and
      d.  Pumping stations.

  2.  **Communication Supply Services Property**, meaning property supplying communication services, including telephone, radio, microwave or television services, to the Insured's premises, such as:

      a.  Communication transmission lines (including optic fiber transmission lines), other than overhead transmission lines;
      b.  Coaxial cables; and
      c.  Microwave radio relays except satellites.

  3.  **Power Supply Services Property**, meaning the following types of property supplying electricity, steam or gas to the Insured's premises:

      a.  Utility generating plants;
      b.  Switching stations;
      c.  Substations, pumping stations;
      d.  Transformers;
      e.  Transmission lines, other than overhead transmission lines; and
      f.  Tanks.

C.  When:

  1.  Overhead Transmission Lines are indicated as included in the Supplemental Coverage Declarations; or

  2.  An Overhead Transmission Lines Limit of Insurance is specified in the Supplemental Coverage Declarations;

  Utility Supply Services Property also includes **Overhead Transmission Lines**, meaning overhead power transmission lines supplying electricity, steam or gas to the Insured's premises and overhead communication lines supplying communication services to the Insured's premises.

D.  All of the exclusions that apply to the Coverage Form(s) modified by this endorsement apply to this coverage except exclusion C.1.b., Off Premises Utility Services. In addition, the Company will not pay for any loss or expense under this coverage if the loss or damage to the Utility Supply Services Property results from any deliberate act or acts by the supplying utility to shed load or to maintain system integrity.

E.  The most the Company will pay for loss or expense under this coverage is the Limit of Insurance specified for Utility Services – Time Element shown in the Supplemental Coverage Declarations. This Limit of Insurance is part of and does not increase the Business Income and/or Extra Expense Limit(s) of Insurance provided under this policy.

  If a separate Overhead Transmission Lines Limit of Insurance is specified for this coverage in the Supplemental Coverage Declarations, the Overhead Transmission Lines Limit of Insurance is part of, and not in addition to the Utility Services – Time Element Limit of Insurance shown in the Supplemental Coverage Declarations.

KTJ-CMB-187D484-4-05

MS C4 09 07 99

F.  When a number of hours is shown in the deductible item in the Supplemental Coverage Declarations for Utility Services – Time Element, the Company will pay under this coverage only for loss of Business Income or Rental Value the Insured sustains after that number of hours immediately following the direct physical loss or damage to the Utility Supply Services Property.  This deductible does not apply to Extra Expense.

KTJ-CMB-187D484-4-05

MS C5 02 01 00

# GENERAL CONDITIONS

All coverages included in this policy are subject to the following conditions.

## A. ABANDONMENT

There can be no abandonment of any property to the Company.

## B. APPLICATION OF DEDUCTIBLES

1. Any deductibles that apply are specified in the Supplemental Coverage Declarations or in the forms or endorsements attached to this policy.

   Unless otherwise specified in the Supplemental Coverage Declarations, or by endorsement, when a deductible is specified as applying separately "at each affected location, in any one occurrence", or at a specific location in any one occurrence, each of the following will be considered a "location":

   a. A single address that is not part of a complex described in b. below, regardless of the number of buildings at that address; or

   b. A multiple building complex, such as an apartment complex, office building complex or industrial park, with multiple addresses, provided:

      (1) All addresses within the complex are under the same ownership or management; and

      (2) The complex is known by a single name; and

      (3) All addresses within the complex are insured premises under this policy; and

      (4) The addresses are adjacent to one another, or separated only by a street.

2. Dollar Deductibles

   When the deductible that applies is specified as a dollar amount, the Company will not pay for loss or damage to which the deductible applies until the amount of loss or damage exceeds the specified deductible amount. The Company will then pay the amount of the loss or damage in excess of the specified deductible, up to the applicable Limit of Insurance.

3. Percentage Deductibles

   a. Percentage deductibles may be written as a percentage of total values or as a percentage per unit of insurance.

   b. Total Values Percentage Deductibles

      When the deductible that applies is specified as a percentage of total values, the deductible will be equal to the percentage of the total values specified in the most recent Statement of Values on file with the Company for buildings, structures, personal property and rental values to which the deductible applies.

   c. Per Unit of Insurance Percentage Deductibles

      When the deductible that applies is specified as a percentage per unit of insurance, the deductible will be equal to the percentage of value(s) calculated for, and applied separately to, each of the following units of insurance:

      (1) Each building or structure sustaining loss or damage;

      (2) Personal property within each building or structure if that personal property sustains loss or damage;

      (3) Personal property in the open if personal property in the open sustains loss or damage;

      (4) Business Income values impacted by the direct loss or damage to property, when the percentage deductible is indicated as applying to Business Income; and

      (5) Rental values impacted by the direct loss or damage to property, when the percentage deductible is indicated as applying to Rental Value.

      The values to be used when calculating the deductible for (1), (2), (3), (4) and (5) above are either those as specified for each unit of insurance shown in the most recent Statement of Values on file with the Company or, if not so specified, or if the damaged property is a building in the course of

MS C5 02 01 00

construction or renovation, the values will be determined at the time of loss. When Business Income values or rental values are determined at the time of loss, the values will be calculated for the 12 months following the Inception date of the policy term in which the loss occurs.

d.  When both a percentage deductible and a dollar deductible are specified together as applicable to a coverage or exposure, whether specified as applying in any one occurrence or specified as applying at each affected location in any one occurrence, the percentage deductible will be calculated and applied as described in b. and c. above, but the dollar deductible is the minimum amount the Company will deduct in any one occurrence, or at each affected location in any one occurrence, as specified, for all loss or damage to which the deductible is stated to apply.

e.  When a maximum dollar deductible is also specified as applicable, the specified maximum deductible is the most the Company will deduct in any one occurrence for all loss or damage to which the deductible is stated to apply.

4.  Hour Deductibles

If the deductible for Business Income or any other time element coverage is specified in hours, the Company will not be liable for any loss Incurred during the specified number of hours immediately following the start of the "period of restoration" or other applicable period during which incurred loss would otherwise be covered. The Company will then pay the amount of loss incurred for the remainder of the "period of restoration" or other applicable period during which incurred loss is covered, up to the Limit of Insurance.

5.  Two or More Deductibles In Any One Occurrence

If any causes of loss, coverages or types of property insured against under this policy are subject to separate deductibles and two or more of those causes of loss, coverages and/or types of property are involved in any one loss occurrence, each cause of loss, coverage and type of property loss will be adjusted separately. But the total of the deductible amounts applied will not exceed the highest deductible amount applied in that occurrence for any one involved cause of loss, coverage or type of property.

This provision does not apply to:

a.  Earth Movement, Earthquake, Earthquake Sprinkler Leakage, Flood, Windstorm or Hurricane deductibles; or

b.  Any hour deductible.

6.  Application of Earth Movement, Earthquake, Earthquake Sprinkler Leakage, Flood, Sewer Back-Up and Boiler and Machinery Deductibles

Any deductible shown on the Supplemental Coverage Declarations for a cause of loss listed below applies only with respect to loss or damage to which the corresponding cause of loss endorsement applies:

a.  Earth Movement;

b.  Earthquake;

c.  Earthquake Sprinkler Leakage;

d.  Flood;

e.  Sewer Back-Up; or

f.  Boiler and Machinery.

These deductibles do not apply to any loss or damage by these causes of loss that is covered in the absence of such endorsements, such as fire or explosion that results from an earth movement.

7.  Any Other Covered Loss Deductible

Unless otherwise specifically stated in this policy, the deductible shown in the Supplemental Coverage Declarations for "any other covered loss" applies to all causes of loss, coverages and types of property insured against under this policy for which no deductible is specifically shown in the Supplemental Coverage Declarations or in the forms or endorsements attached to this policy, except Extra Expense. No deductible applies to Extra Expense.

C.  APPRAISAL

If the Company and the insured disagree on the value of the property, the amount of net income and operating expense or the amount of loss, either may make written demand for an appraisal of the loss. In this event,

each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that a judge of a court having jurisdiction make the selection. The appraisers will state separately the value of the property, the amount of loss or the amount of net income and operating expense. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

1. Pay its chosen appraiser; and

2. Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, the Company will still retain its right to deny the claim.

### D. CANCELLATION AND NONRENEWAL

1. Cancellation

    a. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to the Company advance written notice of cancellation.

    b. The Company may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

        (1) 10 days before the effective date of cancellation if the Company cancels for nonpayment of premium; or

        (2) 60 days before the effective date of cancellation if the Company cancels for any other reason.

    c. The Company will mail or deliver notice to the first Named Insured's last mailing address known to the Company.

    d. Notice of cancellation will state the effective date of cancellation. If the policy is cancelled, that date will become the end of the policy period. Cancellation will not affect coverage on any shipment in transit on the date of the cancellation. Coverage will continue in full force for such property in transit until it is delivered and accepted.

    e. If this policy is cancelled, the Company will send to the first Named Insured any premium refund due. If the Company cancels, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if the Company has not made or offered a refund.

    f. If notice is mailed, proof of mailing will be sufficient proof of notice.

2. Nonrenewal

In the event the Company decides not to renew this policy, the Company will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 60 days before the expiration date.

### E. CHANGES

This policy contains all the agreements between the Insured and the Company concerning the insurance afforded. The policy terms can be amended or waived only by written endorsement issued by the Company as part of this policy.

### F. CONCEALMENT, MISREPRESENTATION or FRAUD

This policy is void in any case of fraud by the Insured as it relates to this policy at any time. It is also void if the Insured or any other person or entity insured under this policy, at any time, intentionally conceals or misrepresents a material fact concerning:

1. This policy;

2. The Covered Property;

3. The Insured's Interest in the Covered Property; or

4. A claim under this policy.

### G. CONTROL OF PROPERTY

Any act or neglect of any person other than the Insured beyond the direction or control of the Insured will not affect this insurance.

The breach of any condition of this policy at any one or more locations will not affect coverage at any location where, at the time of loss or damage, the breach of condition does not exist.

**H.  CURRENCY**

It is understood and agreed that all amounts used herein are in the currency of the United States of America and that premiums and losses are payable in United States currency. In the event of a loss adjustment involving foreign currency, the conversion into the currency of the United States of America will be at the rate of exchange quoted in *The Wall Street Journal* as of the date of the loss.

**I.  EXAMINATION OF THE INSURED'S BOOKS AND RECORDS**

The Company may examine and audit the Insured's books and records as they relate to this policy at any time during the policy period and up to three years afterward.

**J.  IDENTITY OF INTEREST**

If the Named Insured under this policy is comprised of more than one legal entity, liability under this policy will not exceed the amount of loss had all such interests comprised a single legal entity.

**K.  INSPECTIONS AND SURVEYS**

The Company has the right but is not obligated to:

1.  Make inspections and surveys at any time;
2.  Give the Insured reports on the conditions found resulting therefrom; and
3.  Recommend changes.

Neither the right to make inspections, nor the making thereof, nor any risk analysis, nor any advice or reports resulting therefrom will imply any liability, or constitute an undertaking on behalf of or for the benefit of the Insured. Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged. The Company does not make safety inspections. The Company does not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. In addition, the Company does not warrant that the conditions are safe, healthful or in compliance with any law, rule, regulation, code or standard.

This condition applies not only to the Company, but also to any rating, advisory, rate service or similar organization that makes insurance inspections, surveys, reports or recommendations.

**L.  KNOWLEDGE OF OCCURRENCE**

It is hereby understood and agreed that knowledge of an occurrence, accident, claim, loss or damage, or receipt or service of complaint, demand, notice, summons or other legal papers by the agent, servant or employee of the Insured will not in itself constitute knowledge or receipt by the Insured unless an executive officer or risk manager of the Named Insured has such knowledge or receives or is served such documents or notice from its agent, servant or employee.

**M.  LEGAL ACTION AGAINST THE COMPANY**

No one may bring a legal action against the Company under this policy unless:

1.  There has been full compliance with all of the terms of this policy; and
2.  The action is brought in the United States of America, in a court having proper jurisdiction, within 2 years after the date on which the direct physical loss or damage occurred.

**N.  LIBERALIZATION**

If the Company adopts any revision that would broaden the coverage under this policy without additional premium, within 45 days prior to or during the policy period, the broadened coverage will immediately apply to this policy.

**O.  LIMITS OF INSURANCE**

The most the Company will pay for all loss or damage in any one occurrence under this policy is the Policy Limit shown in the Supplemental Coverage Declarations. All other specified Limit(s) of Insurance shown in the Supplemental Coverage Declarations, Schedule(s), Coverage Form(s) or endorsement(s) are included within, and do not increase, the Policy Limit.

KTJ-CMB-187D484-4-05

MS C5 02 01 00

Subject to the Policy Limit:

1. The most the Company will pay in any one occurrence for any loss or damage to which a specific Limit of Insurance applies is the applicable specified Limit of Insurance.

2. Under the Property Coverage Form, unless otherwise stated in the Supplemental Coverage Declarations, or by endorsement:

   a. Payments under the following Covered Costs and Expenses will not increase the applicable Covered Property Limit(s) of Insurance:

      (1) Debris Removal. But if a Limit of Insurance for Debris Removal (additional) is specified in the Supplemental Coverage Declarations, that Limit of Insurance will apply in addition to the applicable Covered Property Limit(s) of Insurance;

      (2) Fire Department Service Charge;

      (3) Fire Protective Equipment Discharge;

      (4) Preservation of Property;

      (5) Protection of Property; and

      (6) Water Damage, Other Liquids, Powder or Molten Material Damage.

   b. The Limits of Insurance that are specified for the remaining Covered Costs and Expenses are in addition to the Covered Property Limit(s) of Insurance.

3. Under the Business Income Coverage Forms or the Extra Expense Coverage Form, unless otherwise stated in the Supplemental Coverage Declarations, or by endorsement:

   a. Payments under the following Additional Coverage Extensions will not increase the Limit(s) of Insurance that applies to Business Income, Rental Value and/or Extra Expense:

      (1) Civil Authority;

      (2) Extended Business Income or Rental Value (Business Income Coverage Forms only);

      (3) Expenses to Reduce Loss (Business Income Coverage Form Excluding Extra Expense only).

   b. The Limits of Insurance that are specified for the remaining Additional Coverage Extensions are additional amounts of insurance.

4. Unless otherwise specified in the Supplemental Coverage Declarations, or by endorsement, when a Limit of Insurance is specified as applying separately "at each affected location, in any one occurrence" or on a per location basis, the description of a "location" contained in provision 1. of the Application Of Deductibles condition in Section B. of this form will apply.

## P. LOSS PAYMENT

1. In the event of loss or damage to property covered by this policy, at the option of the Company, the Company will either:

   a. Pay the value of lost or damaged property;

   b. Pay the cost of repairing or replacing the lost or damaged property subject to 2. below;

   c. Take all or any part of the property at an agreed or appraised value; or

   d. Repair, rebuild, or replace the property with other property of like kind, size and quality subject to 2. below.

2. Except as otherwise specifically provided in this policy, the cost to repair, rebuild or replace does not include the increased cost attributable to enforcement of any ordinance or law regulating the construction, use or repair of any property.

3. The Company will give notice of its intentions within 30 days after the Company receives the proof of loss it requires.

4. The Company will not pay the Insured more than the Insured's financial interest in the Covered Property.

5. The Company may adjust losses with the owners of lost or damaged property if other than the Insured. If the Company pays the owners, such payments will satisfy the Insured's claims against the Company for the owner's property. The Company will not pay the owners more than their financial interest in the Covered Property.

KTJ-CMB-187D484-4-05

MS C5 02 01 00

6.  The Company may elect to defend the Insured against suits arising from claims of owners of property. The Company will do this at its own expense.

7.  The Company will pay for covered loss or damage within 30 days after the Company receives the sworn proof of loss it requires, if:

    a.  The Insured has complied with all of the terms of this policy; and

    b.  The Company has reached agreement with the Insured on the amount of loss or an appraisal award has been made.

8.  At the option of the Company, the Company may make a partial payment toward any claims, subject to the policy provisions and the Company's normal adjustment process. To be considered for a partial claim payment, the Insured must submit a partial sworn proof of loss with supporting documentation. Any applicable policy deductibles must be satisfied before any partial payments are made.

9.  If two or more of this policy's coverages apply to the same loss or damage, the Company will not pay more than the actual amount of the loss or damage

## Q.  MORTGAGEE INTERESTS AND OBLIGATIONS

Loss or damage, if any, as covered under this policy, will be payable to each mortgagee (or trustee) designated herein in order of their precedence as their interests may appear. With respect to the mortgagee's (or trustee's) interest, this insurance will not be invalidated by any act of the Insured (mortgagor or owner), nor by any foreclosure or other similar proceedings or notice of sale relating to the property, nor by any change in title or ownership of the property, provided that:

1.  In the event the Insured (mortgagor or owner) has neglected to pay any premium due under this policy, the mortgagee (or trustee), at the request of the Company, pays the same;

2.  The mortgagee (or trustee) has notified the Company of any change in ownership, occupancy or increase in the risk or hazards known to the mortgagee (or trustee) and, at the request of the Company, pays the premium for such increased risk or hazards; and

3.  The mortgagee (or trustee) submits a signed, sworn proof of loss within sixty (60) days after having been notified by the Company that the Insured (mortgagor or owner) has failed to do so.

In the event the Company pays the mortgagee (or trustee) for any loss or damage covered under this policy and therefore claims that as to the Insured (mortgagor or owner) no liability existed, the Company will be subrogated to all the rights, to the extent of such payment, of the party to whom such payment was made. The Company may, at the Company's option, pay to the mortgagee (or trustee) the whole principal due plus any accrued interest. Thereupon, the Company will receive a full assignment and transfer of the mortgage and other such securities and the remaining mortgage debt will be payable by the Insured (mortgagor or owner) to the Company.

The Company reserves the right to cancel this policy at any time as provided by its terms but, in such case, this policy will continue in force for the benefit only of the mortgagee (or trustee) for ten (10) days after notice to the mortgagee (or trustee) of cancellation for nonpayment of premium or sixty (60) days after notice to the mortgagee (or trustee) of cancellation for any other reason. In the event the Company elects not to renew this policy, the Company will give written notice to the mortgagee (or trustee) at least thirty (30) days prior to the expiration of this policy.

## R.  NO BENEFIT TO BAILEE

No person or organization, other than the Insured, having custody of Covered Property will benefit from this insurance.

## S.  NO REDUCTION BY LOSS

Except with respect to any aggregate limit(s) or aggregate sublimit(s) of insurance in this policy, it is mutually understood and agreed that the amount of insurance will not be reduced by the payment of losses under this policy.

## T.  NOTICE OF LOSS AND DUTIES IN THE EVENT OF LOSS OR DAMAGE

1.  The Insured must see that the following are done in the event of loss of or damage:

    a.  Notify the police if a law may have been broken.

    b.  Give the Company prompt notice of the loss or damage. Include a description of the property involved.

KTJ-CMB-187D484-4-05

MS C5 02 01 00

c.  As soon as possible, give the Company a description of how, when, and where the loss or damage occurred.

d.  Promptly make claim in writing against any other party, which had custody of the Covered Property at the time of loss.

e.  Take all reasonable steps to protect the Covered Property from further damage, and keep a record of expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, the Company will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

f.  At the request of the Company, give the Company complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.

g.  As often as may be reasonably required, permit the Company to inspect the property and records proving the loss or damage and examine the Insured's books and records.

Also permit the Company to take samples of damaged and undamaged property for inspection, testing and analysis and permit the Company to make copies from the Insured's books and records.

h.  Send the Company a signed, sworn proof of loss containing the information that the Company requests to investigate the claim. The Insured must do this within 60 days after the Company's request. The Company will supply the Insured with the necessary forms.

i.  Cooperate with the Company in the investigation or settlement of the claim.

2.  The Company may examine any Insured under oath, while not in the presence of any other Insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an Insured's books and records. In the event of an examination, an Insured's answers must be signed.

## U.  OTHER INSURANCE

1.  Underlying Insurance

    Permission is granted to the Insured to purchase insurance on all or any part of the deductibles of this policy, and the existence of such underlying insurance will not prejudice any recovery otherwise payable under this policy. If the limits of such underlying insurance exceed the deductible which would apply under this policy, then the insurance provided by this policy will apply only as excess after the limits applicable to the underlying insurance, including that portion which exceeds such deductible, have been exhausted.

2.  Excess Insurance

    Permission is granted to the Insured to have excess insurance over the Limit(s) of Insurance set forth in this policy without prejudice to this policy. The existence of such insurance will not reduce the Company's liability under this policy.

3.  Other Insurance Subject to Same Plan, Terms, Conditions and Provisions

    In the event the Insured has other insurance subject to the same plan, terms, conditions and provisions as the insurance under this policy, the Company will pay its share of the covered loss or damage. The Company's share is the proportion that the applicable Limit of Insurance under this policy bears to the Limits of Insurance of all insurance covering on the same basis.

    If there is other insurance covering the same loss or damage, other than that described above, the Company will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether the Insured can collect on it or not. But, the Company will not pay more than the applicable Limit of Insurance.

## V.  POLICY PERIOD AND TERRITORY

Under this policy, the Company will cover loss or damage that commences during the policy period as specified in the Declarations and, except as otherwise specifically provided, within the Policy Territory. The Policy Territory is:

1.  The United States of America (including its territories and possessions);

2.  Puerto Rico; and

3.  Canada.

KTJ-CMB-187D484-4-05

MS C5 02 01 00

## W. RECOVERED PROPERTY

In the event either the Insured or the Company recovers any property after loss settlement, that party must give the other prompt notice. At the option of the Insured, the property will be returned to the Insured. The Insured must then return to the Company the amount the Company paid to the Insured for the property.

1. The Company will pay:

   a. Recovery expenses; and

   b. Costs to repair the recovered property;

2. But the amount the Company pays will not exceed:

   a. The total of 1. a. and 1. b. above;

   b. The value of the recovered property; or

   c. The Limit of Insurance;

   whichever is less.

## X. SUBROGATION AND SUBROGATION WAIVER

1. Subrogation – Transit

   The following subrogation provisions apply to any transit coverage provided under this policy:

   a. If any person or organization to or for whom the Company makes payment under any transit coverage provisions of this policy has rights to recover damages from another, those rights are transferred to the Company to the extent of such payment. That person or organization must do everything necessary to secure the Company's rights and must do nothing after the loss to impair them.

   b. Insurance under the transit coverage provisions will be null and void if any Insured does any act or enters into any agreement, before or after loss, which in any way releases, impairs or destroys the right to recover against any carrier for hire, or other party liable for the loss, or transfers such right to anyone other than the Company. Even if the transit coverage becomes null and void, the Company has the right to retain and recover the premium for this coverage. The Insured does have permission to accept the limited liability form receipts or bills of lading commonly used by carriers for hire without prejudice to this coverage. The Company is not liable however, for any loss that is settled or compromised without the written consent of the Company.

   c. If the Company pays for loss or advances or loans money under the transit coverage, the Insured will, upon request and at the expense of the Company, make claim upon and institute legal proceedings against any carrier, bailee or other party liable for the loss. At the option of the Company, such claims or legal proceedings may be instituted in the name of the Insured. The Insured agrees to fully cooperate with the Company in making such claims and prosecuting such legal proceedings.

2. Subrogation – All Other Coverages

   If any person or organization to or for whom the Company makes payment under this policy has rights to recover damages from another; those rights are transferred to the Company to the extent of such payment. That person or organization must do everything necessary to secure the Company's rights and must do nothing after the loss to impair them. The Company will be entitled to priority of recovery against any such third party (including interest) to the extent payment has been made by the Company, plus attorney's fees, expenses or costs incurred by the Company.

   But, the Insured may waive its rights against another party by specific written agreement:

   a. Prior to a loss to Covered Property.

   b. After a loss to Covered Property or Covered Income only if, at time of loss, that party is one of the following:

      (1) Someone Insured by this Insurance;

      (2) A business firm owned or controlled by the Insured or that owns or controls

         the Insured; or

      (3) The Insured's tenant.

   Such waiver will not invalidate or restrict this Insurance.

KTJ-CMB-187D484-4-05

MS C5 02 01 00

Y.  ~~TRANSFER OF THE INSURED'S RIGHTS AND DUTIES UNDER THIS POLICY~~

~~The Insured's rights and duties under this policy may not be transferred without the written consent of the Company except in the case of death of an individual Named Insured.~~ If an individual Named Insured dies, the Insured's rights and duties will be transferred to the Insured's legal representative but only while acting within the scope of duties as the Insured's legal representative. Until the Insured's legal representative is appointed, anyone having proper temporary custody of the Insured's property will have rights and duties but only with respect to that property.

Z.  **UNINTENTIONAL ERRORS IN DESCRIPTION**

The insurance provided by this policy is extended to apply with respect to loss or damage to property at locations within the Policy Territory that are owned, leased or operated by the Insured, if such loss or damage is not payable under this policy due solely to any unintentional error in the description of the address of the property. But this will not increase any Limits of Insurance that apply under this policy.

Upon discovery of the unintentional error, the Insured will report the correct information to the Company. An additional premium may be charged based upon the corrected information.

KTJ-CMB-187D484-4-05

MS C5 05 07 99

## REPLACEMENT COST

This endorsement modifies the Property Coverage Form.

The following Valuation Provisions are added:

### A. REPLACEMENT COST

In the event of a covered loss or damage, the Company will determine the value of Covered Property at replacement cost as of the time and place of loss, without deduction for physical deterioration, depreciation, obsolescence and depletion, except as otherwise provided in this endorsement or as stipulated by any other endorsement(s) attached to this policy. This replacement cost valuation is subject to the following conditions:

1. The Company will not pay more on a replacement cost basis than the least of:

   a. The cost to repair, rebuild or replace, at the same site, the lost, damaged or destroyed property, with other property of comparable size, material and quality; or

   b. The actual amount incurred by the Insured that is necessary to repair, rebuild or replace the lost, damaged or destroyed property; or

   c. The Limit of Insurance applicable to the lost, damaged or destroyed property.

2. The Company will not pay for any loss or damage on a replacement cost basis until the property is repaired, rebuilt or replaced, and then only if such repair, rebuilding or replacement is made as soon as reasonably possible after the loss or damage. If the property is not repaired, rebuilt or replaced as soon as reasonably possible after the loss or damage, the value of the property will be determined at "Actual Cash Value". This restriction does not apply to losses less than $25,000.

3. For property to which this replacement cost valuation applies, the Insured may make a claim for loss or damage on an "Actual Cash Value" basis instead of on a replacement cost basis. In the event the Insured elects to have loss or damage settled on an "Actual Cash Value" basis, the Insured may still make a claim on a replacement cost basis if the Insured notifies the Company within 180 days after the loss or damage.

4. The cost to repair, rebuild or replace does not include the increased cost attributable to enforcement of any ordinance or law regulating the construction, use or repair of any property unless a Limit of Insurance is specified for Ordinance or Law in the Supplemental Coverage Declarations, and then only to the extent provided under that coverage.

5. In the event the Insured decides to repair, rebuild or replace the damaged or destroyed property, payment will include any reasonable and necessary architectural, engineering, consulting or supervisory fees related to the construction, repair or replacement of the damaged or destroyed property. This will not increase the applicable Limits of Insurance.

### B. REPLACEMENT COST EXCEPTIONS

1. "Valuable Papers and Records" and "Electronic Data Processing Data and Media" will be valued as follows:

   a. At the Insured's cost to research, replace or restore the lost information on lost, damaged or destroyed "Valuable Papers and Records" or "Electronic Data Processing Data and Media" for which duplicates do not exist;

   b. At the cost of blank materials or media and the cost of copying data onto blank materials or media when duplicates of the papers, records or data exist;

   c. At the cost of blank materials or media of the same kind and quality if the papers, records or data are not replaced;

   d. At the specified amount per article for those articles which are specifically declared, described and valued in a schedule forming a part of this policy.

2. Brands and Labels - If branded or labeled merchandise that is Covered Property is damaged by a Covered Cause of Loss and the Company takes all or part of the property at an agreed or appraised value, the Company will also pay:

KTJ-CMB-187D484-4-05

MS C5 05 07 99

a. Any expenses incurred by the Insured to:

    (1) Stamp the word `Salvage' on the merchandise or its containers, if the stamp will not physically damage the merchandise; or

    (2) Remove the brands or labels, if doing so will not physically damage the merchandise. The Insured must relabel the merchandise or its containers to comply with the law.

b. Any reduction in the salvage value of the damaged merchandise with the brands or labels removed.

But this will not increase the Limit(s) of Insurance applicable to the lost or damaged property.

3. "Electronic Data Processing Equipment" will be valued on a replacement cost basis as provided in Section A. of this endorsement. However, in the event replacement of "Electronic Data Processing Equipment" with identical property is impossible, the replacement cost will be the cost of items that are similar to the damaged or destroyed equipment and intended to perform the same function, but which may include technological advances.

4. "Fine Arts" will be valued at the least of:

a. The cost of reasonably restoring that property; or

b. The cost of replacing that property, at the time and place of loss, with substantially the same property; or

c. The market value of the property at the time and place of loss or, if the article of property is specifically declared, described and valued in a schedule forming a part of this policy, the amount per article specified in the Schedule.

5. "Finished Stock" will be valued at the selling price less discounts and expenses the Insured otherwise would have had.

6. Pairs, Sets, or Parts

a. Pairs or Sets - In case of loss to any part of a pair or set, the Company may, at its option:

    (1) Repair or replace any part to restore the pair or set to its value before the loss; or

    (2) Pay the difference between the value of the pair or set before and after the loss.

b. Parts - In case of loss to any part of Covered Property consisting of several parts when complete, the Company will only pay for the value of the lost or damaged part.

7. Patterns, dies, molds, and forms not in current usage will be valued at "Actual Cash Value". If loss is paid on an "Actual Cash Value" basis, and within 24 months from the date of the loss the Insured needs to repair or replace one or more of the items, the Company will pay the Insured, subject to the conditions of this insurance, the difference between "Actual Cash Value" and replacement cost for those patterns, molds and dies which are actually repaired or replaced.

8. Business Personal Property sold by the Insured but not delivered will be valued at the selling price less discounts and expenses the Insured otherwise would have had.

9. Business Personal Property of Others will be valued at the amount for which the Insured is liable, not to exceed the replacement cost.

10. "Stock in Process" will be valued at the cost of "raw stock", labor expended, plus the proper proportion of overhead charges.

11. Tenant's Improvements and Betterments will be valued at:

a. Replacement cost of the damaged or destroyed property (subject to the provisions of Section A. above) if the Insured tenant makes the repairs or replaces promptly.

b. A proportion of the Insured tenant's original cost if the Insured tenant does not make repairs promptly. The Company will determine the proportionate value as follows:

    (1) Multiply the original cost by the number of days from the loss or damage to the expiration of the lease; and

    (2) Divide the amount determined in (1) above by the number of days from the installation of Improvements to the expiration of the lease.

KTJ-CMB-187D484-4-05

If the insured tenant's lease contains a renewal option, the expiration of the renewal option period will replace the expiration of the lease in this procedure.

    c. If repaired or replaced at the expense of others, there will be no liability hereunder.

12. "Vacant" property will be valued at "Actual Cash Value".

**C. ADDITIONAL DEFINITION**

The following definition is in addition to those contained in the Property Coverage Form.

**"Actual Cash Value"** means the cost to repair, rebuild or replace the lost or damaged property, at the time and place of the loss, with other property of comparable size, material and quality, less allowance for physical deterioration, depreciation, obsolescence and depletion.

KTJ-CMB-187D484-4-05

MS C5 22 07 99

# JOINT OR DISPUTED LOSS AGREEMENT

This endorsement modifies insurance provided under the policy.

A. This endorsement is intended to facilitate payment of insurance proceeds when:

1. Both a boiler and machinery policy and this property policy are in effect;
2. Damage occurs to Covered Property that is insured by the boiler and machinery policy and this property policy; and
3. There is disagreement between the insurers as to whether there is coverage or as to the amount of the loss to be paid, if any, by each insurer under its own policies.

B. This endorsement does not apply if:

1. Both the boiler and machinery insurer(s) and the Company do not admit to any liability; and
2. Neither the boiler and machinery insurer(s) nor the Company contends that coverage applies under the other insurer's policy.

C. The provisions of this endorsement apply only if all of the following requirements are met:

1. The boiler and machinery policy carried by the named insured, insuring the Covered Property, contains a similar provision at the time of the loss or damage, with substantially the same requirements, procedures and conditions as contained in this endorsement;
2. The damage to the Covered Property was caused by a loss for which:
   a. Both the boiler and machinery insurer(s) and the Company admit to some liability for payment under the respective policies; or
   b. Either:
      (1) The boiler and machinery insurer(s) does not admit to any liability for payment, while the Company contends that:
         (a) All liability exists under the boiler and machinery policy; or
         (b) Some liability exists under both the boiler and machinery policy and this property policy;
      (2) The Company does not admit to any liability for payment, while the boiler and machinery insurer(s) contends that:
         (a) All liability exists under this property policy; or
         (b) Some liability exists under both the boiler and machinery policy and this property policy; or
      (3) Both the boiler and machinery insurer(s) and the Company:
         (a) Do not admit to any liability for payment; and
         (b) Contend that some or all liability exists under the other insurer's policy; and
3. The insured, the boiler and machinery insurer(s) and the Company agree on the total amount of the loss.

D. If the requirements listed in Paragraph C. above are satisfied, the Company and the boiler and machinery insurer(s) will make payments to the extent, and in the manner, described as follows:

1. The Company will pay, after receipt of a written request from the insured, the entire amount of loss that the Company has agreed as being covered, if any, by this property policy and one-half (1/2) the amount of the loss that is in disagreement.
2. The boiler and machinery insurer(s) will pay, after the insured's written request, the entire amount of the loss that they have agreed as being covered, if any, by the boiler and machinery policy and one-half (1/2) the amount of loss that is in disagreement.
3. Payments by the insurer of the amounts that are in disagreement, as described in Paragraphs 1. and 2., do not alter, waive or surrender any rights of any insurer against any other with regard to the portion of the loss for which each insurer is liable.
4. The amount in disagreement to be paid by the Company under this endorsement will not exceed the amount payable under the equivalent Loss Agreement(s) of the boiler and machinery policy.
5. The amount to be paid under this endorsement will not exceed the amount the Company would have paid had no boiler and machinery policy been in effect at the time of loss. In no event will the Company pay more than the applicable Limit of Insurance shown in the Supplemental Coverage Declarations.
6. Acceptance by the insured of sums paid under this endorsement does not alter, waive or surrender any other rights against the Company.

E. Arbitration

Page 1 of 2

KTJ-CMB-187D484-4-05

MS C5 22 07 99

1.  If the circumstances described in Paragraph C.2.a. exist and the boiler and machinery insurer(s) and the Company agree to submit their differences to arbitration, the boiler and machinery insurer(s) and the Company will determine the amount each will pay and will pay the Insured within 90 days.  Arbitration will then take place within 90 days after payment of the loss under the terms of this endorsement.

2.  If any of the circumstances described in Paragraph C.2.b. exist, then the boiler and machinery insurer(s) and the Company agree to submit their differences to arbitration within 90 days after payment of the loss under the terms of this endorsement.

3.  The Insured agrees to cooperate with any arbitration procedures. There will be three arbitrators: one will be appointed by the Company, and another will be appointed by the boiler and machinery insurer(s). The two arbitrators will select a third arbitrator. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. A decision agreed to by two of the three arbitrators will be binding on both parties. Judgment on any award can be entered in any court that has jurisdiction.

**F.  Final Settlement Between Insurers**

The Insurer(s) found responsible for the greater percentage of the ultimate loss must return the excess contribution to the other insurer(s). In addition, the Insurer(s) found responsible for the greater portion of the loss must pay Liquidated Damages to the other Insurer(s) on the amount of the excess contribution of the other insurer(s). Liquidated Damages are defined as interest from the date the Insured invokes this Agreement to the date the insurer(s) that contributed the excess amount is reimbursed. The interest is calculated at 1.5 times the highest prime rate from the Money Rates column of the Wall Street Journal during the period of the Liquidated Damages. Arbitration expenses are not a part of the excess contribution for which Liquidated Damages are calculated. Arbitration expenses will be apportioned between insurers on the same basis that the ultimate loss is apportioned.

KTJ-CMB-187D484-4-05

MS C5 27 03 00

## EXTRA EXPENSE DEDUCTIBLE

Under the General Conditions, the last sentence of Section B., APPLICATION OF DEDUCTIBLES, which states that no deductible applies to Extra Expense, does not apply. The Extra Expense coverage provided under this policy is subject to the applicable deductible(s) indicated in the Supplemental Coverage Declarations or in the forms or endorsements attached to this policy.

KTJ-CMB-187D484-4-05

MS C5 30 10 02

## CLAIM DATA EXPENSE ENDORSEMENT

This endorsement modifies insurance provided under the Property Coverage Form, the Business Income Coverage Form and the Extra Expense Coverage Form.

The following is added to the Claim Data Expense coverage:

The Company will not pay for any expenses incurred, directed, or billed by or payable to insurance brokers or agents, or their associates or subsidiaries, without the Company's written consent prior to such expenses being incurred.

KTJ-CMB-187D484-4-05

MS C8 01 07 99

# EXCLUSION - CERTAIN COMPUTER RELATED LOSSES DUE TO DATES OR TIMES
## (Property Coverages)

This endorsement modifies insurance provided under the following:

Property Coverages

A.  This policy does not insure against loss or damage consisting of or caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss except as provided in B.

    1.  The failure, malfunction or inadequacy or the inability to use or have access to:

        a.  Any of the following, whether belonging to the insured or to others:

            (1)  computer hardware, including microprocessors;

            (2)  computer application software;

            (3)  computer operating systems and related software;

            (4)  computer networks;

            (5)  microprocessors (computer chips) not part of any computer system;

            (6)  any other computerized or electronic equipment or components; or

        b.  Any other products or services that directly or indirectly use or rely upon, in any manner, any of the items listed in paragraph 1.a. of this endorsement;

        due to the inability of those products or services described in paragraphs 1.a. and 1.b. to correctly recognize, distinguish, interpret or accept one or more dates or times.

    2.  Any advice, consultation, design, evaluation, inspection, installation, maintenance,   repair or supervision done by or for the insured to determine, rectify or test, any potential or actual failure, malfunction or inadequacy described in paragraph A.1. above.

    3.  The destruction, disruption, distortion or corruption of any computer data, coding, program or software due to the inability of those products or services described in paragraphs 1.a. and 1.b. to correctly recognize, distinguish, interpret or accept one or more dates or times.

B.  If an excluded Type or Cause of Loss as described in A. 1., 2. and 3. of this endorsement results in a Covered Cause of Loss under the Property Coverages then this policy shall pay only for such resulting direct physical loss or damage subject to the following exceptions:

    This policy will not pay for resulting loss or damage if the cause of loss is:

    1.  Mechanical or machinery breakdown; or

    2.  Artificially generated electrical current, including electrical arcing, that disturbs items in paragraph A.1. above

    unless fire results, and then this policy shall pay only for the direct physical loss or damage caused by that fire.

C.  This policy does not insure against any preventive or remedial costs to repair or modify any items in A.1.a. and b. above to correct any  actual or potential deficiencies or change any features of logic or operation.

D.  This policy does not insure against any expense incurred by the insured or others in the defense, safeguarding, protecting or recovering of property whether before or after loss due to any actual or potential loss excluded in paragraph A. above.

KTJ-CMB-187D484-4-05

MS C8 42 01 03

## CALIFORNIA CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance under this policy.

The GENERAL CONDITIONS FORM is amended as follows:

A.    Section D., CANCELLATION AND NONRENEWAL, Item 1.b.is replaced by the following:

    b.    (1)    All Policies In Effect For 60 Days Or Less.

        If this policy has been in effect for 60 days or less, and is not a renewal of a policy the Company previously issued, the Company may cancel this policy by mailing or delivering to the first Named Insured at the mailing address shown in the policy and to the producer of record, advance written notice of cancellation, stating the reason for cancellation at least:

        (a)    10 days before the effective date of cancellation if the Company cancels for:

            (i)    Nonpayment of premium; or

            (ii)    Discovery of fraud or material misrepresentation by any Insured or the Insured's representative in obtaining this insurance; or

            (iii)    Discovery of fraud or material misrepresentation by any Insured or the Insured's representative in pursuing a claim under this policy.

        (b)    30 days before the effective date of cancellation if the Company cancels for any other reason.

    (2)    All Policies In Effect For More Than 60 Days.

        (a)    If this policy has been in effect for more than 60 days, or is a renewal of a policy the Company issued, the Company may cancel this policy only upon the occurrence, after the effective date of the policy, of one or more of the following:

            (i)    Nonpayment of premium, including payment due on a prior policy the Company issued and due during the current policy term covering the same risks.

            (ii)    Discovery of fraud or material misrepresentation by any Insured or representative of the Insured in obtaining this insurance.

            (iii)    Discovery of fraud or material misrepresentation by any Insured or representative of the Insured in pursuing a claim under this policy.

            (iv)    A judgment by a court or an administrative tribunal that the Insured has violated a California or Federal law, having as one of its necessary elements an act which materially increases any of the risks insured against.

            (v)    Discovery of willful or grossly negligent acts or omissions, or of any violations of state laws or regulations establishing safety standards, by the Insured or the Insured's representative, which materially increase any of the risks insured against.

            (vi)    Failure by the Insured or the Insured's representative to implement reasonable loss control requirements, agreed to by the Insured as a condition of policy issuance, or which were conditions precedent to its use of a particular rate or rating plan, if that failure materially increases any of the risks insured against.

            (vii)    A determination by the Commissioner of Insurance that the loss of, or changes in, the Company's reinsurance covering all or part of the risk would threaten its financial integrity or solvency.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

KTJ-CMB-187D484-4-05

(viii)   A determination by the Commissioner of Insurance that the continuation of the policy coverage would either place the Company in violation of California law or the laws of the state where the Company are domiciled; or threaten the solvency of the Company.

(ix)   A change by the Insured or the Insured's representative in the activities or property of the commercial or industrial enterprise, which results in a materially added, increased or changed risk, unless the added, increased or changed risk is included in the policy.

(b)   The Company will mail or deliver advance written notice of cancellation, stating the reason for cancellation, to the first Named Insured, at the mailing address shown in the policy, and to the producer of record, at least:

(i)   10 days prior to the effective date of the cancellation if the Company cancel for a reason listed in Paragraph (2)(a)(i) or (2)(a)(ii); or

(ii)   60 days before the effective date of cancellation if the Company cancels for any other reason listed in Paragraph (2)(a).

(3)   Residential Property

This provision applies to coverage on real property which is used predominantly for residential purposes and consisting of not more than four dwelling units, and to coverage on tenants' household personal property in a residential unit, if such coverage is written under this policy:

(a)   If such coverage has been in effect for 60 days or less, and is not a renewal of coverage the Company previously issued, the Company may cancel this coverage for any reason, except as provided in (b) and (c) below.

(b)   The Company may not cancel this policy solely because the first Named Insured has:

(i)   Accepted an offer of earthquake coverage: or

(ii)   Cancelled or did not renew a policy issued by the California Earthquake Authority (CEA) that included an earthquake policy premium surcharge.

However, the Company shall cancel this policy if the first Named Insured has accepted a new or renewal policy issued by the CEA that includes an earthquake policy premium surcharge but fails to pay the earthquake policy premium surcharge authorized by the CEA.

(c)   The Company may not cancel such coverage solely because corrosive soil conditions exist on the premises. This restriction (c.) applies only if coverage is subject to the policy which excludes loss or damage caused by or resulting from corrosive soil conditions.

B.   Section D., CANCELLATION AND NONRENEWAL, Item 2. Nonrenewal is replaced by the following:

2.   Nonrenewal

a.   Subject to the provisions of paragraphs 2.b. and 2c. below, if the Company elects not to renew this policy, the Company will mail or deliver written notice stating the reason for nonrenewal to the first Named Insured shown in the Declarations and to the producer of record, at least 60 days, but not more than 120 days, before the expiration or anniversary date.

The Company will mail or deliver its notice to the first Named Insured, and to the producer of record, at the mailing address shown in the policy.

b.   Residential Property

This provision applies to coverage on real property used predominantly for residential purposes and consists of not more than four dwelling units, and coverage on tenants' household property contained in a residential unit, if such coverage is written under this policy:

(1)   The Company may elect not to renew such coverage for any reason, except as provided in (2) (3) and (4) below:

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

MS C8 42 01 03

(2)  The Company will not refuse to renew such coverage solely because the first Named Insured has accepted an offer of earthquake coverage.

However, the following applies only to insurers who are associate participating insurers as established by Cal. Ins. Code Section 10089.16. The Company may elect not to renew such coverage after the first Named Insured has accepted an offer of earthquake coverage, if one or more of the following reasons applies:

(a)  The nonrenewal is based on sound underwriting principles that relate to the coverage provided by this policy and that are consistent with the approved rating plan and related documents filed with the Department of Insurance as required by existing law;

(b)  The Commissioner of Insurance finds that the exposure to potential losses will threaten the Company's solvency or place it in a hazardous condition. A hazardous condition includes, but is not limited to, a condition in which the Company makes claims payments for losses resulting form an earthquake that occurred within the preceding two years and that required a reduction in policyholder surplus of at least 25% for payment of those claims; or

(c)  The Company has:

(i)  Lost or experienced a substantial reduction in the availability or scope of reinsurance coverage; or

(ii)  Experienced a substantial increase in the premium charged for reinsurance coverage of the Company's residential property insurance policies; and

the Commissioner has approved a plan for the nonrenewals that is fair and equitable, and that is responsive to the changes in our reinsurance position.

(3)  The Company will not refuse to renew such coverage solely because the first named Insured has cancelled or did not renew a policy, issued by the California Earthquake Authority that included an earthquake policy premium surcharge.

(4)  The Company will not refuse to renew such coverage solely because corrosive soil conditions exist on the premises. This restriction (4) applies only if coverage is subject to the policy which exclude loss or damage caused by or resulting from corrosive soil conditions.

c.  The Company is not required to send notice of nonrenewal in the following situations:

(1)  If the transfer or renewal of a policy, without any changes in terms, conditions or rates, is between the Company and a member of the Company insurance group.

(2)  If the policy has been extended for 90 days or less, provided that notice has been given in accordance with Paragraph B.2.a. of this endorsement.

(3)  If the first Named Insured has obtained replacement coverage, or if the first Named Insured has agreed, in writing, within 60 days of the termination of the policy, to obtain that coverage.

(4)  If the policy is for a period of no more than 60 days and the first Named Insured is notified at the time of issuance that is will not be renewed.

(5)  If the first Named Insured requests a change in the terms or conditions or risks covered by the policy within 60 days of the end of the policy period.

(6)  If the Company has made a written offer to the first Named Insured, in accordance with the timeframes shown in Paragraph 2.a. of this endorsement, to renew the policy under changed terms or conditions at an increased premium rate, when the increase exceeds 25%.

C.  The following provisions are added to the CANCELLATION AND NONRENEWAL General Conditions.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

KTJ-CMB-187D484-4-05

MS C8 42 01 03

If any one of the following conditions exists at any building that is Covered Property in this policy, the Company may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least 5 days before the effective date of cancellation.

1. The building has been vacant or unoccupied 60 or more consecutive days. This does not apply to:

   a. Seasonal unoccupancy;

   b. Buildings in the course of construction, renovation or addition; or

   c. Buildings to which the Vacancy Permit endorsement applies.

   Buildings with 65% or more of the rental units or floor area vacant or unoccupied are considered unoccupied under this provision.

2. After damage by a Covered Cause of Loss, permanent repairs to the building:

   a. Have not started, and

   b. Have not been contracted for,

   within 30 days of initial payment of loss.

3. The building has:

   a. An outstanding order to vacate;

   b. An outstanding demolition order;

   c. Been declared unsafe by governmental authority.

4. Fixed and salvageable items have been or are being removed from the building and are not being replaced. This does not apply to such removal that is necessary or incidental to any renovation or remodeling.

5. Failure to:

   a. Furnish necessary heat, water, sewer service or electricity for 30 consecutive days or more, except during a period of seasonal unoccupancy; or

   b. Pay property taxes that are owing and have been outstanding for more than one year following the date due, except that this provision will not apply where you are in a bona fide dispute with the taxing authority regarding payment of such taxes.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

KTJ-CMB-187D484-4-05

MS C8 43 01 03

# CALIFORNIA CHANGES

This endorsement modifies insurance provided under this policy with respect to all locations in and coverages provided with respect to all locations in the state of California.

**A.**   The following is added to any provision which uses the term actual cash value:

Actual cash value is calculated as the amount it would cost to repair or replace Covered Property, at the time of loss or damage, with material of like kind and quality, subject to a deduction for deterioration, depreciation and obsolescence. Actual cash value applies to valuation of Covered Property regardless of whether that property has sustained partial or total loss or damage.

The actual cash value of the lost or damaged property may be significantly less than its replacement cost.

**B.**   **CHANGES TO THE GENERAL CONDITIONS**

1.   Section F., CONCEALMENT, MISREPRESENTATION OR FRAUD, is replaced by the following with respect to loss ("loss") or damage caused by fire:

The Company does not provide coverage to the Insured ("Insured") who, whether before or after a loss ("loss"), has committed fraud or intentionally concealed or misrepresented any material fact or circumstance concerning:

a.   This policy;

b.   The Covered Property;

c.   That Insured's ("Insured's") interest in the Covered Property; or

d.   A claim under this policy.

2.   Section F., CONCEALMENT, MISREPRESENTATION OR FRAUD, is replaced by the following with respect to loss ("loss") or damage caused by a Covered Cause of Loss other than fire:

This policy is void if any Insured ("Insured"), whether before or after a loss ("loss"), has committed fraud or intentionally concealed or misrepresented any material or fact or circumstance concerning:

a.   This policy;

b.   The Covered Property;

c.   That Insured's ("Insured's") interest in the Covered Property; or

d.   A claim under this policy.

KTJ-CMB-187D484-4-05

TR IA 02 12 02

# TERRORISM RISK
# INSURANCE ACT OF 2002 DISCLOSURE

This endorsement provides supplementary information regarding the insurance provided under this policy.

On November 26, 2002, the President of the United States signed into law the Terrorism Risk Insurance Act of 2002 (the "Act"). The Act establishes a short-term program under which the Federal Government will share in the payment of "Insured Losses" caused by certain "Acts of Terrorism" (each as defined in the Act).

In the event of an *Insured Loss*, Travelers is responsible for a deductible of one percent (1%) of Travelers "*Direct Earned Premiums*" (as used in the Act) for the calendar year 2001 *for Insured Losses* occurring from November 26, 2002 through December 31, 2002; seven percent (7%) of Travelers *Direct Earned Premiums* for the calendar year 2002 for *Insured Losses* occurring during calendar year 2003; ten percent (10%) of Travelers *Direct Earned Premiums* for the calendar year 2003 for *Insured Losses* occurring during calendar year 2004; or fifteen percent (15%) of Travelers *Direct Earned Premiums* for the calendar year 2004 for *Insured Losses* occurring during calendar year 2005. The Federal Government's share of compensation for *Insured Losses* in each year is 90% of the amount of *Insured Losses* in excess of Travelers deductible for that year. Travelers is responsible for the payment of the remaining 10% of *Insured Losses*. In no event, however, will the Federal Government or any "*Insurer*" (as defined in the Act) be required to pay any portion of the amount of aggregate *Insured Losses* occurring in any one year that exceeds $100,000,000,000, provided that such *Insurer* has met its deductible.

As a requirement of the Act, *Insurers* must make available "*Property and Casualty Insurance*" (as defined in the Act) coverage for *Insured Losses* that does not differ materially from the terms, amounts and other coverage limitations that apply to losses arising from events other than *Acts of Terrorism*. In other words, a loss will not be excluded just because it was caused by an *Act of Terrorism*; conversely, a loss will not be covered just because it was caused by an *Act of Terrorism*. The Act also requires *Insurers* to disclose to policyholders the premium charge for providing such terrorism coverage.

Please note that this policy excludes coverage for *Insured Losses\**. The Travelers offer of coverage for *Insured Losses* has been declined.

\*    As required by law in the states listed below, a limited exception applies for direct damage loss to covered property located in these states caused by fire that results from an *Act of Terrorism* :

Arizona, California, Connecticut, Georgia, Hawaii, Idaho, Illinois, Iowa, Louisiana, Maine, Massachusetts, Michigan, Minnesota, Missouri, Nebraska, New Hampshire, New Jersey, New York, North Carolina, North Dakota, Oklahoma, Oregon, Pennsylvania, Rhode Island, Virginia, Washington, West Virginia, Wisconsin

The charge for this fire following exposure is included in your policy premium.

KTJ-CMB-187D484-4-05

TR IA 06 12 02

# EXCLUSION OF CERTIFIED ACTS AND OTHER ACTS OF TERRORISM

This endorsement modifies the insurance provided under this policy.

A. The following definitions are added with respect to the provisions of this endorsement:

   1. "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act of 2002. The criteria contained in that Act for a "certified act of terrorism" include the following:

      a. The act resulted in aggregate losses in excess of $5 million; and

      b. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

   2. "Other act of terrorism" means a violent act or an act that is dangerous to human life, property or infrastructure:

      a. That is committed by an individual or individuals and appears to be part of an effort to coerce a civilian population or to influence the policy or affect the conduct of any government by coercion; and

      b. That is not certified as a terrorist act pursuant to the federal Terrorism Risk Insurance Act of 2002.

B. The following exclusion is added:

   **Exclusion of Certified Acts and Other Acts of Terrorism**

   The Company will not pay for loss or damage caused directly or indirectly by a "certified act of terrorism" or an "other act of terrorism". Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss. But **with respect to an "other act of terrorism", this exclusion applies only when one or more of the following are attributed to such act:**

   1. The terrorism is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

   2. Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the terrorism was to release such materials; or

   3. The total of insured damage to all types of property in the United States, its territories and possessions, Puerto Rico and Canada, in any one incident, exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, the Company will include all insured damage sustained by property of all persons and entities affected by the terrorism and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions. Multiple incidents of "other acts of terrorism" which occur within a 72-hour period and appear to be carried out in concert or to have a related purpose or common leadership will be deemed to be one incident.

   With respect to this item **B.3.**, the immediately preceding paragraph describes the threshold used to measure the magnitude of an "other act of terrorism" incident and the circumstances in which the threshold will apply, for the purpose of determining whether the Terrorism Exclusion will apply to that incident. When the Exclusion applies to an "other act of terrorism" incident, there is no coverage under this policy.

KTJ-CMB-187D484-4-05

Endorsement 1

## PARTICIPATING COMPANIES SCHEDULE

It is understood and agreed that each company in the schedule below is acting on its own behalf and for its stipulated percentage and is not, in any respect, assuming any of the liabilities or obligations of the other companies.

| Company and Policy Number | Company Participation Percentage |
|---|---|
| Company: Travelers<br>Policy No: KTJ-CMB-187D484-4-05 | 50% of the first $50,000,000 of Covered Loss |
| Company: Chubb<br>Policy No: 661-82-25 | 50% of the first $50,000,000 of Covered Loss |
| Company: Travelers<br>Policy No: KTJ-CMB-187D484-4-05 | 100% of Covered Loss EXCESS of the $50,000,000 of Covered Loss |

X  Federal Insurance Company
Authorized Signature

By / Title _____

Date _____

KTJ-CMB-187D484-4-05

GOLDEN RAIN FOUNDATION
2005 STATEMENT OF VALUES
As of 01/1/05

| PROJECT | ADDRESS | CONSTRUCTION TYPE | CONSTRUCTION YEAR | NO. OF STORIES | SQUARE FOOTAGE | NO. OF BUILDINGS | 2004 VALUE | 2005 VALUE |
|---|---|---|---|---|---|---|---|---|
| TRUST FACILITIES | | | | | | | | |
| Creekside CH – Main | 1000 Stanley Dollar Dr. | Class D | 1928 | 1 | 12,491 | 8 | $1,249,100 | $1,324,046 |
| DelValle CH | 1751 Tice Creek Dr. | Class C | 1973 | 1 | 27,900 | 1 | $5,727,447 | $6,071,094 |
| Dollar CH | 1015 Stanley Dollar Dr | Class D | 1928 | 2 | 11,134 | 2 | $1,214,246 | $1,287,101 |
| GRF- Gateway CH | 1001 Golden Rain Rd. | Class D | 2003 | 1 | 50,000 | 8 | $9,683,851 | $10,264,882 |
| Hillside CH | 3400 Golden Rain Rd. | Class D | 1967 | 1 | 14,800 | 7 | $1,480,000 | $1,568,800 |
| Vehicle Services | 800 Rockview Dr. | Class S | 1988 | 1 | 6,500 | 1 | $568,649 | $602,768 |
| Health Svs. | 1220 Rossmoor Pkwy. | Class S | 1970 | 3 | 22,907 | 1 | $2,290,700 | $2,428,142 |
| Maintenance Svs. | 800 Rockview Dr. | Class S | 1965 | 1 | 19,200 | 2 | $1,686,454 | $1,787,641 |
| TOTAL TRUST | | | | | | | $23,900,447 | $25,334,474 |
| | | | | | 292,934 | 3 | | |
| Mutual 58 Waterford | 1860 Tice Creek Dr. | Class D | 1991 | 4 | 292,934 | 3 | $52,751,210 | $55,916,283 |

# GOLDEN RAIN FOUNDATION
## 2005 STATEMENT OF VALUES
### As of 01/1/05

| PROJECT | ADDRESS | CONSTRUCTION TYPE | CONSTRUCTION YEAR | NO. OF STORIES | SQUARE FOOTAGE | NO. OF BUILDINGS | 2004 VALUE | 2005 VALUE |
|---|---|---|---|---|---|---|---|---|
| Mutual 8 | 1122 Skycrest Drive #8 | | 1969 | 2 | 117,077 | 18 | $11,706,600 | $12,408,996 |
| Mutual 22 | 4033 Terra Granada | Class D | 1970 | 2 | 55,101 | 11 | $5,610,100 | $5,946,706 |
| Mutual 28 | 2225 Ptarmigan Dr. | Class D | 1971 | 1 | 103,740 | 30 | $10,892,700 | $11,546,262 |
| Mutual 29 | 2740 Ptarmigan Dr. | Class D | 1972 | 1 | 133,310 | 27 | $13,997,550 | $14,837,403 |
| Mutual 30 | 2801 Ptarmigan Dr. | Class D | 1973 | 2 | 92,764 | 24 | $9,276,400 | $9,832,984 |
| Mutual 48 | 3250 Ptarmigan Dr. | Class D | 1981 | 3 | 98,463 | 9 | $12,154,338 | $12,883,598 |
| Mutual 56 | 1902 Lakeshire Dr. | Class D | 1988 | 1 | 76,115 | 14 | $11,111,837 | $11,779,547 |
| Mutual 59 | 5910 Horsemans Canyon | Class D | 1993 | 3 | 137,340 | 6 | $27,687,744 | $29,349,009 |
| Mutual 65 Devonshire | 1800, 1802 Castleberry Lane  1800, 1082, 1804, 1816, 1818, 1820, 1813, 1811, 1809, 1807, 1805, 1803, 1801 Wales Drive | Class D | 1998 | 1 | 96,988 | 16 | $13,944,935 | $14,781,631 |
| Mutual 68 Eagle Ridge | 600 Shadowhawk Way  700 Woodwren Court  500 Spotted Owl Cout  3000 Grey Eagle Drive  517 Quail Hill Court | Class D | 1999 | 1&2 | 407,790 | 74 | $57,810,963 | $61,279,621 |
| **TOTAL MOD** | | | | | 1,317,688 | 229 | $174,193,167 | $184,644,757 |
| FWCM01 | 1100 Oakmont Dr. | Class D | 1964 | 2 | 577,230 | 91 | $57,723,000 | $61,186,380 |
| FWCM03 | 1116 Golden Rain Rd. | Class D | 1965 | 2 | 345,060 | 61 | $34,506,000 | $36,576,360 |
| FWCM04 | 1150 Rockledge Ln. | Class D | 1965 | 2 | 291,810 | 32 | $29,181,000 | $30,931,860 |
| FWCM05 | 2345 Tice Creek Dr. | Class D | 1965 | 2 | 398,310 | 49 | $39,831,000 | $42,220,860 |
| FWCM06 | 1108 Fairlawn Ct. | Class D | 1966 | 2 | 187,440 | 22 | $18,744,000 | $19,966,640 |
| FWCM07 | 2001 Pine Knoll Dr. | Class D | 1966 | 2 | 200,220 | 24 | $20,022,000 | $21,223,320 |
| **TOTAL FWCM** | | | | | 2,000,070 | 279 | $200,007,000 | $212,007,420 |
| SWCM02 | 2400 Tice Creek Dr. | Class D | 1964 | 2 | 501,552 | 74 | $50,155,200 | $53,164,512 |
| SWCM10 | 2700 Tice Creek Dr. | Class D | 1966 | 2 | 271,880 | 45 | $27,188,000 | $28,819,280 |
| SWCM11 | 1101 Singingwood Ct. | Class D | 1967 | 2 | 240,300 | 38 | $24,030,000 | $25,471,800 |
| SWCM12 | 1101 Ptarmigan Ct. | Class D | 1967 | 2 | 158,402 | 23 | $15,840,200 | $16,799,612 |
| SWCM13 | 2216 Tice Creek Dr. | Class D | 1967 | 2 | 12,504 | 3 | $1,250,400 | $1,325,424 |
| SWCM14 | 1101 Ptarmigan Dr. | Class D | 1968 | 2 | 173,046 | 29 | $17,304,600 | $18,342,876 |
| SWCM15 | 2200 Tice Creek Dr. | Class D | 1968 | 2 | 8,848 | 1 | $884,800 | $937,888 |
| SWCM16 | 3301 Tice Creek Dr. | Class D | 1968 | 2 | 83,264 | 11 | $8,326,400 | $8,825,984 |
| SWCM17 | 3434 Tice Creek Dr. | Class D | 1969 | 2 | 88,364 | 12 | $8,838,400 | $9,368,704 |
| **TOTAL SWCM** | | | | | 1,538,180 | 236 | $153,818,000 | $163,047,080 |

Willis Insurance Services of California, Inc

Valuation date of 11/17/04

Willis Insurance Services of California, Inc.

Valuation date of 11/17/04

## GOLDEN RAIN FOUNDATION
## 2005 STATEMENT OF VALUES
## As of 01/1/05

| PROJECT | ADDRESS | CONSTRUCTION TYPE | CONSTRUCTION YEAR | NO. OF STORIES | SQUARE FOOTAGE | NO. OF BUILDINGS | 2004 VALUE | 2005 VALUE |
|---|---|---|---|---|---|---|---|---|
| TWCM/19 | 1902 Skycrest Dr. | Class D | 1970 | 2 | 72,234 | 10 | $7,223,400 | $7,656,804 |
| TWCM.23 | 1129 Avenida Seville | Class D | 1970 | 3 | 50,085 | 9 | $5,008,500 | $5,309,010 |
| TWCM/26 | 1501 Ptarmigan Dr. | Class D | 1971 | 3 | 126,338 | 28 | $12,633,800 | $13,391,828 |
| TWCM/27 | 1900 Ptarmigan Dr. | Class D | 1971 | 1 | 59,280 | 20 | $6,224,400 | $6,597,864 |
| TWCM.31 | 2601 Ptarmigan Dr. | Class D | 1973 | 2 | 57,768 | 17 | $5,776,800 | $6,123,408 |
| TWCM/32 | 2500 Ptarmigan Dr. | Class D | 1973 | 2 | 24,226 | 5 | $2,422,600 | $2,567,956 |
| TWCM/33 | 4032 Terra Granada | Class D | 1974 | 2 | 24,636 | 8 | $2,463,600 | $2,611,416 |
| TWCM/34 | 997 Terra California Dr. | Class D | 1974 | 2 | 12,731 | 2 | $1,273,100 | $1,349,486 |
| TWCM/35 | 3125 Terra Granada | Class D | 1975 | 2 | 48,900 | 12 | $4,890,000 | $5,183,400 |
| TWCM/36 | 2185 Cactus CL | Class D | 1973 | 2 | 118,180 | 16 | $11,818,000 | $12,527,080 |
| TWCM/37 | 900 Terra California | Class D | 1974 | 2 | 128,831 | 18 | $12,883,100 | $13,656,086 |
| TWCM/38 | 803 Terra California | Class D | 1975 | 2 | 121,512 | 18 | $12,151,200 | $12,880,272 |
| TWCM/39 | 2604 Saklan Indian | Class D | 1975 | 2 | 154,498 | 21 | $15,449,800 | $16,376,788 |
| TWCM/40 | 735 Terra California | Class D | 1975 | 2 | 168,851 | 25 | $16,885,100 | $17,898,206 |
| TWCM/41 | 2621 Saklan Indian | Class D | 1976 | 2 | 106,140 | 16 | $10,614,000 | $11,250,840 |
| TWCM/42 | 600 Terra California | Class D | 1976 | 2 | 47,452 | 6 | $4,745,200 | $5,029,912 |
| TWCM/43 | 2671 Saklan Indian | Class D | 1978 | 2 | 33,640 | 5 | $3,364,000 | $3,565,840 |
| TWCM/44 | 3002 Rossmoor Pkwy. | Class D | 1977 | 2 | 134,840 | 19 | $13,484,000 | $14,293,040 |
| TWCM/45 | 3201 Rossmoor Pkwy. | Class D | 1977 | 2 | 227,304 | 31 | $22,730,400 | $24,094,224 |
| TWCM/46 | 1221 Avenida Seville | Class D | 1978 | 2 | 29,871 | 3 | $2,987,100 | $3,166,326 |
| TWCM/47 | 1265 Avenida Seville | Class D | 1986 | 2 | 289,718 | 37 | $28,971,800 | $30,710,108 |
| TWCM/49 | 1614 Stanley Dollar Dr. | Class D | 1980 | 2 | 131,094 | 13 | $13,109,400 | $13,895,964 |
| TWCM/50 | 5401 Terra Granada | Class D | 1988 | 2 | 168,438 | 19 | $21,901,094 | $23,215,160 |
| TWCM/51 | 4503 Terra Granada | Class D | 1985 | 2 | 197,584 | 11 | $19,758,400 | $20,943,904 |
| TWCM/52 | 2502 Saklan Indian | Class D | 1981 | 2 | 5,750 | 1 | $575,000 | $609,500 |
| TWCM/53 | 2502 Saklan Indian | Class D | 1998 | 2 | 106,810 | 13 | $10,681,000 | $11,321,860 |
| TWCM/54 | 4300 Terra Granada | Class D | 1984 | 2 | 81,200 | 11 | $8,120,000 | $8,607,200 |
| TWCM/55 | 1502 Stanley Dollar Dr | Class D | 1989 | 2 | 100,018 | 13 | $12,737,092 | $13,501,318 |
| TWCM/64 | 4603 Terra Granada | Class D | 1990 | 1 | 18,851 | 4 | $2,437,399 | $2,583,643 |
| TOTAL TWCM | 2506 Saklan Indian | Class D | | | 2,846,780 | 411 | $293,319,285 | $310,918,442 |

Willis Insurance Services of California, Inc.

Valuation date of 11/17/04

## GOLDEN RAIN FOUNDATION
## 2005 STATEMENT OF VALUES
### As of 01/1/05

| PROJECT | ADDRESS | CONSTRUCTION TYPE | CONSTRUCTION YEAR | NO. OF STORIES | SQUARE FOOTAGE | NO. OF BUILDINGS | 2004 VALUE | 2005 VALUE |
|---|---|---|---|---|---|---|---|---|
| 4WCM/09 | 1101 Skycrest Dr. | Class D | 1970 | 2 | 53,280 | 9 | $5,328,000 | $5,647,680 |
| 4WCM/18 | 1501 Skycrest Dr. | Class D | 1969 | 2 | 59,564 | 10 | $5,956,400 | $6,313,784 |
| 4WCM/20 | 2137 Skycrest Dr. | Class D | 1970 | 2 | 75,102 | 10 | $7,510,200 | $7,960,812 |
| 4WCM (Mutual 21) | 2137 Skycrest Dr. | Class D | 1971 | 1 | 37,050 | 13 | $3,890,250 | $4,123,665 |
| 4WCM24 | 1601 Skycrest Dr. | Class D | 1970 | 2 | 26,246 | 6 | $2,624,600 | $2,782,076 |
| 4WCM25 | 2128 Tice Creek Dr. | Class D | 1970 | 2 | 10,038 | 1 | $1,003,800 | $1,064,028 |
| TOTAL 4WCM | 2589 Pine Knoll Dr. | Class D | 1971 | 2 | 261,280 | 49 | 26,313,250 | $27,892,045 |
| **Total Building Values** | | | | | | | $924,302,359 | $979,760,501 |
| Business Personal Prop. | | | | | | | $2,800,000 | $2,800,000 |
| Contractors' Equip. | | | | | | | $2,600,000 | $2,600,000 |
| Data Processing Equip. | | | | | | | $1,800,000 | $1,800,000 |
| Total Contents/Equip. | | | | | | | $7,200,000 | $7,200,000 |
| **Business Income** | | | | | | | $5,000,000 | $5,000,000 |
| **TOTAL INSURED VALUES** | | | | | | | $936,502,359 | $991,960,501 |

2005 SOV.xls
Page 4 of 4

**EXHIBIT B**

# SUMMONS
## (CITACION JUDICIAL)

SUM-100

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA, FEDERAL
INSURANCE COMPANY and DOES 1 through 20, inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
SECOND WALNUT CREEK MUTUAL

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

FILED

20  APR -8  P 2: 17

K. TORRE CLERK OF THE SUPERIOR COURT
COUNTY OF CONTRA COSTA, CALIF.

BY:_____ Deputy Clerk

---

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff.   A letter or phone call will not protect you.  Your written response must be in proper legal form if you want the court to hear your case.  There may be a court form that you can use for your response.  You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you.  If you cannot pay the filing fee, ask the court clerk for a fee waiver form.  If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante.  Una carta o una llamada telefónica no lo protegen.  Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte.  Es posible que haya un formulario que usted pueda usar para su respuesta.  Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca.  Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas.  Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales.  Es recomendable que llame a un abogado inmediatamente.  Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados.  Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro.  Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.*

---

| The name and address of the court is: <br> *(El nombre y dirección de la corte es):* <br> Contra Costa County Superior Court <br> 725 Court St. <br> P.O. Box 911 <br> Martinez, CA 94553 | CASE NUMBER: <br> *(Número del Caso):* 08 - 00998 |
|---|---|

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Michael J. Hughes, Esq., SBN 60336                     925-926-1200          925-926-1202
Amy K. Tinetti, Esq., SBN 199651
HUGHES & GILL, P.C., 1600 S. Main St., Suite 315
Walnut Creek, CA 94596

| DATE: <br> *(Fecha)* APR - 8 2008 | Clerk, by <br> *(Secretario)* S. TAREDECHT | , Deputy <br> *(Adjunto)* |
|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

under: ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation)     ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

| Form Adopted for Mandatory Use <br> Judicial Council of California <br> SUM-100 [Rev. January 1, 2004] | **SUMMONS** | Legal <br> Solutions <br> Plus | Code of Civil Procedure §§ 412 20  465 |
|---|---|---|---|

POS-015

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State bar number, and address)* | FOR COURT USE ONLY |
|---|---|
| Michael J. Hughes, Esq., SBN 60336<br>Amy K. Tinetti, Esq., SBN 199651<br>HUGHES & GILL, P.C.<br>1600 S. Main St., Suite 315<br>Walnut Creek, CA 94596 | |

TELEPHONE NO. 925-926-1200    FAX NO. *(Optional)*    925-926-1202
E-MAIL ADDRESS *(Optional)*  mhughes@hughes-gill.com
ATTORNEY FOR *(Name)*  Plaintiff Second Walnut Creek Mutual

SUPERIOR COURT OF CALIFORNIA, COUNTY OF CONTRA COSTA
STREET ADDRESS  725 Court St.
MAILING ADDRESS  P.O. Box 911
CITY AND ZIP CODE  Martinez, CA 94553
BRANCH NAME

PLAINTIFF/PETITIONER: SECOND WALNUT CREEK MUTUAL

DEFENDANT/RESPONDENT: TRAVELERS PROPERTY CASUALTY COMPANY OF
AMERICA, FEDERAL INSURANCE COMPANY and DOES 1-20

| NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL | CASE NUMBER<br>C-08-00998 |
|---|---|

TO *(insert name of party being served)*: CT CORPORATION as Agent for Service of Process for FEDERAL INSURANCE COMPANY

**NOTICE**

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

Date of mailing: May 14, 2008

MICHAEL J. HUGHES
(TYPE OR PRINT NAME)                    ► _____
                                        (SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)

**ACKNOWLEDGMENT OF RECEIPT**

This acknowledges receipt of *(to be completed by sender before mailing)*:
1. [X] A copy of the summons and of the complaint
2. [X] Other: *(specify)*: Notice of Case Management Conference, blank Case Management
   Conference Statement, Notice to Defendants, blank Stipulation and Order
   to Attend First Case Management Conference, Alternative Dispute
   Resolution (ADR) Information

*(To be completed by recipient)*:
Date this form is signed:

► _____

_____        _____
(TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY    (SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF
ON WHOSE BEHALF THIS FORM IS SIGNED)                  ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>POS-015 [Rev. January 1, 2005] | NOTICE AND ACKNOWLEDGMENT OF RECEIPT — CIVIL |  | Code of Civil Procedure,<br>§§ 415.30, 417.10 |

SUPERIOR COURT - MARTINEZ
COUNTY OF CONTRA COSTA
MARTINEZ, CA, 94553

SECOND WALNUT CREEK MUTUAL VS TRAVELERS

NOTICE OF CASE MANAGEMENT CONFERENCE                CIVMSC08-00998

1.  NOTICE: THE CASE MANAGEMENT CONFERENCE HAS BEEN SCHEDULED FOR:

DATE:  08/26/08      DEPT:  07      TIME:   8:30

THIS FORM, A COPY OF THE NOTICE TO PLAINTIFFS, THE ADR INFORMATION
SHEET, A BLANK CASE MANAGEMENT CONFERENCE QUESTIONNAIRE, AND A BLANK
STIPULATION FORM ARE TO BE SERVED ON OPPOSING PARTIES.  ALL PARTIES
SERVED WITH SUMMONS AND COMPLAINT/CROSS-COMPLAINT OR THEIR ATTORNEY
OF RECORD MUST APPEAR.

2.  You may stipulate to an earlier Case Management Conference.  If
all parties agree to an early Case Management Conference, please
contact the Court Clerk's Office at (925)957-5794 for Unlimited Civil
cases and (925)957-5791 for Limited Civil cases for assignment of an
earlier date.

3.  You must be familiar with the case and be fully prepared to par-
ticipate effectively in the Case Management Conference and to discuss
the suitability of this case for the EASE Program, private mediation,
binding or non-binding arbitration, and/or use of a Special Master.

4.  At any Case Management Conference the court may make pretrial
orders including the following:

      a.  an order establishing a discovery schedule
      b.  an order referring the case to arbitration
      c.  an order transferring the case to limited jurisdiction
      d.  an order dismissing fictitious defendants
      e.  an order scheduling exchange of expert witness information
      f.  an order setting subsequent conference and the trial date
      g.  an order consolidating cases
      h.  an order severing trial of cross-complaints or bifurcating
          issues
      i.  an order determining when demurrers and motions will be filed

SANCTIONS
If you do not file the Case Management Conference Questionnaire or
attend the Case Management Conference or participate effectively in
the Conference, the court may impose sanctions (including dismissal of
the case and payment of money).

      Clerk of the Superior Court of Contra Costa County
I declare under penalty of perjury that I am not a party to this
action, and that I delivered or mailed a copy of this notice to the
person representing the plaintiff/cross-complainant.

Dated:  04/08/08                    _____
                                    S.HARBRECHT, Deputy Clerk

CM-110

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|

TELEPHONE NO.:                    FAX NO. *(Optional):*

E-MAIL ADDRESS *(Optional):*

ATTORNEY FOR *(Name):*

SUPERIOR COURT OF CALIFORNIA, COUNTY OF

STREET ADDRESS:

MAILING ADDRESS:

CITY AND ZIP CODE:

BRANCH NAME:

PLAINTIFF/PETITIONER:

DEFENDANT/RESPONDENT:

| CASE MANAGEMENT STATEMENT | CASE NUMBER: |
|---|---|
| **(Check one):**   ☐ UNLIMITED CASE  ☐ LIMITED CASE <br> (Amount demanded (Amount demanded is $25,000 <br> exceeds $25,000) or less) | |

A **CASE MANAGEMENT CONFERENCE** is scheduled as follows:

Date:                    Time:                    Dept.:                    Div.:                    Room:

Address of court *(if different from the address above):*

INSTRUCTIONS: All applicable boxes must be checked, and the specified information must be provided.

1.  **Party or parties** *(answer one):*
    a. ☐ This statement is submitted by party *(name):*
    b. ☐ This statement is submitted **jointly** by parties *(names):*

2.  **Complaint and cross-complaint** *(to be answered by plaintiffs and cross-complainants only)*
    a. The complaint was filed on *(date):*
    b. ☐ The cross-complaint, if any, was filed on *(date):*

3.  **Service** *(to be answered by plaintiffs and cross-complainants only)*
    a. ☐ All parties named in the complaint and cross-complaint have been served, or have appeared, or have been dismissed.
    b. ☐ The following parties named in the complaint or cross-complaint
        (1) ☐ have not been served *(specify names and explain why not):*

        (2) ☐ have been served but have not appeared and have not been dismissed *(specify names):*

        (3) ☐ have had a default entered against them *(specify names):*

    c. ☐ The following additional parties may be added *(specify names, nature of involvement in case, and the date by which they may be served):*

4.  **Description of case**
    a. Type of case in ☐ complaint ☐ cross-complaint    *(describe, including causes of action):*

Form Adopted for Mandatory Use
Judicial Council of California
CM-110 [Rev. January 1, 2007]

**CASE MANAGEMENT STATEMENT**

Cal. Rules of Court,
rules 3.720–3.730
www.courtinfo.ca.gov

American LegalNet, Inc.
www.FormsWorkflow.com

CM-110

| PLAINTIFF/PETITIONER: | CASE NUMBER |
|---|---|
| DEFENDANT/RESPONDENT: | |

4. b. Provide a brief statement of the case, including any damages. *(If personal injury damages are sought, specify the injury and damages claimed, including medical expenses to date [indicate source and amount], estimated future medical expenses, lost earnings to date, and estimated future lost earnings. If equitable relief is sought, describe the nature of the relief.)*

☐ *(If more space is needed, check this box and attach a page designated as Attachment 4b.)*

5. **Jury or nonjury trial**
The party or parties request ☐ a jury trial ☐ a nonjury trial *(if more than one party, provide the name of each party requesting a jury trial):*

6. **Trial date**
a. ☐ The trial has been set for *(date):*
b. ☐ No trial date has been set. This case will be ready for trial within 12 months of the date of the filing of the complaint *(if not, explain):*
c. Dates on which parties or attorneys will not be available for trial *(specify dates and explain reasons for unavailability):*

7. **Estimated length of trial**
The party or parties estimate that the trial will take *(check one):*
a. ☐ days *(specify number):*
b. ☐ hours (short causes) *(specify):*

8. **Trial representation** *(to be answered for each party)*
The party or parties will be represented at trial ☐ by the attorney or party listed in the caption ☐ by the following:
a. Attorney:
b. Firm:
c. Address:
d. Telephone number:
e. Fax number:
f. E-mail address:
g. Party represented:
☐ Additional representation is described in Attachment 8.

9. **Preference**
☐ This case is entitled to preference *(specify code section):*

10. **Alternative Dispute Resolution (ADR)**
a. Counsel ☐ has ☐ has not provided the ADR information package identified in rule 3.221 to the client and has reviewed ADR options with the client.
b. ☐ All parties have agreed to a form of ADR. ADR will be completed by *(date):*
c. ☐ The case has gone to an ADR process *(indicate status):*

CM-110

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

10. d.  The party or parties are willing to participate in *(check all that apply)*:

(1) ☐ Mediation

(2) ☐ Nonbinding judicial arbitration under Code of Civil Procedure section 1141.12 (discovery to close 15 days before arbitration under Cal. Rules of Court, rule 3.822)

(3) ☐ Nonbinding judicial arbitration under Code of Civil Procedure section 1141.12 (discovery to remain open until 30 days before trial; order required under Cal. Rules of Court, rule 3.822)

(4) ☐ Binding judicial arbitration

(5) ☐ Binding private arbitration

(6) ☐ Neutral case evaluation

(7) ☐ Other *(specify)*:

e. ☐ This matter is subject to mandatory judicial arbitration because the amount in controversy does not exceed the statutory limit.

f. ☐ Plaintiff elects to refer this case to judicial arbitration and agrees to limit recovery to the amount specified in Code of Civil Procedure section 1141.11.

g. ☐ This case is exempt from judicial arbitration under rule 3.811 of the California Rules of Court *(specify exemption)*:

**11. Settlement conference**

☐ The party or parties are willing to participate in an early settlement conference *(specify when)*:

**12. Insurance**

a. ☐ Insurance carrier, if any, for party filing this statement *(name)*:

b.  Reservation of rights: ☐ Yes ☐ No

c. ☐ Coverage issues will significantly affect resolution of this case *(explain)*:

**13. Jurisdiction**

Indicate any matters that may affect the court's jurisdiction or processing of this case, and describe the status.

☐ Bankruptcy ☐ Other *(specify)*:

Status:

**14. Related cases, consolidation, and coordination**

a. ☐ There are companion, underlying, or related cases.

(1) Name of case:

(2) Name of court:

(3) Case number:

(4) Status:

☐ Additional cases are described in Attachment 14a.

b. ☐ A motion to ☐ consolidate ☐ coordinate will be filed by *(name party)*:

**15. Bifurcation**

☐ The party or parties intend to file a motion for an order bifurcating, severing, or coordinating the following issues or causes of action *(specify moving party, type of motion, and reasons)*:

**16. Other motions**

☐ The party or parties expect to file the following motions before trial *(specify moving party, type of motion, and issues)*:

CM-110

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

17. Discovery
   a  ☐  The party or parties have completed all discovery.
   b.  ☐  The following discovery will be completed by the date specified *(describe all anticipated discovery)*:

        Party                      Description                     Date

   c.  ☐  The following discovery issues are anticipated *(specify)*:

18. Economic Litigation
   a.  ☐  This is a limited civil case (i.e., the amount demanded is $25,000 or less) and the economic litigation procedures in Code of Civil Procedure sections 90 through 98 will apply to this case.
   b.  ☐  This is a limited civil case and a motion to withdraw the case from the economic litigation procedures or for additional discovery will be filed *(if checked, explain specifically why economic litigation procedures relating to discovery or trial should not apply to this case)*:

19. Other issues
   ☐  The party or parties request that the following additional matters be considered or determined at the case management conference *(specify)*:

20. Meet and confer
   a.  ☐  The party or parties have met and conferred with all parties on all subjects required by rule 3.724 of the California Rules of Court *(if not, explain)*:

   b.  After meeting and conferring as required by rule 3.724 of the California Rules of Court, the parties agree on the following *(specify)*:

21. Case management orders
   Previous case management orders in this case are *(check one)*:  ☐ none  ☐ attached as Attachment 21.

22. Total number of pages attached *(if any)*: _____

I am completely familiar with this case and will be fully prepared to discuss the status of discovery and ADR, as well as other issues raised by this statement, and will possess the authority to enter into stipulations on these issues at the time of the case management conference, including the written authority of the party where required.

Date:

| | |
|---|---|
| ▶ | |
| _____ | _____ |
| (TYPE OR PRINT NAME) | (SIGNATURE OF PARTY OR ATTORNEY) |
| ▶ | |
| _____ | _____ |
| (TYPE OR PRINT NAME) | (SIGNATURE OF PARTY OR ATTORNEY) |
| | ☐ Additional signatures are attached |

**Superior Court of California, County of Contra Costa**

## NOTICE TO PLAINTIFFS

In Unlimited Jurisdiction Civil Actions

## AFTER YOU FILE YOUR COURT CASE:

1. **Have the forms the clerk gives you served on all defendants in this case:**
   a. The Complaint
   b. The Summons
   c. The Notice of Case Management Conference (shows hearing date and time)
   d. The Notice to Defendants  (Local Court Form CV-655d)
   e. Blank: Case Management Statement (Judicial Council Form CM-110)
   f. Blank: Stipulation and Order to Attend ADR and Delay First Case Management Conference 90 Days  (Local Court Form CV-655b)
   g. Alternative Dispute Resolution (ADR) Information (Local Court Form CV-655c)

2. Within 60 days of the date you filed the complaint **you must prove that the forms have been served on (delivered to) the defendants correctly** by filing the ***Proof of Service*** form (POS-040) (completed by the person who did the service) with the court.

3. **Go to the case management conference on the date indicated on** The Notice of Case Management Conference.

4. **Consider using mediation, arbitration, or neutral case evaluation (ADR) to resolve the dispute.** All parties must answer questions about ADR on the *Case Management Statement* form. For more information, see the enclosed ADR information, visit *www.cc-courts.org/adr* , or call (925) 957-5787.

5. **You may delay the first case management conference while you try to resolve the dispute in ADR.**  If all parties agree to use ADR, complete and file the Stipulation and Order to Attend ADR and Continue First Case Management Conference 90 Days form to tell the court you want to use this option.

All civil actions *(except juvenile, probate, family, unlawful detainer, extraordinary writ, and asset forfeiture[1])* and personal injury cases where a party is claiming damages[2] must meet the Civil Trial Delay Reduction time limits for filing documents and moving their cases forward. These time limits are listed in California Rule of Court 3.110 and Local Court Rule 5. If parties miss these deadlines, a judge might issue an order (*Order to Show Cause*) for them to explain in court why they should not have to pay a fine or have their case dismissed.

### VIEW LOCAL COURT RULES AT: (WWW.CC-COURTS.ORG/RULES)

---

[1] *Health and Safety Code §11470 et seq.*
[2] *Including claims for emotional distress and/or wrongful death.*

CV-655a/Rev. 05/2007

## Superior Court of California, County of Contra Costa

# NOTICE TO DEFENDANTS

### In Unlimited Jurisdiction Civil Actions

**YOU ARE BEING SUED.** The packet you have been served should contain:

    a.    The Summons

    b.    The Complaint

    c.    The Notice of Case Management (shows hearing date and time)

    d.    <u>Blank</u>: Case Management Statement (Judicial Council Form CM-110)

    e.    <u>Blank</u>: Stipulation and Order to Attend ADR and Delay First Case Management Conference 90 Days (Local Court Form CV-655b)

    f.    Alternative Dispute Resolution (ADR) Information  (Local Court Form CV-655e)

---

 **WHAT DO I DO NOW?** 

**You must:**

1. **Prepare your response**  YOU COULD LOSE YOUR CASE—even before it is heard by a judge or before you can defend yourself, if you do not prepare and file a response on time. See the other side of this page for types of responses you can prepare.

2. **Complete the** *Case Management Statement*  *(CM-110)*

3. **File and serve your court papers on time**  Once your court forms are complete, you <u>must</u> file 1 original and 2 copies of the forms at court. An adult who is NOT involved in your case must serve one set of forms on the Plaintiff. If you were served in person you must file your response in 30 days. If the server left a copy of the papers with an adult living at your home or an adult in charge at your work or you received a copy by mail you must file your response in 40 days.

4. **Prove you served your court papers on time**  by having your server complete a *Proof of Service, (Judicial Council form POS-040)*, that <u>must</u> be filed at the court within <u>60</u> days.

5. **Go to court** on the date and time given in the *Notice of Case Management Conference.*

6. **Consider trying to settle your case before trial**  If you and the other party to the case can agree to use mediation, arbitration or neutral case evaluation, the *Stipulation and Order to Attend ADR and Delay First Case Management Conference 90 Days* can be filed with your other papers. For more information read the enclosed ADR information, visit www.cc-courts.org/adr, or call (925) 957-5787.

**IMPORTANT! The court recommends consulting an attorney for all or part of your case. While you may represent yourself, lawsuits can be complicated, and the court cannot give you legal advice.**

---

**COURT FEES:** You must pay court fees the first time you file your papers.  If you also file a motion, you must pay another fee. If you cannot afford the fees, you may ask the court to waive (allow you not to pay) fees. Use Judicial Council forms FW-001-INFO [information sheet]; FW-001 [application]; and FW-003 [order].

**COURT FORMS:** Buy forms at the Forms Window in the Family Law Building or download them for free at:
www.courtinfo.ca.gov/forms/

## WHAT KIND OF RESPONSES CAN I FILE?

1. If you disagree with some or all of what the plaintiff says in the complaint because you believe, or know it is not true, you can file an <u>ANSWER</u>.

2. If you have a claim in the same case against the plaintiff, you may file a <u>CROSS-COMPLAINT</u>.

3. If you want to ask the court to do something on your behalf, you may file a <u>MOTION</u> *(See TYPES OF MOTIONS below)*

## HOW DO I PREPARE AN ANSWER?

There are two kinds of Answers you can use, depending on whether the Complaint was verified. You can tell if a Complaint is verified because it says "Verified Complaint" and/or has a signed oath on the last page.

**For complaints that are NOT verified:**

Use Judicial Council form PLD-050 – General Denial

**For complaints that ARE verified:**

a. For personal injury, property damage, and wrongful death claims, use Judicial Council PLD-PI-003 (do <u>not</u> check number 2).

b. For contract claims, use Judicial Council PLD-C-010 (do <u>not</u> check number 3a).

c. Be sure to deny <u>every</u> claim with which you disagree. For example, you might write: *"I believe, or know, that the information in paragraph #___ is untrue/incorrect."* Continue your list until you have addressed each paragraph in the Complaint.

**NOTE:** The Judicial Council Answer forms have spaces for your affirmative defenses. Be sure to include them or you may not be able to use them later. To find out what your affirmative defenses might be, go to the law library and ask the librarian to help you find the information you need.

**If you want to file a Cross-Complaint, you must do so at the same time you file the Answer.**

a. For a personal injury, property damage, and/or wrongful death Cross-Complaint, use Judicial Council form PLD-PI-002.

b. For a contract Cross-Complaint, use Judicial Council PLD-C-001.

## TYPES OF MOTIONS

Written motions are documents that ask the court to do something. You may have to file an *Answer* at the same time. At this point in the case, you can only make Motions from the following list:

1. <u>Demurrer</u> *(the facts stated in the complaint are wrong, or the deadline to file the lawsuit has passed)*;
2. <u>Motion to Strike</u> *(the complaint is unclear, does not follow the law, "doesn't matter", etc.)*;
3. <u>Motion to Transfer</u> *(the complaint is in the wrong court or there's a more appropriate court)*;
4. <u>Motion to Quash Service of Summons</u> *(you were not legally served)*;
5. <u>Motion to Stay</u> *(put the case on hold)*; or
6. <u>Motion to Dismiss</u> *(stops the case)*.

**NOTE: Motions are very complicated and you may want to hire a lawyer to help you.**

## WHERE CAN I GET MORE HELP?

- **Lawyer Referral Service:** (925) 825-5700
- **Bay Area Legal Aid:** (800) 551-5554
- **Contra Costa County Law Library**   Martinez: (925) 646- 2783      Richmond: (510) 374-3019
- **Ask the Law Librarian:** www.247ref.org/portal/access_law3.cfm

## SUPERIOR COURT OF THE STATE OF CALIFORNIA
## IN AND FOR THE COUNTY OF CONTRA COSTA

_____

_____
                    Plaintiff(s)

        vs.

_____        ***Stipulation and Order*** to Attend ADR and Delay

_____        First Case Management Conference 90 Days
                    Defendant(s)

Case No.:_____    Date complaint filed: _____    First case management conference set for: _____

---

▸ ALL PARTIES MUST SIGN THIS FORM AND FILE THIS STIPULATION, WITH CASE MANAGEMENT STATEMENTS, AT LEAST 15 DAYS BEFORE THE FIRST CASE MANAGEMENT CONFERENCE

▸ PARTIES MUST ALSO SEND A COPY OF THE FORM WITH THE JUDGE'S SIGNATURE TO THE ADR OFFICE: FAX: (925) 957-5689 or MAIL: P.O. BOX 911, MARTINEZ, CA 94553

▸ THIS STIPULATION MAY NOT BE USED IN COMPLEX LITIGATION CASES

---

**Counsel and all parties certify they have met and conferred on the subjects set forth in Rule of Court 212(b), and have selected the following alternative dispute resolution (ADR) process: [check ☑one]:**

❑ Judicial mediation        ❑ Judicial arbitration        ❑ Neutral case evaluation

❑ Private mediation         ❑ Private arbitration

COUNSEL AND ALL PARTIES AGREE TO COMPLETE ADR WITHIN 90 DAYS, AND CERTIFY:

1. This is not a complex civil case (as described in California Rules of Court, Rule 3.400);
2. All parties have been served and intend to submit to the jurisdiction of the court;
3. All parties have agreed to a specific plan for sufficient discovery to make the ADR process meaningful;
4. Defendant(s)' first appearance fee has been paid or will be submitted with this Stipulation;
5. Copies of this Stipulation and self-addressed stamped envelopes are provided for returning file-stamped copies to counsel and the parties;
6. Case Management Conference Statements are submitted with this Stipulation;
7. All parties will attend ADR conferences as required by local court rule (Appendix C); and,
8. All parties know the court will not allow more than 90 days to complete ADR.

_____|_____        _____|_____
Counsel for Plaintiff *(print)*    Fax        Counsel for Defendant *(print)*    Fax

_____            _____
Signature                      Signature

_____|_____        _____|_____
Counsel for Plaintiff *(print)*    Fax        Counsel for Defendant *(print)*    Fax

_____            _____
Signature                      Signature

---

Pursuant to the Stipulation of the parties, and subject to the *Case Management Order* to be filed, IT **IS SO ORDERED** that the Case Management Conference set for _____ is vacated and rescheduled for _____ at (8:30 a.m. / _____ ) Plaintiff's counsel must notify all parties of the case management conference.

Dated: _____        _____
                            *Judge of the Superior Court*

---



## CONTRA COSTA COUNTY SUPERIOR COURT
## ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION

All judges in the Civil Trial Delay Reduction Program agree that parties should consider using Alternative Dispute Resolution (ADR) to settle their cases. To tell the court you will use ADR:

- Choose ADR on the *Case Management Form* (CM-110);
- File a *Stipulation to Attend ADR and Continue First Case Management Conference 90-Days* (local court form); or
- Agree to ADR at your first court appearance.

*Questions?* Call (925) 957-5787, or go to *www.cc-courts.org/adr*

### MEDIATION

Mediation is often faster and less expensive than going to trial. Mediators help people who have a dispute talk about ways they can settle their case. Parties call or visit the ADR Programs office to get a list of mediators. After parties have agreed on a mediator, they must write a summary (5 pages or less) explaining the facts, legal arguments, and legal authority for their position. They must send this summary to the other parties and the mediator at least 5 court days before mediation starts.

ALL parties and attorneys must go to mediation. Mediation can be held whenever and wherever the parties and the mediator want, as long as they finish before the court deadline. In some kinds of court cases, parties have the chance to mediate in the courthouse on their trial day.

Most mediators begin by talking with the parties together, helping them focus on the important issues. The mediator may also meet with each party alone. Mediators often ask parties for their ideas about how to settle the case. Some mediators tell the parties how much money they think a case is worth, or tell them what they think might happen if the case went to trial. Other mediators help the parties decide these things for themselves. No matter what approach a mediator takes, decisions about settling a case can only be made when all the parties agree.

If the parties go through the court ADR program, mediators do not charge fees for the first half hour spent scheduling or preparing for mediation. They also do not charge fees for the first two hours of mediation. If parties need more time, they must pay that person's regular fees. Some mediators ask for a deposit before mediation starts. Mediators who do this must give back whatever is left after counting the time he or she spent preparing for or doing the mediation. A party whose court fees have been waived (cancelled) may ask if their mediation fees or deposit can be waived.

If parties agree about how they will settle their case, they can choose to keep it private, write it up as a contract, or ask the judge to make it a court order. What parties say and agree to in mediation is confidential (private).

### PRIVATE MEDIATION

Private mediation works in the same way as judicial mediation, but the parties do not go through the ADR Programs office. Parties choose a mediator on their own, and pay the mediator's normal fees.

## JUDICIAL ARBITRATION (non-binding)

In judicial arbitration, an independent attorney (arbitrator) looks at the evidence, listens to the parties and their witnesses, and decides how the case will be settled. Judicial arbitration is less formal than court. Parties call or visit the ADR Programs office to get a list of arbitrators. If they cannot agree on an arbitrator, the court will assign one. The judge can send cases to arbitration if there is less than $50,000 in dispute. The person who started the court case can make sure the case goes to arbitration if they agree to limit the amount they are asking for to $50,000. Parties can also agree they want to use judicial arbitration. The arbitrator must send their decision (award) to the court within 10 days of the last hearing. The award becomes a court judgment unless a party asks the court to review the case within 30 days. Parties must use the ADR 102 form to ask for a new court hearing (called a trial de novo.) Judicial arbitrators charge $150 per case or per day.

## PRIVATE ARBITRATION (non-binding and binding)

Private, non-binding arbitration is the same as judicial arbitration, except that the parties do not go through the ADR Programs office to choose an arbitrator, and the arbitrator's award will not become a judgment of the court unless all parties agree. Parties must pay the arbitrator's normal fees.

Binding arbitration is different from judicial or private non-binding arbitration because the arbitrator's decision is final. Parties give up their right to have a judge review their case later (except for reasons listed in California Code of Civil Procedure, Section 1286.2.) Binding arbitration rules are listed in California Code of Civil Procedure, Sections 1280-1288.8. Parties may also agree any time before the judge has made a decision that ends the case to switch to binding arbitration. Parties choose the arbitrator on their own, and must pay the arbitrator's normal (not $150) fees.

## SETTLEMENT MENTOR CONFERENCE

Settlement mentors are independent, experienced trial attorneys that a judge has assigned to help parties look for ways to settle their case. The conference is free and is held in the courthouse. It is often held on the morning of trial, but it can be scheduled anytime. These conferences usually last two or three hours. Parties do not present evidence and do not call witnesses. Parties can ask the settlement mentor to keep some information confidential (private) from the other party, but not from the judge. The settlement mentor can share any information with the judge, or involve the judge in settlement discussions. All principals, clients, and claims representatives must attend the settlement mentor conference.

## NEUTRAL CASE EVALUATION

In neutral case evaluation, an independent attorney (evaluator) reviews documents and listens to each party's side of the case. The evaluator then tells the parties what they think could happen if the case went to trial. Many people use the evaluator's opinion to reach an agreement on their own, or use this information later in mediation or arbitration to settle their case.

Parties call or visit the ADR Programs office to get a list of evaluators. After parties have agreed on an evaluator, they must write a summary (5 pages or less) explaining the facts, legal arguments, and legal authority for their position. They must send this summary to the other parties and the evaluator at least 5 court days before evaluation starts. ALL parties and their attorneys must go to neutral case evaluation. The evaluation can be held whenever and wherever the parties and the evaluator want, as long as they finish before the court deadline. If the parties go through the court's ADR program, evaluators do not charge any fees for the first half hour spent scheduling or preparing for the evaluation conference. They also do not charge fees for the first two hours of the evaluation. If parties need more time, they must pay that person's regular fees. Some evaluators ask for a deposit before evaluation starts. Evaluators who do this must give back whatever is left after counting the time he or she spent preparing for or doing the evaluation. A party whose court fees have been waived (cancelled) may ask if their evaluation fees or deposit can be waived.

CV-655c/Rev. 05/2007

## TEMPORARY JUDGE

Some parties want a trial, but want to choose who will decide the case and when the trial will take place. Parties can agree on an attorney that they want the court to appoint as a temporary judge for their case. (See Article 6, Section 21 of the State Constitution and Rule 2.830 of the California Rules of Court.) Temporary judges have nearly the same authority as a superior court judge to conduct a trial and make decisions. As long as the parties meet the court deadline, they can schedule the trial at their own and the temporary judge's convenience.

Each of the temporary judges on the court's panel has agreed to serve at no charge for up to 5 court days. If the parties need more time, they must pay that person's regular fees. All parties and their lawyers must attend the trial, and provide a copy of all briefs or other court documents to the temporary judge at least two weeks before the trial. These trials are similar to other civil trials, but are usually held outside the court. The temporary judge's decision can be appealed to the superior court. There is no option for a jury trial. The parties must provide their own court reporter.

## SPECIAL MASTER

A special master is a private lawyer, retired judge, or other expert appointed by the court to help make day-to-day decisions in a court case. The special master's role can vary, but often includes making decisions that help the discovery (information exchange) process go more smoothly. He or she can make decisions about the facts in the case. Special masters can be especially helpful in complex cases. The trial judge defines what the special master can and cannot do in a court order.

Special masters often issue both interim recommendations and a final report to the parties and the court. If a party objects to what the special master decides or reports to the court, that party can ask the judge to review the matter. In general, the parties choose (by stipulation) whom they want the court to appoint as the special master, but there are times (see California Code of Civil Procedure Section 639), when the court may appoint a special master or referee without the parties' agreement. The parties are responsible to pay the special master's regular fees.

## COMMUNITY MEDIATION SERVICES

Mediation Services are available through non-profit community organizations. These low-cost services are provided by trained volunteer mediators. For more information about these programs contact the ADR Program at (925) 957-5787

EXHIBIT C

POS-015

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State bar number, and address)*<br>Michael J. Hughes, Esq., SBN 60336<br>Amy K. Tinetti, Esq., SBN 199651<br>HUGHES & GILL, P.C.<br>1600 S. Main St., Suite 315<br>Walnut Creek, CA 94596<br>TELEPHONE NO 925-926-1200    FAX NO *(Optional)*  925-926-1202<br>E-MAIL ADDRESS *(Optional)* mhughes@hughes-gill.com<br>ATTORNEY FOR *(Name)* Plaintiff Second Walnut Creek Mutual | FOR COURT USE ONLY |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF CONTRA COSTA
STREET ADDRESS 725 Court St.
MAILING ADDRESS P.O. Box 911
CITY AND ZIP CODE Martinez, CA 94553
BRANCH NAME

PLAINTIFF/PETITIONER: SECOND WALNUT CREEK MUTUAL

DEFENDANT/RESPONDENT: TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA, FEDERAL INSURANCE COMPANY and DOES 1-20

| NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL | CASE NUMBER<br>C-08-00998 |
|---|---|

TO *(insert name of party being served):* <u>CSC-LAWYERS INCORPORATING SERVICE</u> as Agent for Service of Process for TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA

**NOTICE**

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

Date of mailing: May 14, 2008

<u>MICHAEL J. HUGHES</u>
(TYPE OR PRINT NAME)                    ► _____
                                         (SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)

**ACKNOWLEDGMENT OF RECEIPT**

This acknowledges receipt of *(to be completed by sender before mailing):*
1. [X] A copy of the summons and of the complaint.
2. [X] Other: *(specify):* Notice of Case Management Conference, blank Case Management Conference Statement, Notice to Defendants, blank Stipulation and Order to Attend First Case Management Conference, Alternative Dispute Resolution (ADR) Information

*(To be completed by recipient):*
Date this form is signed: June 3, 2008
Renee M. Peters for Defendant Travelers
Property Casualty Company of America
_____       ► _____
(TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY          (SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF
ON WHOSE BEHALF THIS FORM IS SIGNED)                         ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>POS-015 [Rev. January 1, 2005] | NOTICE AND ACKNOWLEDGMENT OF RECEIPT — CIVIL | Page 1 of 1<br>Code of Civil Procedure,<br>§§ 415.30, 417.10 |

Legal
Solutions
Plus

G:\docs\P3323\0705767.DOC

1                           **PROOF OF SERVICE**

2    STATE OF CALIFORNIA              )
                                      ) ss.
3    COUNTY OF SANTA CLARA            )

4          I am now, and at all times herein mentioned, was over the age of eighteen (18) years, a resident
     of the County of Santa Clara, not a party to the within action or cause; and that my business address is
5    1451 Grant Road, Mountain View, CA 94040. On the below named date, I caused to be served a copy
     of the attached:
6
     NOTICE OF REMOVAL OF CIVIL ACTION PURSUANT TO 28 U.S.C. § 1441(b) – DIVERSITY
7
     on the parties in said action as follows:
8
      X     (BY REGULAR MAIL) by placing a true copy thereof enclosed in a sealed envelope with
9            postage thereon fully prepaid, for collection and mailing at my place of business following
             ordinary business practices. Said documents will be deposited with the United States Post
10           Office mailbox at Mountain View, California, addressed as follows:

11    __     (BY FEDERAL EXPRESS) by placing a true copy thereof enclosed in a sealed envelope,
             prepaid, deposited with the Federal Express carrier/box at Mountain View, California,
12           addressed as follows:

13    Attorneys for Plaintiff SECOND WALNUT          Michael J. Hughes, Esq.
      CREEK MUTUAL                                   Hughes & Gill, P.C.
14                                                   1600 South Main Street, Suite 315
                                                     Walnut Creek, CA  94596
15                                                   Telephone; (925) 926-1200
                                                     Fax: (925) 926-1202
16                                                   Email: mhughes@hughes-gill.com

17    Attorneys for Defendant TRAVELERS              Marjie D. Barrows, Esq.
      PROPERTY CASUALTY COMPANY OF                   Rudloff Wood & Barrows LLP
18    AMERICA                                        Watergate Office Towers
                                                     2000 Powell Street, Suite 900
19                                                   Emeryville, CA  94608
                                                     Phone: (510) 740-1500
20                                                   Fax: (510) 740-1501
                                                     Email: mbarrows@rwblaw.com
21

22    [ ]    [STATE] I declare under penalty of perjury under the laws of the State of California that the
             foregoing is true and correct. Executed this ___ day of June 2008, at Mountain View,
23           California.

24    [X]    [FEDERAL] I declare that I am employed in the office of a member of the bar of this Court at
             whose direction the service was made. Executed this 9th day of June 2008, at Mountain View,
25           California.

26                                                   _Elise Dresser_ (signature)

27                                                   Elise Dresser

28
                              NOTICE OF REMOVAL OF CIVIL ACTION - 4

G:\docs\P3323\0705863.DOC

1  Ronald F. Remmel (#87628)
   Lenell Topol McCallum (#84024)
2  NEWTON REMMEL
   A Professional Corporation
3  1451 Grant Road, P.O. Box 1059
   Mountain View, CA 94042
4  Telephone: (650) 903-0500
   Facsimile: (650) 967-5800
5
   Email: rremmel@newtonremmel.com
6         lmccallum@newtonremmel.com

7  Attorneys for Defendant
   FEDERAL INSURANCE COMPANY
8

9
                UNITED STATES DISTRICT COURT
10
              NORTHERN DISTRICT OF CALIFORNIA
11
                       SAN FRANCISCO
12

13
   SECOND WALNUT CREEK MUTUAL,        )  Case No.:
14                                    )
          Plaintiff,                  )  [Contra Costa Superior Court Action
15                                    )  No. C-08-00998]
       vs.                           )
16                                    )  DEMAND FOR JURY TRIAL
   TRAVELERS PROPERTY CASUALTY        )
17 COMPANY OF AMERICA, FEDERAL        )
   INSURANCE COMPANY and DOES 1       )
18 through 20, inclusive,             )
                                      )
19        Defendants.                 ))
                                      )
20

21        Defendant FEDERAL INSURANCE COMPANY ("FEDERAL") hereby demands trial

22 by jury in this action.

23 DATED: June 9, 2008                     NEWTON REMMEL

24

25
                                     By:
26                                       Ronald F. Remmel
                                         Attorneys for Defendant
27                                       FEDERAL INSURANCE COMPANY

28

                      DEMAND FOR JURY TRIAL - 1

G:\docs\P3323\0705863 DOC

# PROOF OF SERVICE

STATE OF CALIFORNIA        )
                           ) ss.
COUNTY OF SANTA CLARA      )

I am now, and at all times herein mentioned, was over the age of eighteen (18) years, a resident of the County of Santa Clara, not a party to the within action or cause; and that my business address is 1451 Grant Road, Mountain View, CA 94040. On the below named date, I caused to be served a copy of the attached:

DEMAND FOR JURY TRIAL

on the parties in said action as follows:

 X    (BY REGULAR MAIL) by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, for collection and mailing at my place of business following ordinary business practices. Said documents will be deposited with the United States Post Office mailbox at Mountain View, California, addressed as follows:

___   (BY FEDERAL EXPRESS) by placing a true copy thereof enclosed in a sealed envelope, prepaid, deposited with the Federal Express carrier/box at Mountain View, California, addressed as follows:

| | |
|---|---|
| Attorneys for Plaintiff SECOND WALNUT CREEK MUTUAL | Michael J. Hughes, Esq.<br>Hughes & Gill, P.C.<br>1600 South Main Street, Suite 315<br>Walnut Creek, CA 94596<br>Telephone; (925) 926-1200<br>Fax: (925) 926-1202<br>Email: mhughes@hughes-gill.com |
| Attorneys for Defendant TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA | Marjie D. Barrows, Esq.<br>Rudloff Wood & Barrows LLP<br>Watergate Office Towers<br>2000 Powell Street, Suite 900<br>Emeryville, CA 94608<br>Phone: (510) 740-1500<br>Fax: (510) 740-1501<br>Email: mbarrows@rwblaw.com |

[ ]    [STATE] I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed this ___ day of June 2008, at Mountain View, California.

[X]    [FEDERAL] I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made. Executed this 9th day of June 2008, at Mountain View, California.

_Elise Dresser_
Elise Dresser

DEMAND FOR JURY TRIAL - 2

G:\docs\P3323\0705919.DOC

1 | Ronald F. Remmel (#87628)
Lenell Topol McCallum (#84024)
2 | NEWTON REMMEL
A Professional Corporation
3 | 1451 Grant Road, P.O. Box 1059
Mountain View, CA 94042
4 | Telephone: (650) 903-0500
Facsimile: (650) 967-5800
5 |
Email: rremmel@newtonremmel.com
6 |       lmccallum@newtonremmel.com
7 | Attorneys for Defendant
FEDERAL INSURANCE COMPANY
8 |

9 |                    UNITED STATES DISTRICT COURT

10 |                  NORTHERN DISTRICT OF CALIFORNIA

11 |                            SAN FRANCISCO

12 | SECOND WALNUT CREEK MUTUAL,    )   Case No.:
                                   )
13 |        Plaintiff,              )   [Contra Costa Superior Court Action
                                   )   No. C-08-00998]
14 |   vs.                         )
                                   )   **NOTICE OF INTERESTED PARTIES**
15 | TRAVELERS PROPERTY CASUALTY    )
COMPANY OF AMERICA, FEDERAL       )
16 | INSURANCE COMPANY and DOES 1   )
through 20, inclusive,            )
17 |                               ))
           Defendants.            )
18 |

19 |        The undersigned, counsel of record for defendant FEDERAL INSURANCE

20 | COMPANY, certifies that the following listed parties have a direct, pecuniary interest in the

21 | outcome of this case.  These representations are made to enable the Court to evaluate possible

22 | disqualification or recusal.

23 |        Defendant FEDERAL INSURANCE COMPANY is a wholly-owned subsidiary of The

24 | Chubb Corporation.

25 | DATED:  June 9, 2008

26 |                                        NEWTON REMMEL

27 |                                        By: _____
                                              Ronald F. Remmel
28 |                                          Attorneys for Defendant
                                              FEDERAL INSURANCE COMPANY

G \docs\P3323-0705919 DOC

# PROOF OF SERVICE

STATE OF CALIFORNIA     )
                      ) ss.
COUNTY OF SANTA CLARA    )

    I am now, and at all times herein mentioned, was over the age of eighteen (18) years, a resident of the County of Santa Clara, not a party to the within action or cause; and that my business address is 1451 Grant Road, Mountain View, CA 94040. On the below named date, I caused to be served a copy of the attached:

NOTICE OF INTERESTED PARTIES

on the parties in said action as follows:

_X_    (BY REGULAR MAIL) by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, for collection and mailing at my place of business following ordinary business practices. Said documents will be deposited with the United States Post Office mailbox at Mountain View, California, addressed as follows:

___    (BY FEDERAL EXPRESS) by placing a true copy thereof enclosed in a sealed envelope, prepaid, deposited with the Federal Express carrier/box at Mountain View, California, addressed as follows:

| | |
|---|---|
| Attorneys for Plaintiff SECOND WALNUT CREEK MUTUAL | Michael J. Hughes, Esq.<br>Hughes & Gill, P.C.<br>1600 South Main Street, Suite 315<br>Walnut Creek, CA 94596<br>Telephone; (925) 926-1200<br>Fax: (925) 926-1202<br>Email: mhughes@hughes-gill.com |
| Attorneys for Defendant TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA | Marjie D. Barrows, Esq.<br>Rudloff Wood & Barrows LLP<br>Watergate Office Towers<br>2000 Powell Street, Suite 900<br>Emeryville, CA 94608<br>Phone: (510) 740-1500<br>Fax: (510) 740-1501<br>Email: mbarrows@rwblaw.com |

[ ]    [STATE] I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed this ___ day of June 2008, at Mountain View, California.

[X]    [FEDERAL] I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made. Executed this 9th day of June 2008, at Mountain View, California.

_Elise Dresser_
Elise Dresser

JS 44   (Rev. 12 07) (cand rev 1-16-08)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON PAGE TWO OF THE FORM.)

## I. (a) PLAINTIFFS

SECOND WALNUT CREEK MUTUAL

## DEFENDANTS

TRAVELERS PROPERTY CASUALTY CO. OF AMERICA, FEDERAL INSURANCE COMPANY and DOES 1 through 20, inclusive

**(b)** County of Residence of First Listed Plaintiff  CONTRA COSTA
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Michael J. Hughes, Esq.
Hughes & Gill, P.C., 1600 South Main Street, #315
Walnut Creek, CA  94596  (925) 926-1200

Attorneys (If Known)

Marjie D. Barrows, Esq.
Rudloff Wood & Barrow, LLP, 2000 Powell Street, #900
Emeryville, CA  94608  (510) 740-1500

E-filing

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- [ ] 1  U.S. Government
  Plaintiff
- [ ] 2  U.S. Government
  Defendant
- [ ] 3  Federal Question
  (U.S. Government Not a Party)
- [X] 4  Diversity
  (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                                   and One Box for Defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated or Principal Place of Business In This State | [X] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated and Principal Place of Business In Another State | [ ] 5 | [X] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [X] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 610 Agriculture | [ ] 422 Appeal 28 USC 158 | [ ] 400 State Reapportionment |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 362 Personal Injury— | [ ] 620 Other Food & Drug | [ ] 423 Withdrawal | [ ] 410 Antitrust |
| [ ] 130 Miller Act | [ ] 315 Airplane Product | Med. Malpractice | [ ] 625 Drug Related Seizure | 28 USC 157 | [ ] 430 Banks and Banking |
| [ ] 140 Negotiable Instrument | Liability | [ ] 365 Personal Injury — | of Property 21 USC 881 | | [ ] 450 Commerce |
| [ ] 150 Recovery of Overpayment | [ ] 320 Assault, Libel & | Product Liability | [ ] 630 Liquor Laws | **PROPERTY RIGHTS** | [ ] 460 Deportation |
| & Enforcement of Judgment | Slander | [ ] 368 Asbestos Personal | [ ] 640 R.R. & Truck | [ ] 820 Copyrights | [ ] 470 Racketeer Influenced and |
| [ ] 151 Medicare Act | [ ] 330 Federal Employers' | Injury Product | [ ] 650 Airline Regs | [ ] 830 Patent | Corrupt Organizations |
| [ ] 152 Recovery of Defaulted | Liability | Liability | [ ] 660 Occupational | [ ] 840 Trademark | [ ] 480 Consumer Credit |
| Student Loans | [ ] 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | [ ] 490 Cable/Sat TV |
| (Excl. Veterans) | [ ] 345 Marine Product | [ ] 370 Other Fraud | [ ] 690 Other | | [ ] 810 Selective Service |
| [ ] 153 Recovery of Overpayment | Liability | [ ] 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | [ ] 850 Securities/Commodities/ |
| of Veteran's Benefits | [ ] 350 Motor Vehicle | [ ] 380 Other Personal | [ ] 710 Fair Labor Standards | [ ] 861 HIA (1395ff) | Exchange |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle | Property Damage | Act | [ ] 862 Black Lung (923) | [ ] 875 Customer Challenge |
| [ ] 190 Other Contract | Product Liability | [ ] 385 Property Damage | [ ] 720 Labor/Mgmt. Relations | [ ] 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| [ ] 195 Contract Product Liability | [ ] 360 Other Personal Injury | Product Liability | [ ] 730 Labor/Mgmt.Reporting | [ ] 864 SSID Title XVI | [ ] 890 Other Statutory Actions |
| [ ] 196 Franchise | | | & Disclosure Act | [ ] 865 RSI (405(g)) | [ ] 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | [ ] 740 Railway Labor Act | | [ ] 892 Economic Stabilization Act |
| | | | [ ] 790 Other Labor Litigation | **FEDERAL TAX SUITS** | [ ] 893 Environmental Matters |
| [ ] 210 Land Condemnation | [ ] 441 Voting | [ ] 510 Motions to Vacate | [ ] 791 Empl. Ret. Inc. | [ ] 870 Taxes (U.S. Plaintiff | [ ] 894 Energy Allocation Act |
| [ ] 220 Foreclosure | [ ] 442 Employment | Sentence | Security Act | or Defendant) | [ ] 895 Freedom of Information |
| [ ] 230 Rent Lease & Ejectment | [ ] 443 Housing/ | **Habeas Corpus:** | | [ ] 871 IRS—Third Party | Act |
| [ ] 240 Torts to Land | Accommodations | [ ] 530 General | | 26 USC 7609 | [ ] 900 Appeal of Fee |
| [ ] 245 Tort Product Liability | [ ] 444 Welfare | [ ] 535 Death Penalty | **IMMIGRATION** | | Determination |
| [ ] 290 All Other Real Property | [ ] 445 Amer. w/Disabilities - | [ ] 540 Mandamus & Other | [ ] 462 Naturalization Application | | Under Equal Access |
| | Employment | [ ] 550 Civil Rights | [ ] 463 Habeas Corpus – | | to Justice |
| | [ ] 446 Amer. w/Disabilities - | [ ] 555 Prison Condition | Alien Detainee | | [ ] 950 Constitutionality of |
| | Other | | [ ] 465 Other Immigration | | State Statutes |
| | [ ] 440 Other Civil Rights | | Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

- [ ] 1  Original
  Proceeding
- [X] 2  Removed from
  State Court
- [ ] 3  Remanded from
  Appellate Court
- [ ] 4  Reinstated or
  Reopened
- [ ] 5  Transferred from
  another district
  (specify)
- [ ] 6  Multidistrict
  Litigation
- [ ] 7  Appeal to District
  Judge from
  Magistrate
  Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):

28 U.S.C. 1441(b)

Brief description of cause:

Plaintiff asserts it was wrongly denied insurance benefits under a property insurance policy.

## VII. REQUESTED IN COMPLAINT:

[ ] CHECK IF THIS IS A CLASS ACTION
UNDER F.R.C.P. 23

DEMAND $ in excess of
$75,000

CHECK YES only if demanded in complaint:
JURY DEMAND:   [ ] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY

PLEASE REFER TO CIVIL L.R. 3-12 CONCERNING REQUIREMENT TO FILE
"NOTICE OF RELATED CASE".

## IX. DIVISIONAL ASSIGNMENT (CIVIL L.R. 3-2)
(PLACE AND "X" IN ONE BOX ONLY)

[X] SAN FRANCISCO/OAKLAND          [ ] SAN JOSE

DATE   June 9 , 2008          SIGNATURE OF ATTORNEY OF RECORD

JS 44 Reverse (Rev. 12/07)

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

## Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.**    **(a) Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

   **(b) County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

   **(c) Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.**    **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

**III.**    **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.**    **Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

**V.**    **Origin.** Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate judge's decision.

**VI.**    **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. Do not cite jurisdictional statutes unless diversity.    Example:    U.S. Civil Statute: 47 USC 553
                    Brief Description: Unauthorized reception of cable service

**VII.**    **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.**    **Related Cases.** This section of the JS 44 is used to reference related pending cases if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.
**Date and Attorney Signature.** Date and sign the civil cover sheet.

G:\docs\P3323\0705767.DOC

1

## PROOF OF SERVICE

2 STATE OF CALIFORNIA        )
                           ) ss.
3 COUNTY OF SANTA CLARA      )

4        I am now, and at all times herein mentioned, was over the age of eighteen (18) years, a resident

5 of the County of Santa Clara, not a party to the within action or cause; and that my business address is
1451 Grant Road, Mountain View, CA 94040. On the below named date, I caused to be served a copy

6 of the attached:

7 CIVIL COVER SHEET

8 on the parties in said action as follows:

9  X    (BY REGULAR MAIL) by placing a true copy thereof enclosed in a sealed envelope with
       postage thereon fully prepaid, for collection and mailing at my place of business following
       ordinary business practices. Said documents will be deposited with the United States Post

10 Office mailbox at Mountain View, California, addressed as follows:

11 ___   (BY FEDERAL EXPRESS) by placing a true copy thereof enclosed in a sealed envelope,
       prepaid, deposited with the Federal Express carrier/box at Mountain View, California,

12 addressed as follows:

13 Attorneys for Plaintiff SECOND WALNUT          Michael J. Hughes, Esq.
   CREEK MUTUAL                                   Hughes & Gill, P.C.
14                                                1600 South Main Street, Suite 315
                                                  Walnut Creek, CA 94596
15                                                Telephone; (925) 926-1200
                                                  Fax: (925) 926-1202
16                                                Email: mhughes@hughes-gill.com

17 Attorneys for Defendant TRAVELERS             Marjie D. Barrows, Esq.
   PROPERTY CASUALTY COMPANY OF                  Rudloff Wood & Barrows LLP
18 AMERICA                                       Watergate Office Towers
                                                 2000 Powell Street, Suite 900
19                                               Emeryville, CA 94608
                                                 Phone: (510) 740-1500
20                                               Fax: (510) 740-1501
                                                 Email: mbarrows@rwblaw.com
21

22 [ ]    [STATE] I declare under penalty of perjury under the laws of the State of California that the
        foregoing is true and correct. Executed this ___ day of June 2008, at Mountain View,
23 California.

24 [X]    [FEDERAL] I declare that I am employed in the office of a member of the bar of this Court at
        whose direction the service was made. Executed this 9th day of June 2008, at Mountain View,
25 California.

26

27                                              _Elise Dresser_
                                                Elise Dresser

28

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

SECOND WALNUT CREEK MUTUAL,

Plaintiff(s),

v.

TRAVELERS PROPERTY CASUALTY,

Defendant(s).

No. C 08-02874 CW

ORDER SETTING INITIAL CASE
MANAGEMENT CONFERENCE
AND ADR DEADLINES

E-filing

IT IS HEREBY ORDERED that this action is assigned to the Honorable Claudia Wilken.
When serving the complaint or notice of removal, the plaintiff or removing defendant must serve on all
other parties a copy of this order   and all other documents specified in Civil Local Rule 4-2. Counsel
must comply with the case schedule listed below unless the Court otherwise orders.

IT IS FURTHER ORDERED that this action is assigned to the Alternative Dispute Resolution
(ADR) Multi-Option Program governed by ADR Local Rule 3. Counsel and clients shall familiarize
themselves with that rule and with the material entitled "Dispute Resolution Procedures in the Northern
District of California" on the Court ADR Internet site at www.adr.cand.uscourts.gov. A limited
number of printed copies are available from the Clerk's Office for parties in cases not subject to the
court's Electronic Case Filing program (ECF).

IT IS FURTHER ORDERED that plaintiff or removing defendant serve upon all parties
the brochure entitled "Consenting To A Magistrate Judge's Jurisdiction In The Northern
District Of California," additional copies of which can be downloaded from the following
Internet site: http://www.cand.uscourts.gov.

## CASE SCHEDULE -ADR MULTI-OPTION PROGRAM

| Date | Event | Governing Rule |
|------|-------|----------------|
| 6/9/2008 | Notice of removal filed | |
| 8/26/2008 | Last day to:<br>• meet and confer re: initial disclosures, early settlement, ADR process selection, and discovery plan | FRCivP 26(f) & ADR L.R.3-5 |
| | • file ADR Certification signed by Parties and Counsel (form available at http://www.cand.uscourts.gov) | Civil L.R. 16-8 (b) & ADR L.R. 3-5(b) |
| | • file either Stipulation to ADR Process or Notice of Need for ADR Phone Conference (form available at http://www.cand.uscourts.gov) | Civil L.R. 16-8 (c) & ADR L.R. 3-5(b) & (c) |
| 9/9/2008 | Last day to file Rule 26(f) Report, complete initial disclosures or state objection in Rule 26(f) Report and file Case Management Statement per attached Standing Order re Contents of Joint Case Management Statement (also available at  http://www.cand.uscourts.gov) | FRCivP 26(a) (1) Civil L.R. 16-9 |

9/16/2008     INITIAL CASE MANAGEMENT CONFERENCE     <u>Civil L.R. 16-10</u>
              (CMC) in Courtroom 2, Oakland at 2:00 PM

<u>NOTICE</u>

**Case Management Conferences and Pretrial Conferences** are conducted on **Tuesdays** at 2:00 p.m. **Criminal Law and Motion** calendar is conducted on **Wednesdays** at 2:00 p.m. for defendants in custody and 2:30 p.m. for defendants not in custody. **Civil Law and Motion** calendar is conducted on **Thursdays** at 2:00 p.m. Order of call is determined by the Court. Counsel need not reserve a hearing date for civil motions; however, counsel are advised to check the legal newspapers or the Court's website at www.cand.uscourts.gov for unavailable dates.

Motions for Summary Judgment: All issues shall be contained within one motion of 25 pages or less, made on 35 days notice. (<u>See</u> Civil L.R. 7-2). Separate statements of undisputed facts in support of or in opposition to motions for summary judgment will not be considered by the Court. (<u>See</u> Civil Local Rule 56-2(a)). The motion and opposition should include a statement of facts supported by citations to the declarations filed with respect to the motion. Evidentiary and procedural objections shall be contained within the motion, opposition or reply; separate motions to strike will not be considered by the Court. Any cross-motion shall be contained within the opposition to any motion for summary judgment, shall contain 25 pages or less, and shall be filed 21 days before the hearing. The reply to a motion may contain up to 15 pages, shall include the opposition to any cross-motion, and shall be filed 14 days before the hearing. (<u>See</u> Civil Local Rule 7-3). The Court may, *sua sponte* or pursuant to a motion under Civil L.R. 6-3, reschedule the hearing so as to give a moving party time to file a reply to any cross-motion.

All discovery motions are referred to a Magistrate Judge to be heard and considered at the convenience of his/her calendar. All such matters shall be noticed by the moving party for hearing on the assigned Magistrate Judge's regular law and motion calendar, or pursuant to that Judge's procedures.

Pursuant to General Order 45,§ VI.G, "In all cases subject to ECF, in addition to filing papers electronically, the parties are required to lodge for chambers no later than noon on the business day following the day that the papers are filed electronically, one paper copy of each document that is filed electronically."

(rev. 10/10/07)

STANDING ORDER FOR ALL JUDGES OF THE NORTHERN DISTRICT OF CALIFORNIA

CONTENTS OF JOINT CASE MANAGEMENT STATEMENT

Commencing March 1, 2007, all judges of the Northern District of California will require the identical information in Joint Case Management Statements filed pursuant to Civil Local Rule 16-9. The parties must include the following information in their statement which, except in unusually complex cases, should not exceed ten pages:

1.     Jurisdiction and Service:  The basis for the court's subject matter jurisdiction over plaintiff's claims and defendant's counterclaims, whether any issues exist regarding personal jurisdiction or venue, whether any parties remain to be served, and, if any parties remain to be served, a proposed deadline for service.

2.     Facts: A brief chronology of the facts and a statement of the principal factual issues in dispute.

3.     Legal Issues: A brief statement, without extended legal argument, of the disputed points of law, including reference to specific statutes and decisions.

4.     Motions: All prior and pending motions, their current status, and any anticipated motions.

5.     Amendment of Pleadings: The extent to which parties, claims, or defenses are expected to be added or dismissed and a proposed deadline for amending the pleadings.

6.     Evidence Preservation: Steps taken to preserve evidence relevant to the issues reasonably evident in this action, including interdiction of any document-destruction program and any ongoing erasures of e-mails, voice mails, and other electronically-recorded material.

7.     Disclosures: Whether there has been full and timely compliance with the initial disclosure requirements of Fed. R. Civ. P. 26 and a description of the disclosures made.

8.     Discovery: Discovery taken to date, if any, the scope of anticipated discovery, any proposed limitations or modifications of the discovery rules, and a proposed discovery plan pursuant to Fed. R. Civ. P. 26(f).

9.     Class Actions: If a class action, a proposal for how and when the class will be certified.

10.    Related Cases: Any related cases or proceedings pending before another judge of this court, or before another court or administrative body.

11.    Relief: All relief sought through complaint or counterclaim, including the amount of any

damages sought and a description of the bases on which damages are calculated. In addition, any party from whom damages are sought must describe the bases on which it contends damages should be calculated if liability is established.

12. _Settlement and ADR:_ Prospects for settlement, ADR efforts to date, and a specific ADR plan for the case, including compliance with ADR L.R. 3-5 and a description of key discovery or motions necessary to position the parties to negotiate a resolution.

13. _Consent to Magistrate Judge For All Purposes:_ Whether all parties will consent to have a magistrate judge conduct all further proceedings including trial and entry of judgment.

14. _Other References:_ Whether the case is suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

15. _Narrowing of Issues:_ Issues that can be narrowed by agreement or by motion, suggestions to expedite the presentation of evidence at trial (e.g., through summaries or stipulated facts), and any request to bifurcate issues, claims, or defenses.

16. _Expedited Schedule:_ Whether this is the type of case that can be handled on an expedited basis with streamlined procedures.

17. _Scheduling:_ Proposed dates for designation of experts, discovery cutoff, hearing of dispositive motions, pretrial conference and trial.

18. _Trial:_ Whether the case will be tried to a jury or to the court and the expected length of the trial.

19. _Disclosure of Non-party Interested Entities or Persons:_ Whether each party has filed the "Certification of Interested Entities or Persons" required by Civil Local Rule 3-16. **In addition,** each party must restate in the case management statement the contents of its certification by identifying any persons, firms, partnerships, corporations (including parent corporations) or other entities known by the party to have either: (i) a financial interest in the subject matter in controversy or in a party to the proceeding; or (ii) any other kind of interest that could be substantially affected by the outcome of the proceeding.

20. Such other matters as may facilitate the just, speedy and inexpensive disposition of this matter.

# LOCATION GUIDE TO COURT OFFICES
## OAKLAND FEDERAL BUILDING



NORTH TOWER

SOUTH TOWER

U.S. COURT HOUSE

CLAY STREET



AUDITORIUM WING



12TH STREET



14TH





**OAKLAND FEDERAL BUILDING**
1301 CLAY STREET
OAKLAND, CA 94612

**BY BART:**
Use Oakland City Center —
12th Street Station

**BY CAR:**
Use 14th Street Exit off I-980

**PARKING:**
City Center West Garage:
Enter from Jefferson Street

City Center Garage: Enter from 11th
or 14th Streets (underground)

# D I R E C T I O N S

**JURORS:** Enter through Rotunda from Plaza, turn left into South Tower, bear right to security check point.* Jury Assembly Room is on 4th Floor, Room 405S.   Information: (510) 637-3533

**COURTS:** Enter from Plaza into Courthouse on left.   Information: (510) 637-3530
Courtroom 1   4th Floor   Judge Jensen   (510) 637-3540
Courtroom 2   4th Floor   Judge Wilken   (510) 637-3542
Courtroom 3   3rd Floor   Judge Armstrong   (510) 637-3541
Courtroom 4   3rd Floor   Magistrate Judge Brazil (510) 637-3639

**CLERK OF COURT:** Enter through Rotunda from Plaza, turn left into South Tower, bear right to security check point. 4th Floor, Room 400S. Information: (510) 637-3530

**U.S. ATTORNEY:** Enter through Rotunda from Plaza, turn left into South Tower, bear right to security check point. 3rd Floor, Room 340S. Information: (510) 637-3680

**FEDERAL PUBLIC DEFENDER:** Enter from Plaza into Courthouse on left. 2nd Floor Courthouse, Room 200C. Information: (510) 637-3500

**U.S. PROBATION:** Enter through Rotunda from Plaza, turn left into South Tower, bear right to security check point. 2nd Floor, Room 220S. Information: (510) 637-3600

**PRE-TRIAL SERVICES:** Enter from Plaza into Courthouse on left. 1st Floor Courthouse, Room 100C. Information: (510) 637-3750

**U.S. MARSHAL:** Enter from Plaza into Courthouse on left. 1st Floor Courthouse, Room 150C. Information: (510) 637-3650

*If security check is closed, enter Courthouse from Plaza

# PUBLIC NOTICE

## MAGISTRATE JUDGE

## U.S. DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

The current term of office of United States Magistrate Judge Richard Seeborg is due to expire on February 8, 2009. The United States District Court is required by law to establish a panel of citizens to consider the reappointment of the magistrate judge to a new 8-year term.

The duties of the magistrate judge position include the following: 1) conduct of most preliminary proceedings in criminal cases; 2) trial and disposition of misdemeanor cases; 3) conduct of various pretrial matters and evidentiary proceedings on delegation from the judges of the district court; 4) trial and disposition of civil cases upon consent of the litigants; and 5) conduct of settlement conferences.

Comments from members of the bar and the public are invited as to whether the incumbent magistrate judge should be recommended by the panel for reappointment by the court and should be submitted in writing no later than **July 18, 2008** to: **Richard W. Wieking, Clerk of the Court, United States District Court, 450 Golden Gate Avenue, P.O. Box 36060, San Francisco, CA 94102.**

 

## U.S. District Court Northern California

## ECF Registration Information Handout

The case you are participating in has been designated for this court's Electronic Case Filing (ECF) Program, pursuant to Civil Local Rule 5-4 and General Order 45. **This means that you must** (check off the boxes ☑ when done):

☐ 1) **Serve** this ECF Registration Information Handout on **all** parties in the case along with the complaint, or for removals, the removal notice. DO NOT serve the efiler application form, just this handout.

Each attorney representing a party must also:

☐ 2) **Register** to become an efiler by filling out the efiler application form. Follow ALL the instructions on the form carefully. If you are already registered in this district, do not register again, your registration is valid for life on all ECF cases in this district.

☐ 3) **Email** (do not efile) the complaint and, for removals, the removal notice and all attachments, in PDF format within ten business days, following the instructions below. You do not need to wait for your registration to be completed to email the court.

☐ 4) Access dockets and documents using **PACER** (Public Access to Court Electronic Records). If your firm already has a PACER account, please use that - it is not necessary to have an individual account. PACER registration is free. If you need to establish or check on an account, visit: **http://pacer.psc.uscourts.gov** or call **(800) 676-6856.**

BY SIGNING AND SUBMITTING TO THE COURT A REQUEST FOR AN ECF USER ID AND PASSWORD, YOU CONSENT TO ENTRY OF YOUR E-MAIL ADDRESS INTO THE COURT'S ELECTRONIC SERVICE REGISTRY FOR ELECTRONIC SERVICE ON YOU OF ALL E-FILED PAPERS, PURSUANT TO RULES 77 and 5(b)(2)(D) (eff. 12.1.01) OF THE FEDERAL RULES OF CIVIL PROCEDURE.

**All subsequent papers submitted by attorneys in this case shall be filed electronically. Unrepresented litigants must file and serve in paper form, unless prior leave to file electronically is obtained from the assigned judge.**

ECF registration forms, interactive tutorials and complete instructions for efiling may be found on the ECF website: **http://ecf.cand.uscourts.gov**

Version 5/14/2007

**Submitting Initiating Documents**

PDF versions of all the initiating documents originally submitted to the court (Complaint or Notice of Removal, exhibits, etc.) must be **emailed (not efiled)** to the **PDF email box for the presiding judge** (not the referring judge, if there is one) **within 10 (ten) business days** of the opening of your case. For a complete list of the email addresses, please go to: **http://ecf.cand.uscourts.gov** and click on **[Judges]**.

You must include the case number and judge's initials in the <u>subject line</u> of all relevant emails to the court. You do not need to wait for your registration to email these documents.

These documents must be emailed instead of e-filed to prevent duplicate entries in the ECF system. All other documents must be e-filed from then on. You do not need to efile or email the Civil Cover Sheet, Summons, or any documents issued by the court at case opening; note that you do need to efile the Summons Returned.

**Converting Documents to PDF**

Conversion of a word processing document to a PDF file is required before any documents may be submitted to the Court's electronic filing system. Instructions for creating PDF files can be found at the ECF web site: **http://ecf.cand.uscourts.gov**, and click on **[FAQ]**.

**Email Guidelines:** When sending an email to the court, the subject line of the email **must** contain the **case number, judge's initials** and the **type of document(s)** you are sending, and/or the topic of the email.

**Examples:** The examples below assume your case number is 03-09999 before the Honorable Charles R. Breyer:

| Type of Document | Email Subject Line Text |
|---|---|
| Complaint Only | 03-09999 CRB Complaint |
| Complaint and Notice of Related Case | 03-09999 CRB Complaint, Related Case |
| Complaint and Motion for Temporary Restraining Order | 03-09999 CRB Complaint, TRO |

**Questions**
Almost all questions can be answered in our **FAQ**s at
**http://ecf.cand.uscourts.gov**, please check them first.

You may also email the ECF Help Desk at ECFhelpdesk@cand.uscourts.gov or
call the toll-free ECF Help Desk number at: (866) 638-7829.

The ECF Help Desk is staffed Mondays through Fridays from
9:00am to 4:00pm Pacific time, excluding court holidays.

Version 5/14/2007

United States District Court

Northern District of California

# Consenting To A

# Magistrate Judge's

# Jurisdiction

# In The Northern District

# Of California

United States District Court

450 Golden Gate Avenue   San Francisco   California   94102

Phone: 415-522-2000

Fax: 415-522-3605

Print Date: April 2008

# Table of Contents

A Message from the Chief Judge of the
U.S. District Court ............................................. 4

How Consent Jurisdiction Works ........................ 6

Potential Benefits of Consenting To Magistrate Judge
Jurisdiction ........................................................ 7

Magistrate Judge Brazil ..................................... 9

Magistrate Judge Chen ...................................... 10

Magistrate Judge James ..................................... 11

Magistrate Judge Laporte ................................... 12

Magistrate Judge Larson ..................................... 13

Magistrate Judge Lloyd ........................................ 14

Magistrate Judge Seeborg .................................. 15

Magistrate Judge Spero ...................................... 16

Magistrate Judge Trumbull .................................. 17

Magistrate Judge Vadas ...................................... 18

Magistrate Judge Zimmerman .............................. 19

# A Message from the Chief Judge

## of the U.S. District Court

As you embark on civil litigation in the United States District Court for the Northern District of California—whether as a party to a lawsuit or as an attorney—I encourage you to familiarize yourself with the range of services provided by the court's magistrate judges and especially to consider consenting to have a magistrate judge handle all aspects of your case, up to and including dispositive motions, jury or court trial and the entry of judgment.

The Northern District is one of the few federal trial courts in the country to assign a wide range of civil cases directly to magistrate judges upon filing. As a consequence, the magistrate judges have direct experience with nearly all types of civil matters filed in our court. Because our court is very busy, agreeing to proceed before a magistrate judge often means that the case will be resolved more quickly than if the case remained before a district judge. While consent is customarily given soon after a case is filed, parties may consent to have a magistrate judge preside over their case at any point in the proceedings.

Every magistrate judge in the Northern District underwent a highly competitive selection process and had years of litigation experience before being appointed to the bench. As the biographies that follow demonstrate, each is active in law school teaching and continuing legal education for attorneys. Many have been appointed to important committees within the federal courts.

Most have completed at least one term as a magistrate judge and have been reappointed based on detailed, confidential feedback from the bar establishing satisfaction with their work—including their work on dispositive motions and trials. Combined, the Northern District's magistrate judges bring a total of 125 years of federal judicial experience to their work at our court. Each is equipped to handle the full range of issues presented to our court.

Vaughn R Walker

Chief Judge

4

5

# HOW CONSENT JURISDICTION WORKS

Since 1979, the parties in a civil action have had the option of consenting to have all aspects of their case, including trial, handled by a United States magistrate judge.[1] The Northern District of California has been one of the leaders nationwide in implementing this process. When a civil action is filed in this District, ordinarily it will be randomly assigned for all purposes to either a district judge or a magistrate judge.[2] By local practice, a magistrate judge is assigned a civil caseload approximately 30% that of a district judge's civil caseload, in recognition of a magistrate judge's other duties, such as presiding over settlement conferences. Each magistrate judge typically has about 100 consent cases. In 2007, the magistrate judges completed handling almost 800 civil cases in which they had exercised consent jurisdiction. When a case is initially assigned to a magistrate judge, the plaintiff is given a form to use to either consent to or decline magistrate judge jurisdiction.[3] Plaintiff is also required to serve that form on each defendant. Each party should make a decision regarding magistrate judge jurisdiction as soon as possible, and in any event prior to the case management conference which is generally held about 100 days after the case is filed. Civil L.R. 73-1.

If all parties consent to magistrate jurisdiction, then the magistrate judge to whom the case is assigned will preside over all aspects of the case, through trial. F.R.Civ.P. 73(b). An appeal from the magistrate judge's rulings is made to the appropriate appellate court exactly as if the rulings were from a district judge. F.R.Civ.P. 73(c).

A civil case initially assigned to a district judge may also be reassigned to a magistrate judge if all parties consent to magistrate judge jurisdiction. The parties should expect the district judge to ask at the case management conference whether they have considered consenting to a magistrate judge jurisdiction.

Each magistrate judge has an assigned courtroom designed to accommodate civil jury trials. Each magistrate judge has at least one law clerk. Many have a second law clerk in lieu of a secretary.

Magistrate judges are fully integrated into the court's administration, serving on all court committees and chairing some of them.

# POTENTIAL BENEFITS OF CONSENTING TO MAGISTRATE JUDGE JURISDICTION

This District has always recruited experienced trial attorneys of the highest caliber who undergo a merit selection process before being appointed as a magistrate judge. Because of their diverse experiences while in practice and while presiding over civil matters including trials, this District's magistrate judges are able to preside over all types of civil litigation. The biographies of the current magistrate judges are set forth below.

Parties that consent to have their case tried before a magistrate judge will receive a date certain for trial. The right to a speedy trial in felony criminal matters requires district judges to give statutory priority to trying those cases, which can sometimes require that civil trial dates be moved. Unlike district judges, magistrate judges do not preside over felony criminal matters.

# WAYNE D. BRAZIL



<span>M</span>agistrate Judge Wayne Brazil was appointed in 1984. He has been the Northern District's ADR Magistrate Judge since the late 1980's. He has presided over jury and court trials in a wide range of civil and criminal cases, including patent, trade secrets, trademark, commercial contract, civil rights, employment, personal injury, maritime, and tax. He has hosted more than 1,500 settlement conferences and published opinions in intellectual property, insurance, civil rights, maritime law, privileges, work product, civil discovery, and case management.

After receiving a B.A. from Stanford, Judge Brazil got his Ph.D. and M.A. from Harvard and his J.D. from Boalt Hall. He practiced civil litigation at Farella, Braun & Martel from 1975-1977. He then became a law professor at the University of California, Hastings College of the Law and at the University of Missouri. He taught civil procedure, constitutional law, criminal procedure, and civil rights from 1978 to 1984. He has authored books on the use of special masters in complex litigation and on settling civil suits, some 30 articles in legal periodicals, and the chapters on Rules 16 and 37 of the Federal Rules of Civil Procedure in Moore's Federal Practice, 3d Ed. He has served on the committees on Civil Rules and Evidence of the Judicial Conference of the United States and on the Ninth Circuit's ADR Committee.

9

---

The historical experience in this District has been that our magistrate judges have virtually always met their scheduled trial dates. Because magistrate judges' trial dockets are generally less crowded than those of district court judges, they are often able to schedule a trial within a year of the filing of the complaint.

## ENDNOTES

1) Federal Magistrate Act of 1979, 28 U.S.C § 636(c)(1). See also F.R.Civ.P. 73(b).

2) District Judges, sometimes called Article III Judges, are appointed by the President, confirmed with the advice and consent of the Senate and hold their position for life. Magistrate Judges are appointed by the District Judges of each district following a merit selection process and serve for a period of eight years, subject to reappointment.

3) If the case has been removed from state court, the form is given to the removing party, who is required to serve it on all other parties.

8

## EDWARD M. CHEN



**M**agistrate Judge Edward M. Chen was appointed in 2001. He has presided over civil and criminal bench and jury trials, as well as hosted more than 500 settlement conferences. A 1975 Order of the Coif graduate of the University of California Boalt Hall School of Law, he clerked for the Honorable Charles B. Renfrew in the Northern District of California and then clerked for the Honorable James R. Browning in the Ninth Circuit Court of Appeals.

Judge Chen worked as a litigation associate at Coblentz, Cahen, McCabe & Breyer, and then as staff counsel of the ACLU Foundation of Northern California. He served as an officer of the California Asian American Judges Association, and as a Master of the Edward J. McFetridge American Inn of Courts. Chief Judge Schroeder of the Ninth Circuit appointed him to the Ninth Circuit Task Force on Self-Represented Litigants, and then as the chair of the Ninth Circuit Implementation Committee on Self-Represented Litigants. He was also appointed chair of the Federal Courts Committee on the California Commission on Access to Justice. He has published cases on discovery, privileges, civil procedure, civil and constitutional rights, international human rights, and criminal procedure. He has also published articles in the California Law Review, Asian Law Journal, George Mason Law Review, and Hastings Communications and Entertainment Law Journal. He has given presentations on such subjects as electronic discovery, patent litigation, employment law, civil rights, national security and constitutional rights, discrimination, case management, alternative dispute resolution, and Asian American legal history. He has taught and lectured on mediation and case management in India and Malaysia. In 2007, he was voted Judge of the Year by the Barristers Club of San Francisco.

10

## MARIA-ELENA JAMES



**M**agistrate Judge Maria-Elena James was appointed in 1994. She has presided over numerous cases and conducted thousands of settlement conferences. Outside the courtroom, she teaches a number of classes at three Bay Area law schools: University of California Hastings, University of San Francisco, and Golden Gate University. She also co-created a course called The Roles of Referees and Commissioners and taught the course, along with another course, at the California Judicial Education and Research College.

A 1978 graduate of the University of San Francisco Law School, she served as director of the Small Claims Court Education Project in the Consumer Fraud Unit of the San Francisco District Attorney's Office. She went on to serve as a deputy public defender in San Francisco, staff attorney for the National Labor Relations Board, and Deputy City Attorney as well as supervising attorney in San Francisco. She then served as a Commissioner in the San Francisco Superior Court for six years. She volunteers as a mock trial judge for all grades of students and serves as a mentor to law students. Her speaking engagements include a 2006 panel on Comparative Racial Justice at the University of Paris, Nanterre and the Assemblee Nationale.

11

## ELIZABETH D. LAPORTE



**M**agistrate Judge Elizabeth Laporte was appointed in 1998. She has presided over numerous civil cases through trial or other disposition, including patent, trademark, copyright, employment, civil rights and environmental cases. She also has conducted over 1000 settlement conferences, handled criminal matters, and resolved discovery disputes.

A 1982 graduate of Yale Law School and a Marshall Scholar, with an M.A. in Politics and Economics from Oxford, she clerked for the Honorable Marilyn Hall Patel in the Northern District of California. She was a partner at the boutique litigation firm of Turner & Brorby, and an Administrative Law Judge for the California Department of Insurance. In 1996, she began serving as Chief of Special Litigation for the San Francisco City Attorney's Office, and was named a Lawyer of the Year by *California Lawyer*. She has authored articles on patent litigation and settlement in the *Northern California ABTL [Association of Business Trial Lawyers] Report*, and has written on e-discovery. She regularly speaks on patent litigation, settlement, e-discovery, jury trials, and other topics. She is a past chair of the Magistrate Judge Executive Board of the Ninth Circuit, and a current member of the Jury Trial Improvement Committee of the Ninth Circuit Court of Appeals, the Sedona Conference Working Group on Electronic Document Retention and Production, the Executive Committee of the Litigation Section of the Bar Association of San Francisco, and the Board of Governors for the Northern California Chapter of the Association of Business Trial Lawyers.

12

## JAMES LARSON

**M**agistrate Judge James Larson was appointed in 1997. He was appointed Chief Magistrate Judge in 2005 for a four year term. He has presided over criminal and civil cases, handled discovery and conducted settlement conferences in a variety of subject areas, including intellectual property, antitrust, contracts, civil rights, employment, environmental, class actions and other statutory liability. He has conducted more than 1,000 mediations and settlement conferences.

He received his undergraduate degree from Stanford University in 1965 and his J.D. from U.C.L.A. law school in 1968, where he was selected for the Moot Court Honors Program. Thereafter he worked in a number of small firms in Los Angeles and the Bay Area, handling admiralty, personal injury, civil rights and criminal matters before founding the law firm of Larson and Weinberg in San Francisco, where he remained until 1990. He then formed his own firm and worked on civil, criminal, trial and appellate cases. He has taught civil trials and criminal pre-trial procedure and has participated for many years in the Intensive Trial Advocacy Program at Cardozo Law School in New York.

Judge Larson has chaired or served on numerous court committees and has appeared on panels of judges and attorneys discussing e-discovery issues, settlement techniques, punitive damages, and bad faith litigation. In December, 2007, he and several other members of the court conducted a comprehensive mediation training program for the High Court Judges of Malaysia.

13

## HOWARD R. LLOYD



Magistrate Judge Howard R. Lloyd was appointed in 2002. He has presided over a variety of civil and criminal trials and has extensive discovery as well as case-dispositive law and motion experience. He has presided over hundreds of settlement conferences in a wide variety of civil cases.

Judge Lloyd earned his undergraduate degree at the College of William and Mary, graduating Phi Beta Kappa, and his law degree from the University of Michigan Law School. He then worked as a civil trial and appellate lawyer for 30 years with a prominent San Jose law firm and personally tried many cases and argued dozens of appeals. He practiced in all areas, but especially employment, intellectual property, and commercial law. He then worked for 2 years as an independent and full time arbitrator and mediator. While in private practice Judge Lloyd was selected for voluntary service as an Early Neutral Evaluator (N.D. CA), mediator (California Court of Appeals), and Settlement Judge Pro Tem (Santa Clara County Superior Court). He is a frequent presenter at continuing education courses for attorneys and currently teaches at Santa Clara University Law School.

14

## RICHARD SEEBORG



Magistrate Judge Richard Seeborg was appointed in 2001. Since joining the Court, he has presided over numerous bench and jury trials and has conducted hundreds of settlement conferences on all manner of federal civil cases. Judge Seeborg received his B.A., *summa cum laude*, Phi Beta Kappa, from Yale College in 1978. He then went to Columbia University School of Law in 1981, where he was a Harlan Fiske Stone Scholar. Following graduation from law school he served as a law clerk to the Honorable Judge John H. Pratt, district court judge in Washington, D.C. In 1982, he joined Morrison & Foerster's San Francisco office in the litigation department, becoming a partner in 1987.

From 1991 to 1998, Judge Seeborg served as an Assistant U.S. Attorney for the Northern District of California in San Jose. In that capacity, he acted as lead prosecutor on a wide range of matters including complex white collar criminal cases. He re-joined Morrison & Foerster in March 1998, where he resumed a litigation practice in the fields of securities, intellectual property, and general commercial matters.

Judge Seeborg has been a member of the Adjunct Faculty at Santa Clara University School of Law where he has served as co-instructor for a course on Federal Criminal Litigation and has served as co-chair of the Federal Courts Committee of the Santa Clara County Bar Association and as a member of the Executive Committee of Magistrate Judges for the Ninth Circuit. At present, he is a member of the Working Group on Electronic Public Access for the United States Courts and a member the Ninth Circuit Jury Instructions Committee. He is a co-author of <u>Federal Pretrial Civil Procedure in California</u>, a four-volume treatise published by Lexis Nexis.

15

## JOSEPH C. SPERO



Magistrate Judge Joseph C. Spero was appointed in 1999. He has presided over criminal and civil trials in a variety of subject areas, including patent, employment, civil rights, commercial contract, trademark, and federal misdemeanor cases. He has participated in over 1000 settlement conferences. He serves as chairman of the court's Capital Habeas Committee, and as a member of the court's Technology and Practice Committees.

A 1981 graduate of Columbia University School of Law, he clerked for the United States Court of Appeals for the Ninth Circuit. He worked as an associate at Skadden, Arps, Slate, Meagher & Flom, and as associate then partner at Coblentz, Cahen, McCabe & Breyer (now Coblentz, Patch, Duffy & Bass). While in private practice, he trained as a mediator at Harvard Law School and served as a mediator in the Northern District's Alternative Dispute Resolution Program. He also served as a Judge Pro-Tem for the San Francisco County Superior Court. He served as pro bono counsel in a variety of cases, including federal capital habeas matters. As a result, he received the Thurgood Marshall Award from the Bar Association of the City of New York.



## PATRICIA V. TRUMBULL

Magistrate Judge Patricia V. Trumbull was appointed in 1987. She served as Chief Magistrate Judge from 2001 to 2005. She has presided over numerous civil and criminal trials and thousands of settlement conferences.

Judge Trumbull received her undergraduate degree from University of California Davis and her law degree. at the Georgetown University Law Center in Washington, D.C. While at Georgetown, she interned at the Department of Justice. After graduating, she spent two years as a law clerk to the Honorable Spencer Williams of the U.S. District Court of Northern California. Following the clerkship, she worked for 12 years as an Assistant Federal Public Defender. She has served on numerous court committees and participated in many panel discussions on a variety of litigation issues.

## NANDOR J. VADAS



**M**agistrate Judge Nandor J. Vadas, a part-time magistrate judge in Eureka, California was appointed in 2004. Although he maintains his chambers in Eureka, he frequently sits in San Francisco. As a magistrate judge he has presided over issues involving civil rights, employment discrimination, Indian law, Endangered Species Act violations, as well as criminal and civil settlement conferences.

Judge Vadas received his undergraduate degree at the University of California at Santa Cruz in 1974 and his law degree from the University of California, Hastings College of the Law in 1978. Following law school he was a state and federal prosecutor for twenty-one years, where he gained criminal jury trial and appellate experience. He also spent five years in family law and juvenile dependency. He also has experience as an instructor at the College of the Redwoods Police Academy.



He is a member of the Magistrate Judges' Advisory Committee to the Federal Judicial Conferences.

## BERNARD ZIMMERMAN

**M**agistrate Judge Bernard Zimmerman was appointed in 1995. With party consent, he has presided over a wide range of civil cases, including patent, trademark and copyright cases, class actions, contract and employment cases and civil rights, personal injury and admiralty cases. He has presided over more than 30 civil and criminal jury and bench trials and more than 1,000 settlement conferences. He chairs the court's Technology Committee and serves on the Media and Education Committees.

A 1970 graduate of the University of Chicago Law School, he clerked for the Honorable Frederick J.R. Heebe in the Eastern District of Louisiana and then taught law at the Louisiana State University Law Center. Returning to California, he was an associate and then partner at Pillsbury Madison & Sutro where he had a general litigation practice focusing on media, banking, construction, insurance and business issues. In 1995, he served as Legal Consultant to the Third Constitutional Convention of the Commonwealth of the Northern Mariana Islands. For the past two years, he has taught Federal Pretrial Litigation at Hastings College of the Law. He is a master of the Intellectual Property Inn of Court and has participated in numerous panels addressing issues such as ADR, class actions and discovery.

19

18

G:\docs\P3323\0705773.DOC

1

**PROOF OF SERVICE**

2    STATE OF CALIFORNIA          )
                                 ) ss.
3    COUNTY OF SANTA CLARA        )

4         I am now, and at all times herein mentioned, was over the age of eighteen (18) years, a resident
of the County of Santa Clara, not a party to the within action or cause; and that my business address is
5    1451 Grant Road, Mountain View, CA 94040. On the below named date, I caused to be served a copy
of the attached:

6

NOTICE TO ADVERSE PARTY OF REMOVAL OF ACTION TO FEDERAL COURT

7

8    on the parties in said action as follows:

9     X    (BY REGULAR MAIL) by placing a true copy thereof enclosed in a sealed envelope with
          postage thereon fully prepaid, for collection and mailing at my place of business following
          ordinary business practices. Said documents will be deposited with the United States Post
10        Office mailbox at Mountain View, California, addressed as follows:

11    ___   (BY FEDERAL EXPRESS) by placing a true copy thereof enclosed in a sealed envelope,
          prepaid, deposited with the Federal Express carrier/box at Mountain View, California,
12        addressed as follows:

13    Attorneys for Plaintiff SECOND WALNUT          Michael J. Hughes, Esq.
      CREEK MUTUAL                                   Hughes & Gill, P.C.
14                                                   1600 South Main Street, Suite 315
                                                     Walnut Creek, CA 94596
15                                                   Telephone; (925) 926-1200
                                                     Fax: (925) 926-1202
16                                                   Email: mhughes@hughes-gill.com

17    Attorneys for Defendant TRAVELERS              Marjie D. Barrows, Esq.
      PROPERTY CASUALTY COMPANY OF                   Rudloff Wood & Barrows LLP
18    AMERICA                                        Watergate Office Towers
                                                     2000 Powell Street, Suite 900
19                                                   Emeryville, CA 94608
                                                     Phone: (510) 740-1500
20                                                   Fax: (510) 740-1501
                                                     Email: mbarrows@rwblaw.com
21

22    [X]   [STATE] I declare under penalty of perjury under the laws of the State of California that the
            foregoing is true and correct. Executed this 10th day of June 2008, at Mountain View,
23          California.

24    [ ]   [FEDERAL] I declare that I am employed in the office of a member of the bar of this Court at
            whose direction the service was made. Executed this 10th day of June 2008, at Mountain View,
25          California.

26                                                   _Elise Dresser_
                                                     Elise Dresser
27

28

G:\docs\P3323\0705863.DOC

1  Ronald F. Remmel (#87628)
   Lenell Topol McCallum (#84024)
2  NEWTON REMMEL
   A Professional Corporation
3  1451 Grant Road, P.O. Box 1059
   Mountain View, CA  94042
4  Telephone:  (650) 903-0500
   Facsimile:  (650) 967-5800
5
   Email: rremmel@newtonremmel.com
6         lmccallum@newtonremmel.com

7  Attorneys for Defendant
   FEDERAL INSURANCE COMPANY
8

9
                    UNITED STATES DISTRICT COURT
10
                  NORTHERN DISTRICT OF CALIFORNIA
11
                         SAN FRANCISCO
12

13  SECOND WALNUT CREEK MUTUAL,       )  Case No.:
                                      )
14          Plaintiff,                )  [Contra Costa Superior Court Action
                                      )  No. C-08-00998]
15      vs.                           )
                                      )  DEMAND FOR JURY TRIAL
16  TRAVELERS PROPERTY CASUALTY       )
    COMPANY OF AMERICA, FEDERAL       )
17  INSURANCE COMPANY and DOES 1      )
    through 20, inclusive,            )
18                                    ))
19          Defendants.               )
                                      )
20

21      Defendant FEDERAL INSURANCE COMPANY ("FEDERAL") hereby demands trial

22  by jury in this action.

23  DATED: June 9, 2008               NEWTON REMMEL

24

25                                    By:
26                                        Ronald F. Remmel
                                          Attorneys for Defendant
27                                        FEDERAL INSURANCE COMPANY

28

                        DEMAND FOR JURY TRIAL - 1

G:\docs\P3323\0705863.DOC

1                              **PROOF OF SERVICE**

2    STATE OF CALIFORNIA              )
                                      ) ss.
3    COUNTY OF SANTA CLARA            )

4          I am now, and at all times herein mentioned, was over the age of eighteen (18) years, a resident
     of the County of Santa Clara, not a party to the within action or cause; and that my business address is
5    1451 Grant Road, Mountain View, CA 94040. On the below named date, I caused to be served a copy
     of the attached:
6
     DEMAND FOR JURY TRIAL
7
     on the parties in said action as follows:
8
9      X    (BY REGULAR MAIL) by placing a true copy thereof enclosed in a sealed envelope with
            postage thereon fully prepaid, for collection and mailing at my place of business following
            ordinary business practices. Said documents will be deposited with the United States Post
10          Office mailbox at Mountain View, California, addressed as follows:

11     __   (BY FEDERAL EXPRESS) by placing a true copy thereof enclosed in a sealed envelope,
            prepaid, deposited with the Federal Express carrier/box at Mountain View, California,
12          addressed as follows:

13   Attorneys for Plaintiff SECOND WALNUT        Michael J. Hughes, Esq.
     CREEK MUTUAL                                 Hughes & Gill, P.C.
14                                                1600 South Main Street, Suite 315
                                                  Walnut Creek, CA  94596
15                                                Telephone; (925) 926-1200
                                                  Fax: (925) 926-1202
16                                                Email: mhughes@hughes-gill.com

17   Attorneys for Defendant TRAVELERS            Marjie D. Barrows, Esq.
     PROPERTY CASUALTY COMPANY OF                 Rudloff Wood & Barrows LLP
18   AMERICA                                      Watergate Office Towers
                                                  2000 Powell Street, Suite 900
19                                                Emeryville, CA  94608
                                                  Phone: (510) 740-1500
20                                                Fax: (510) 740-1501
                                                  Email: mbarrows@rwblaw.com
21

22   [ ]    [STATE] I declare under penalty of perjury under the laws of the State of California that the
            foregoing is true and correct. Executed this ___ day of June 2008, at Mountain View,
23          California.

24   [X]    [FEDERAL] I declare that I am employed in the office of a member of the bar of this Court at
            whose direction the service was made. Executed this 9th day of June 2008, at Mountain View,
25          California.

26                                                _____
                                                  Elise Dresser
27

28

                              DEMAND FOR JURY TRIAL - 2

G:\docs\P3323-0705919.DOC

1  Ronald F. Remmel (#87628)
   Lenell Topol McCallum (#84024)
2  NEWTON REMMEL
   A Professional Corporation
3  1451 Grant Road, P.O. Box 1059
   Mountain View, CA 94042
4  Telephone: (650) 903-0500
   Facsimile: (650) 967-5800
5
   Email: rremmel@newtonremmel.com
6         lmccallum@newtonremmel.com

7  Attorneys for Defendant
   FEDERAL INSURANCE COMPANY
8

9              UNITED STATES DISTRICT COURT

10            NORTHERN DISTRICT OF CALIFORNIA

11                    SAN FRANCISCO

12  SECOND WALNUT CREEK MUTUAL,     )  Case No.:   CV 08 2874
                                    )
13         Plaintiff,               )  [Contra Costa Superior Court Action
                                    )  No. C-08-00998]
14      vs.                         )
                                    )  NOTICE OF INTERESTED PARTIES
15  TRAVELERS PROPERTY CASUALTY     )
    COMPANY OF AMERICA, FEDERAL     )
16  INSURANCE COMPANY and DOES 1    )
    through 20, inclusive,          )
17                                  ))
           Defendants.              )
18  _____ )

19         The undersigned, counsel of record for defendant FEDERAL INSURANCE

20  COMPANY, certifies that the following listed parties have a direct, pecuniary interest in the

21  outcome of this case.  These representations are made to enable the Court to evaluate possible

22  disqualification or recusal.

23         Defendant FEDERAL INSURANCE COMPANY is a wholly-owned subsidiary of The

24  Chubb Corporation.

25  DATED: June 9, 2008           NEWTON REMMEL

26                                By: _____
                                      Ronald F. Remmel
27                                    Attorneys for Defendant
                                      FEDERAL INSURANCE COMPANY
28

                          NOTICE OF INTERESTED PARTIES- 1 -

G:\docs\P3323\0705919.DOC

# PROOF OF SERVICE

STATE OF CALIFORNIA          )
                             ) ss.
COUNTY OF SANTA CLARA        )

I am now, and at all times herein mentioned, was over the age of eighteen (18) years, a resident of the County of Santa Clara, not a party to the within action or cause; and that my business address is 1451 Grant Road, Mountain View, CA 94040. On the below named date, I caused to be served a copy of the attached:

NOTICE OF INTERESTED PARTIES

on the parties in said action as follows:

 X  (BY REGULAR MAIL) by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, for collection and mailing at my place of business following ordinary business practices. Said documents will be deposited with the United States Post Office mailbox at Mountain View, California, addressed as follows:

___ (BY FEDERAL EXPRESS) by placing a true copy thereof enclosed in a sealed envelope, prepaid, deposited with the Federal Express carrier/box at Mountain View, California, addressed as follows:

| | |
|---|---|
| Attorneys for Plaintiff SECOND WALNUT CREEK MUTUAL | Michael J. Hughes, Esq.<br>Hughes & Gill, P.C.<br>1600 South Main Street, Suite 315<br>Walnut Creek, CA 94596<br>Telephone; (925) 926-1200<br>Fax: (925) 926-1202<br>Email: mhughes@hughes-gill.com |
| Attorneys for Defendant TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA | Marjie D. Barrows, Esq.<br>Rudloff Wood & Barrows LLP<br>Watergate Office Towers<br>2000 Powell Street, Suite 900<br>Emeryville, CA 94608<br>Phone: (510) 740-1500<br>Fax: (510) 740-1501<br>Email: mbarrows@rwblaw.com |

[ ]   [STATE] I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed this ___ day of June 2008, at Mountain View, California.

[X]   [FEDERAL] I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made. Executed this 9th day of June 2008, at Mountain View, California.

_Elise Dresser_
Elise Dresser

NOTICE OF INTERESTED PARTIES- 2 -

JS 44 (Rev. 12/07) (cand rev 1-16-08)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON PAGE TWO OF THE FORM.)

## I. (a) PLAINTIFFS

SECOND WALNUT CREEK MUTUAL

## DEFENDANTS

TRAVELERS PROPERTY CASUALTY CO. OF AMERICA, FEDERAL INSURANCE COMPANY and DOES 1 through 20, inclusive

**(b)** County of Residence of First Listed Plaintiff CONTRA COSTA
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Michael J. Hughes, Esq.
Hughes & Gill, P.C., 1600 South Main Street, #315
Walnut Creek, CA 94596 (925) 926-1200

Attorneys (If Known)

Marjie D. Barrows, Esq.
Rudloff Wood & Barrow, LLP, 2000 Powell Street, #900
Emeryville, CA 94608 (510) 740-1500

**E-filing**

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

| | |
|---|---|
| ☐ 1 U.S. Government Plaintiff | ☐ 3 Federal Question (U.S. Government Not a Party) |
| ☐ 2 U.S. Government Defendant | ☒ 4 Diversity (Indicate Citizenship of Parties in Item III) |

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only) and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☒ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☒ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury— | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury — | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | **LABOR** | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | ☐ 710 Fair Labor Standards | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | Act | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | & Disclosure Act | | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | Security Act | ☐ 871 IRS—Third Party | ☐ 900 Appeal of Fee Determination |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | 26 USC 7609 | Under Equal Access |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities – | ☐ 540 Mandamus & Other | **IMMIGRATION** | | to Justice |
| | Employment | ☐ 550 Civil Rights | ☐ 462 Naturalization Application | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 446 Amer. w/Disabilities – | ☐ 555 Prison Condition | ☐ 463 Habeas Corpus – | | |
| | Other | | Alien Detainee | | |
| | ☐ 440 Other Civil Rights | | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

| | |
|---|---|
| ☐ 1 Original Proceeding | ☒ 2 Removed from State Court |
| ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened |
| ☐ 5 Transferred from another district (specify) | ☐ 6 Multidistrict Litigation |
| ☐ 7 Appeal to District Judge from Magistrate Judgment | |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. 1441(b)
Brief description of cause:
Plaintiff asserts it was wrongly denied insurance benefits under a property insurance policy.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ in excess of
$75,000

CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

PLEASE REFER TO CIVIL L.R. 3-12 CONCERNING REQUIREMENT TO FILE "NOTICE OF RELATED CASE".

## IX. DIVISIONAL ASSIGNMENT (CIVIL L.R. 3-2)
(PLACE AND "X" IN ONE BOX ONLY)

☒ SAN FRANCISCO/OAKLAND    ☐ SAN JOSE

DATE
June 9, 2008

SIGNATURE OF ATTORNEY OF RECORD

JS 44 Reverse (Rev. 12 07)

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

## Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.    (a) Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

   **(b) County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

   **(c) Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.    Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

**III.    Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.    Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

**V.    Origin.** Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate judge's decision.

**VI.    Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.**    Example:    U.S. Civil Statute: 47 USC 553
                      Brief Description: Unauthorized reception of cable service

**VII.    Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.    Related Cases.** This section of the JS 44 is used to reference related pending cases if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

G:\docs\P3323\0705767.DOC

1                                    **PROOF OF SERVICE**

2    STATE OF CALIFORNIA            )
                                    ) ss.
3    COUNTY OF SANTA CLARA          )

4            I am now, and at all times herein mentioned, was over the age of eighteen (18) years, a resident
     of the County of Santa Clara, not a party to the within action or cause; and that my business address is
5    1451 Grant Road, Mountain View, CA 94040. On the below named date, I caused to be served a copy
     of the attached:
6
     CIVIL COVER SHEET
7
     on the parties in said action as follows:
8

9     _X_    (BY REGULAR MAIL) by placing a true copy thereof enclosed in a sealed envelope with
             postage thereon fully prepaid, for collection and mailing at my place of business following
             ordinary business practices. Said documents will be deposited with the United States Post
10           Office mailbox at Mountain View, California, addressed as follows:

11    _     (BY FEDERAL EXPRESS) by placing a true copy thereof enclosed in a sealed envelope,
             prepaid, deposited with the Federal Express carrier/box at Mountain View, California,
12           addressed as follows:

13    Attorneys for Plaintiff SECOND WALNUT          Michael J. Hughes, Esq.
      CREEK MUTUAL                                   Hughes & Gill, P.C.
14                                                   1600 South Main Street, Suite 315
                                                     Walnut Creek, CA 94596
15                                                   Telephone; (925) 926-1200
                                                     Fax: (925) 926-1202
16                                                   Email: mhughes@hughes-gill.com

17    Attorneys for Defendant TRAVELERS              Marjie D. Barrows, Esq.
      PROPERTY CASUALTY COMPANY OF                   Rudloff Wood & Barrows LLP
18    AMERICA                                        Watergate Office Towers
                                                     2000 Powell Street, Suite 900
19                                                   Emeryville, CA 94608
                                                     Phone: (510) 740-1500
20                                                   Fax: (510) 740-1501
                                                     Email: mbarrows@rwblaw.com
21

22    [ ]    [STATE] I declare under penalty of perjury under the laws of the State of California that the
             foregoing is true and correct. Executed this ___ day of June 2008, at Mountain View,
23           California.

24    [X]    [FEDERAL] I declare that I am employed in the office of a member of the bar of this Court at
             whose direction the service was made. Executed this 9th day of June 2008, at Mountain View,
25           California.

26                                                   _Elise Dresser_
                                                     Elise Dresser
27

28

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

SECOND WALNUT CREEK MUTUAL,

Plaintiff(s),

v.

TRAVELERS PROPERTY CASUALTY,
Defendant(s).

No. **C 08-02874 CW**

**ORDER SETTING INITIAL CASE**
**MANAGEMENT CONFERENCE**
**AND ADR DEADLINES**

IT IS HEREBY ORDERED that this action is assigned to the Honorable Claudia Wilken.
When serving the complaint or notice of removal, the plaintiff or removing defendant must serve on all
other parties a copy of this order    and all other documents specified in Civil Local Rule 4-2. Counsel
must comply with the case schedule listed below unless the Court otherwise orders.

IT IS FURTHER ORDERED that this action is assigned to the Alternative Dispute Resolution
(ADR) Multi-Option Program governed by ADR Local Rule 3. Counsel and clients shall familiarize
themselves with that rule and with the material entitled "Dispute Resolution Procedures in the Northern
District of California" on the Court ADR Internet site at www.adr.cand.uscourts.gov. A limited
number of printed copies are available from the Clerk's Office for parties in cases not subject to the
court's Electronic Case Filing program (ECF).

IT IS FURTHER ORDERED that plaintiff or removing defendant serve upon all parties
the brochure entitled "Consenting To A Magistrate Judge's Jurisdiction In The Northern
District Of California," additional copies of which can be downloaded from the following
Internet site: http://www.cand.uscourts.gov.

## CASE SCHEDULE - ADR MULTI-OPTION PROGRAM

| Date | Event | Governing Rule |
|------|-------|----------------|
| 6/9/2008 | Notice of removal filed | |
| 8/26/2008 | Last day to:<br>• meet and confer re: initial disclosures, early settlement, ADR process selection, and discovery plan | FRCivP_26(f) & ADR L.R.3-5 |
| | • file ADR Certification signed by Parties and Counsel (form available at http://www.cand.uscourts.gov) | Civil_L.R. 16-8 (b) & ADR L.R. 3-5(b) |
| | • file either Stipulation to ADR Process or Notice of Need for ADR Phone Conference (form available at http://www.cand.uscourts.gov) | Civil_L.R. 16-8 (c) & ADR L.R. 3-5(b) & (c) |
| 9/9/2008 | Last day to file Rule 26(f) Report, complete initial disclosures or state objection in Rule 26(f) Report and file Case Management Statement per attached Standing Order re Contents of Joint Case Management Statement (also available at http://www.cand.uscourts.gov) | FRCivP 26(a) (1) Civil_L.R. 16-9 |

9/16/2008      INITIAL CASE MANAGEMENT CONFERENCE      <u>Civil  L.R.  16-10</u>
               (CMC)  in Courtroom 2, Oakland at 2:00 PM

<u>NOTICE</u>

**Case Management Conferences and Pretrial Conferences** are conducted on **Tuesdays** at 2:00 p.m.  **Criminal Law and Motion** calendar is conducted on **Wednesdays** at 2:00 p.m. for defendants in custody and 2:30 p.m. for defendants not in custody.  **Civil Law and Motion** calendar is conducted on **Thursdays** at 2:00 p.m.  Order of call is determined by the Court.  Counsel need not reserve a hearing date for civil motions; however, counsel are advised to check the legal newspapers or the Court's website at www.cand.uscourts.gov for unavailable dates.

Motions for Summary Judgment:  All issues shall be contained within one motion of 25 pages or less, made on 35 days notice.  (<u>See</u> Civil L.R. 7-2).  Separate statements of undisputed facts in support of or in opposition to motions for summary judgment will not be considered by the Court.  (<u>See</u> Civil Local Rule 56-2(a)).  The motion and opposition should include a statement of facts supported by citations to the declarations filed with respect to the motion.  Evidentiary and procedural objections shall be contained within the motion, opposition or reply; separate motions to strike will not be considered by the Court. Any cross-motion shall be contained within the opposition to any motion for summary judgment, shall contain 25 pages or less, and shall be filed 21 days before the hearing.  The reply to a motion may contain up to 15 pages, shall include the opposition to any cross-motion, and shall be filed 14 days before the hearing.  (<u>See</u> Civil Local Rule 7-3).  The Court may, *sua sponte* or pursuant to a motion under Civil L.R. 6-3, reschedule the hearing so as to give a moving party time to file a reply to any cross-motion.

All discovery motions are referred to a Magistrate Judge to be heard and considered at the convenience of his/her calendar.  All such matters shall be noticed by the moving party for hearing on the assigned Magistrate Judge's regular law and motion calendar, or pursuant to that Judge's procedures.

Pursuant to General Order 45,§ VI.G, "In all cases subject to ECF, in addition to filing papers electronically, the parties are required to lodge for chambers **no later than noon on the business day following the day that the papers are filed** electronically, one paper copy of each document that is filed electronically."

(rev. 10/10/07)

STANDING ORDER FOR ALL JUDGES OF THE NORTHERN DISTRICT OF
CALIFORNIA

CONTENTS OF JOINT CASE MANAGEMENT STATEMENT

Commencing March 1, 2007, all judges of the Northern District of California will require the
identical information in Joint Case Management Statements filed pursuant to Civil Local Rule
16-9. The parties must include the following information in their statement which, except in
unusually complex cases, should not exceed ten pages:

1.    Jurisdiction and Service: The basis for the court's subject matter jurisdiction over
plaintiff's claims and defendant's counterclaims, whether any issues exist regarding personal
jurisdiction or venue, whether any parties remain to be served, and, if any parties remain to be
served, a proposed deadline for service.

2.    Facts: A brief chronology of the facts and a statement of the principal factual
issues in dispute.

3.    Legal Issues: A brief statement, without extended legal argument, of the disputed points
of law, including reference to specific statutes and decisions.

4.    Motions: All prior and pending motions, their current status, and any anticipated motions.

5.    Amendment of Pleadings: The extent to which parties, claims, or defenses are expected to
be added or dismissed and a proposed deadline for amending the pleadings.

6.    Evidence Preservation: Steps taken to preserve evidence relevant to the issues reasonably
evident in this action, including interdiction of any document-destruction program and any
ongoing erasures of e-mails, voice mails, and other electronically-recorded material.

7.    Disclosures: Whether there has been full and timely compliance with the initial disclosure
requirements of Fed. R. Civ. P. 26 and a description of the disclosures made.

8.    Discovery: Discovery taken to date, if any, the scope of anticipated discovery, any
proposed limitations or modifications of the discovery rules, and a proposed discovery plan
pursuant to Fed. R. Civ. P. 26(f).

9.    Class Actions: If a class action, a proposal for how and when the class will be certified.

10.   Related Cases: Any related cases or proceedings pending before another judge of this
court, or before another court or administrative body.

11.   Relief: All relief sought through complaint or counterclaim, including the amount of any

damages sought and a description of the bases on which damages are calculated. In addition, any party from whom damages are sought must describe the bases on which it contends damages should be calculated if liability is established.

12.     Settlement and ADR: Prospects for settlement, ADR efforts to date, and a specific ADR plan for the case, including compliance with ADR L.R. 3-5 and a description of key discovery or motions necessary to position the parties to negotiate a resolution.

13.     Consent to Magistrate Judge For All Purposes: Whether all parties will consent to have a magistrate judge conduct all further proceedings including trial and entry of judgment.

14.     Other References: Whether the case is suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

15.     Narrowing of Issues: Issues that can be narrowed by agreement or by motion, suggestions to expedite the presentation of evidence at trial (e.g., through summaries or stipulated facts), and any request to bifurcate issues, claims, or defenses.

16.     Expedited Schedule: Whether this is the type of case that can be handled on an expedited basis with streamlined procedures.

17.     Scheduling: Proposed dates for designation of experts, discovery cutoff, hearing of dispositive motions, pretrial conference and trial.

18.     Trial: Whether the case will be tried to a jury or to the court and the expected length of the trial.

19.     Disclosure of Non-party Interested Entities or Persons: Whether each party has filed the "Certification of Interested Entities or Persons" required by Civil Local Rule 3-16. In addition, each party must restate in the case management statement the contents of its certification by identifying any persons, firms, partnerships, corporations (including parent corporations) or other entities known by the party to have either: (i) a financial interest in the subject matter in controversy or in a party to the proceeding; or (ii) any other kind of interest that could be substantially affected by the outcome of the proceeding.

20.     Such other matters as may facilitate the just, speedy and inexpensive disposition of this matter.

-2-

# LOCATION GUIDE TO COURT OFFICES
## OAKLAND FEDERAL BUILDING











CITY CENTER WEST GARAGE

Jefferson Street

South Tower

Rotunda

North Tower

Enter

14th Street

PLAZA

U.S. Court House

Enter

Auditorium Wing

Clay Street

T O   B A R T

## OAKLAND FEDERAL BUILDING
### 1301 CLAY STREET
### OAKLAND, CA 94612

**BY BART:**
Use Oakland City Center — 12th Street Station

**BY CAR:**
Use 14th Street Exit off I-980

**PARKING:**
City Center West Garage: Enter from Jefferson Street

City Center Garage: Enter from 11th or 14th Streets (underground)

# D I R E C T I O N S

**JURORS:** Enter through Rotunda from Plaza, turn left into South Tower, bear right to security check point.* Jury Assembly Room is on 4th Floor, Room 405S.   Information: (510) 637-3533

**COURTS:** Enter from Plaza into Courthouse on left.   Information: (510) 637-3530
Courtroom 1   4th Floor   Judge Jensen   (510) 637-3540
Courtroom 2   4th Floor   Judge Wilken   (510) 637-3542
Courtroom 3   3rd Floor   Judge Armstrong   (510) 637-3541
Courtroom 4   3rd Floor   Magistrate Judge Brazil (510) 637-3639

**CLERK OF COURT:** Enter through Rotunda from Plaza, turn left into South Tower, bear right to security check point. 4th Floor, Room 400S. Information: (510) 637-3530

**U.S. ATTORNEY:** Enter through Rotunda from Plaza, turn left into South Tower, bear right to security check point. 3rd Floor, Room 340S. Information: (510) 637-3680

**FEDERAL PUBLIC DEFENDER:** Enter from Plaza into Courthouse on left. 2nd Floor Courthouse, Room 200C. Information: (510) 637-3500

**U.S. PROBATION:** Enter through Rotunda from Plaza, turn left into South Tower, bear right to security check point. 2nd Floor, Room 220S. Information: (510) 637-3600

**PRE-TRIAL SERVICES:** Enter from Plaza into Courthouse on left. 1st Floor Courthouse, Room 100C. Information: (510) 637-3750

**U.S. MARSHAL:** Enter from Plaza into Courthouse on left. 1st Floor Courthouse, Room 150C. Information: (510) 637-3650

*If security check is closed, enter Courthouse from Plaza

# PUBLIC NOTICE

## MAGISTRATE JUDGE

## U.S. DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

The current term of office of United States Magistrate Judge Richard Seeborg is due to expire on February 8, 2009.  The United States District Court is required by law to establish a panel of citizens to consider the reappointment of the magistrate judge to a new 8-year term.

The duties of the magistrate judge position include the following:  1) conduct of most preliminary proceedings in criminal cases; 2) trial and disposition of misdemeanor cases; 3) conduct of various pretrial matters and evidentiary proceedings on delegation from the judges of the district court; 4) trial and disposition of civil cases upon consent of the litigants; and 5) conduct of settlement conferences.

Comments from members of the bar and the public are invited as to whether the incumbent magistrate judge should be recommended by the panel for reappointment by the court and should be submitted in writing no later than **July 18, 2008** to:  **Richard W. Wieking, Clerk of the Court, United States District Court, 450 Golden Gate Avenue, P.O. Box 36060, San Francisco, CA 94102.**



# U.S. District Court Northern California

## ECF Registration Information Handout

The case you are participating in has been designated for this court's Electronic Case Filing (ECF) Program, pursuant to Civil Local Rule 5-4 and General Order 45. <u>This means that you **must**</u> (check off the boxes ☑ when done):

☐ **1) Serve** <u>this</u> ECF Registration Information Handout on **all** parties in the case along with the complaint, or for removals, the removal notice. DO NOT serve the efiler application form, just this handout.

<u>Each attorney representing a party must also:</u>

☐ **2) Register** to become an efiler by filling out the efiler application form. Follow ALL the instructions on the form carefully. If you are already registered in this district, <u>do not</u> register again, your registration is valid for life on all ECF cases in this district.

☐ **3) Email** (do not efile) the complaint and, for removals, the removal notice and all attachments, in PDF format within ten business days, following the instructions below. You do not need to wait for your registration to be completed to email the court.

☐ **4)** Access dockets and documents using **PACER** (Public Access to Court Electronic Records). If your firm already has a PACER account, please use that – it is not necessary to have an individual account. PACER registration is free. If you need to establish or check on an account, visit: **http://pacer.psc.uscourts.gov** or call **(800) 676-6856**.

BY SIGNING AND SUBMITTING TO THE COURT A REQUEST FOR AN ECF USER ID AND PASSWORD, YOU CONSENT TO ENTRY OF YOUR E-MAIL ADDRESS INTO THE COURT'S ELECTRONIC SERVICE REGISTRY FOR ELECTRONIC SERVICE ON YOU OF ALL E-FILED PAPERS, PURSUANT TO RULES 77 and 5(b)(2)(D) (eff. 12.1.01) OF THE FEDERAL RULES OF CIVIL PROCEDURE.

**All subsequent papers submitted by attorneys in this case shall be filed electronically. Unrepresented litigants must file and serve in paper form, unless prior leave to file electronically is obtained from the assigned judge.**

ECF registration forms, interactive tutorials and complete instructions for efiling may be found on the ECF website: **http://ecf.cand.uscourts.gov**

**Submitting Initiating Documents**

PDF versions of all the initiating documents originally submitted to the court (Complaint or Notice of Removal, exhibits, etc.) must be **emailed (not efiled)** to the **PDF email box for the presiding judge** (not the referring judge, if there is one) **within 10 (ten) business days** of the opening of your case. For a complete list of the email addresses, please go to: **http://ecf.cand.uscourts.gov** and click on **[Judges]**.

You must include the case number and judge's initials in the subject line of all relevant emails to the court. You do not need to wait for your registration to email these documents.

These documents must be emailed instead of e-filed to prevent duplicate entries in the ECF system. All other documents must be e-filed from then on. You do not need to efile or email the Civil Cover Sheet, Summons, or any documents issued by the court at case opening; note that you do need to efile the Summons Returned.

**Converting Documents to PDF**

Conversion of a word processing document to a PDF file is required before any documents may be submitted to the Court's electronic filing system. Instructions for creating PDF files can be found at the ECF web site: **http://ecf.cand.uscourts.gov**, and click on **[FAQ]**.

**Email Guidelines:** When sending an email to the court, the subject line of the email **must** contain the **case number, judge's initials** and the **type of document(s)** you are sending, and/or the topic of the email.

**Examples:** The examples below assume your case number is 03-09999 before the Honorable Charles R. Breyer:

| Type of Document | Email Subject Line Text |
|---|---|
| Complaint Only | 03-09999 CRB Complaint |
| Complaint and Notice of Related Case | 03-09999 CRB Complaint, Related Case |
| Complaint and Motion for Temporary Restraining Order | 03-09999 CRB Complaint, TRO |

**Questions**
Almost all questions can be answered in our **FAQ**s at
**http://ecf.cand.uscourts.gov**, please check them first.

You may also email the ECF Help Desk at ECFhelpdesk@cand.uscourts.gov or
call the toll-free ECF Help Desk number at: (866) 638-7829.

The ECF Help Desk is staffed Mondays through Fridays from
9:00am to 4:00pm Pacific time, excluding court holidays.



United States District Court

Northern District of California

# Consenting To A

# Magistrate Judge's

# Jurisdiction

# In The Northern District

# Of California

**United States District Court**

450 Golden Gate Avenue   San Francisco   California   94102

Phone: 415-522-2000

Fax: 415-522-3605

Print Date: April 2008

# Table of Contents

A Message from the Chief Judge of the
U.S. District Court ................................................ 4

How Consent Jurisdiction Works ...................... 6

Potential Benefits of Consenting To Magistrate Judge
Jurisdiction ........................................................... 7

Magistrate Judge Brazil ...................................... 9

Magistrate Judge Chen ....................................... 10

Magistrate Judge James ...................................... 11

Magistrate Judge Laporte .................................... 12

Magistrate Judge Larson ...................................... 13

Magistrate Judge Lloyd ........................................ 14

Magistrate Judge Seeborg .................................... 15

Magistrate Judge Spero ....................................... 16

Magistrate Judge Trumbull ................................... 17

Magistrate Judge Vadas ....................................... 18

Magistrate Judge Zimmerman ............................... 19

# A Message from the Chief Judge

# of the U.S. District Court

As you embark on civil litigation in the United States District Court for the Northern District of California—whether as a party to a lawsuit or as an attorney—I encourage you to familiarize yourself with the range of services provided by the court's magistrate judges and especially to consider consenting to have a magistrate judge handle all aspects of your case, up to and including dispositive motions, jury or court trial and the entry of judgment.

The Northern District is one of the few federal trial courts in the country to assign a wide range of civil cases directly to magistrate judges upon filing. As a consequence, the magistrate judges have direct experience with nearly all types of civil matters filed in our court. Because our court is very busy, agreeing to proceed before a magistrate judge often means that the case will be resolved more quickly than if the case remained before a district judge. While consent is customarily given soon after a case is filed, parties may consent to have a magistrate judge preside over their case at any point in the proceedings.

Every magistrate judge in the Northern District underwent a highly competitive selection process and had years of litigation experience before being appointed to the bench. As the biographies that follow demonstrate, each is active in law school teaching and continuing legal education for attorneys. Many have been appointed to important committees within the federal courts.

Most have completed at least one term as a magistrate judge and have been reappointed based on detailed, confidential feedback from the bar establishing satisfaction with their work—including their work on dispositive motions and trials. Combined, the Northern District's magistrate judges bring a total of 125 years of federal judicial experience to their work at our court. Each is equipped to handle the full range of issues presented to our court.

Vaughn R Walker

Chief Judge

4

5

# HOW CONSENT JURISDICTION WORKS

Since 1979, the parties in a civil action have had the option of consenting to have all aspects of their case, including trial, handled by a United States magistrate judge.[1] The Northern District of California has been one of the leaders nationwide in implementing this process. When a civil action is filed in this District, ordinarily it will be randomly assigned for all purposes to either a district judge or a magistrate judge.[2] By local practice, a magistrate judge is assigned a civil caseload approximately 30% that of a district judge's civil caseload, in recognition of a magistrate judge's other duties, such as presiding over settlement conferences. Each magistrate judge typically has about 100 consent cases. In 2007, the magistrate judges completed handling almost 800 civil cases in which they had exercised consent jurisdiction. When a case is initially assigned to a magistrate judge, the plaintiff is given a form to use to either consent to or decline magistrate judge jurisdiction.[3] Plaintiff is also required to serve that form on each defendant. Each party should make a decision regarding magistrate judge jurisdiction as soon as possible, and in any event prior to the case management conference which is generally held about 100 days after the case is filed. Civil L.R. 73-1.

If all parties consent to magistrate jurisdiction, then the magistrate judge to whom the case is assigned will preside over all aspects of the case, through trial. F.R.Civ.P. 73(b). An appeal from the magistrate judge's rulings is made to the appropriate appellate court exactly as if the rulings were from a district judge. F.R.Civ.P. 73(c).

A civil case initially assigned to a district judge may also be reassigned to a magistrate judge if all parties consent to magistrate judge jurisdiction. The parties should expect the district judge to ask at the case management conference whether they have considered consenting to a magistrate judge jurisdiction.

Each magistrate judge has an assigned courtroom deputy to accommodate civil jury trials. Each magistrate judge has at least one law clerk. Many have a second law clerk in lieu of a secretary.

Magistrate judges are fully integrated into the court's administration, serving on all court committees and chairing some of them.

# POTENTIAL BENEFITS OF CONSENTING TO MAGISTRATE JUDGE JURISDICTION

This District has always recruited experienced trial attorneys of the highest caliber who undergo a merit selection process before being appointed as a magistrate judge. Because of their diverse experiences while in practice and while presiding over civil matters including trials, this District's magistrate judges are able to preside over all types of civil litigation. The biographies of the current magistrate judges are set forth below.

Parties that consent to have their case tried before a magistrate judge will receive a date certain for trial. The right to a speedy trial in felony criminal matters requires district judges to give statutory priority to trying those cases, which can sometimes require that civil trial dates be moved. Unlike district judges, magistrate judges do not preside over felony criminal matters.

The historical experience in this District has been that our magistrate judges have virtually always met their scheduled trial dates. Because magistrate judges' trial dockets are generally less crowded than those of district court judges, they are often able to schedule a trial within a year of the filing of the complaint.

## ENDNOTES

1) Federal Magistrate Act of 1979, 28 U.S.C § 636(c)(1). See also F.R.Civ.P. 73(b).

2) District Judges, sometimes called Article III Judges, are appointed by the President, confirmed with the advice and consent of the Senate and hold their position for life. Magistrate Judges are appointed by the District Judges of each district following a merit selection process and serve for a period of eight years, subject to reappointment.

3) If the case has been removed from state court, the form is given to the removing party, who is required to serve it on all other parties.

8

## WAYNE D. BRAZIL



<span>M</span>agistrate Judge Wayne Brazil was appointed in 1984. He has been the Northern District's ADR Magistrate Judge since the late 1980's. He has presided over jury and court trials in a wide range of civil and criminal cases, including patent, trade secrets, trademark, commercial contract, civil rights, employment, personal injury, maritime, and tax. He has hosted more than 1,500 settlement conferences and published opinions in intellectual property, insurance, civil rights, maritime law, privileges, work product, civil discovery, and case management.

After receiving a B.A. from Stanford, Judge Brazil got his Ph.D. and M.A. from Harvard and his J.D. from Boalt Hall. He practiced civil litigation at Farella, Braun & Martel from 1975-1977. He then became a law professor at the University of California, Hastings College of the Law and at the University of Missouri. He taught civil procedure, constitutional law, criminal procedure, and civil rights from 1978 to 1984. He has authored books on the use of special masters in complex litigation and on settling civil suits, some 30 articles in legal periodicals, and the chapters on Rules 16 and 37 of the Federal Rules of Civil Procedure in Moore's Federal Practice, 3d Ed. He has served on the committees on Civil Rules and Evidence of the Judicial Conference of the United States and on the Ninth Circuit's ADR Committee.

9

## EDWARD M. CHEN



**M**agistrate Judge Edward M. Chen was appointed in 2001. He has presided over civil and criminal bench and jury trials, as well as hosted more than 500 settlement conferences. A 1975 Order of the Coif graduate of the University of California Boalt Hall School of Law, he clerked for the Honorable Charles B. Renfrew in the Northern District of California and then clerked for the Honorable James R. Browning in the Ninth Circuit Court of Appeals.

Judge Chen worked as a litigation associate at Coblentz, Cahen, McCabe & Breyer, and then as staff counsel of the ACLU Foundation of Northern California. He served as an officer of the California Asian American Judges Association, and as a Master of the Edward J. McFetridge American Inn of Courts. Chief Judge Schroeder of the Ninth Circuit appointed him to the Ninth Circuit Task Force on Self-Represented Litigants, and then as the chair of the Ninth Circuit Implementation Committee on Self-Represented Litigants. He was also appointed chair of the Federal Courts Committee on the California Commission on Access to Justice. He has published cases on discovery, privileges, civil procedure, civil and constitutional rights, international human rights, and criminal procedure. He has also published articles in the California Law Review, Asian Law Journal, George Mason Law Review, and Hastings Communications and Entertainment Law Journal. He has given presentations on such subjects as electronic discovery, patent litigation, employment law, civil rights, national security and constitutional rights, discrimination, case management, alternative dispute resolution, and Asian American legal history. He has taught and lectured on mediation and case management in India and Malaysia. In 2007, he was voted Judge of the Year by the Barristers Club of San Francisco.

10

## MARIA-ELENA JAMES



**M**agistrate Judge Maria-Elena James was appointed in 1994. She has presided over numerous cases and conducted thousands of settlement conferences. Outside the courtroom, she teaches a number of classes at three Bay Area law schools: University of California Hastings, University of San Francisco, and Golden Gate University. She also co-created a course called *The Roles of Referees and Commissioners* and taught the course, along with another course, at the California Judicial Education and Research College.

A 1978 graduate of the University of San Francisco Law School, she served as director of the Small Claims Court Education Project in the Consumer Fraud Unit of the San Francisco District Attorney's Office. She went on to serve as a deputy public defender in San Francisco, staff attorney for the National Labor Relations Board, and Deputy City Attorney as well as supervising attorney in San Francisco. She then served as a Commissioner in the San Francisco Superior Court for six years. She volunteers as a mock trial judge for all grades of students and serves as a mentor to law students. Her speaking engagements include a 2006 panel on Comparative Racial Justice at the University of Paris, Nanterre and the Assemblee Nationale.

11

## ELIZABETH D. LAPORTE



<span style="font-size:larger">M</span>agistrate Judge Elizabeth Laporte was appointed in 1998. She has presided over numerous civil cases through trial or other disposition, including patent, trademark, copyright, employment, civil rights and environmental cases. She also has conducted over 1000 settlement conferences, handled criminal matters, and resolved discovery disputes.

A 1982 graduate of Yale Law School and a Marshall Scholar, with an M.A. in Politics and Economics from Oxford, she clerked for the Honorable Marilyn Hall Patel in the Northern District of California. She was a partner at the boutique litigation firm of Turner & Brorby, and an Administrative Law Judge for the California Department of Insurance. In 1996, she began serving as Chief of Special Litigation for the San Francisco City Attorney's Office, and was named a Lawyer of the Year by *California Lawyer*. She has authored articles on patent litigation and settlement in the *Northern California ABTL [Association of Business Trial Lawyers] Report*, and has written on e-discovery. She regularly speaks on patent litigation, settlement, e-discovery, jury trials, and other topics. She is a past chair of the Magistrate Judge Executive Board of the Ninth Circuit, and a current member of the Jury Trial Improvement Committee of the Ninth Circuit Court of Appeals, the Sedona Conference Working Group on Electronic Document Retention and Production, the Executive Committee of the Litigation Section of the Bar Association of San Francisco, and the Board of Governors for the Northern California Chapter of the Association of Business Trial Lawyers.

## JAMES LARSON



<span style="font-size:larger">M</span>agistrate Judge James Larson was appointed in 1997. He was appointed Chief Magistrate Judge in 2005 for a four year term. He has presided over criminal and civil cases, handled discovery and conducted settlement conferences in a variety of subject areas, including intellectual property, antitrust, contracts, civil rights, employment, environmental, class actions and other statutory liability. He has conducted more than 1,000 mediations and settlement conferences.

He received his undergraduate degree from Stanford University in 1965 and his J.D. from U.C.L.A. law school in 1968, where he was selected for the Moot Court Honors Program. Thereafter he worked in a number of small firms in Los Angeles and the Bay Area, handling admiralty, personal injury, civil rights and criminal matters before founding the law firm of Larson and Weinberg in San Francisco, where he remained until 1990. He then formed his own firm and worked on civil, criminal, trial and appellate cases. He has taught civil trials and criminal pre-trial procedure and has participated for many years in the Intensive Trial Advocacy Program at Cardozo Law School in New York.

Judge Larson has chaired or served on numerous court committees and has appeared on panels of judges and attorneys discussing e-discovery issues, settlement techniques, punitive damages, and bad faith litigation. In December, 2007, he and several other members of the court conducted a comprehensive mediation training program for the High Court Judges of Malaysia.

## RICHARD SEEBORG



**M**agistrate Judge Richard Seeborg was appointed in 2001. Since joining the Court, he has presided over numerous bench and jury trials and has conducted hundreds of settlement conferences on all manner of federal civil cases. Judge Seeborg received his B.A., *summa cum laude*, Phi Beta Kappa, from Yale College in 1978. He then went to Columbia University School of Law in 1981, where he was a Harlan Fiske Stone Scholar. Following graduation from law school he served as a law clerk to the Honorable Judge John H. Pratt, district court judge in Washington, D.C. In 1982, he joined Morrison & Foerster's San Francisco office in the litigation department, becoming a partner in 1987.

From 1991 to 1998, Judge Seeborg served as an Assistant U.S. Attorney for the Northern District of California in San Jose. In that capacity, he acted as lead prosecutor on a wide range of matters including complex white collar criminal cases. He re-joined Morrison & Foerster in March 1998, where he resumed a litigation practice in the fields of securities, intellectual property, and general commercial matters.

Judge Seeborg has been a member of the Adjunct Faculty at Santa Clara University School of Law where he has served as co-instructor for a course on Federal Criminal Litigation and has served as co-chair of the Federal Courts Committee of the Santa Clara County Bar Association and as a member of the Executive Committee of Magistrate Judges for the Ninth Circuit. At present, he is a member of the Working Group on Electronic Public Access for the United States Courts and a member the Ninth Circuit Jury Instructions Committee. He is a co-author of Federal Pretrial Civil Procedure in California, a four-volume treatise published by Lexis Nexis.

## HOWARD R. LLOYD



**M**agistrate Judge Howard R. Lloyd was appointed in 2002. He has presided over a variety of civil and criminal trials and has extensive discovery as well as case-dispositive law and motion experience. He has presided over hundreds of settlement conferences in a wide variety of civil cases.

Judge Lloyd earned his undergraduate degree at the College of William and Mary, graduating Phi Beta Kappa, and his law degree from the University of Michigan Law School. He then worked as a civil trial and appellate lawyer for 30 years with a prominent San Jose law firm and personally tried many cases and argued dozens of appeals. He practiced in all areas, but especially employment, intellectual property, and commercial law. He then worked for 2 years as an independent and full time arbitrator and mediator. While in private practice Judge Lloyd was selected for voluntary service as an Early Neutral Evaluator (N.D. CA), mediator (California Court of Appeals), and Settlement Judge Pro Tem (Santa Clara County Superior Court). He is a frequent presenter at continuing education courses for attorneys and currently teaches at Santa Clara University Law School.

## PATRICIA V. TRUMBULL



Magistrate Judge Patricia V. Trumbull was appointed in 1987. She served as Chief Magistrate Judge from 2001 to 2005. She has presided over numerous civil and criminal trials and thousands of settlement conferences.

Judge Trumbull received her undergraduate degree from University of California Davis and her law degree. at the Georgetown University Law Center in Washington, D.C. While at Georgetown, she interned at the Department of Justice. After graduating, she spent two years as a law clerk to the Honorable Spencer Williams of the U.S. District Court of Northern California. Following the clerkship, she worked for 12 years as an Assistant Federal Public Defender. She has served on numerous court committees and participated in many panel discussions on a variety of litigation issues.

17

## JOSEPH C. SPERO



Magistrate Judge Joseph C. Spero was appointed in 1999. He has presided over criminal and civil trials in a variety of subject areas, including patent, employment, civil rights, commercial contract, trademark, and federal misdemeanor cases. He has participated in over 1000 settlement conferences. He serves as chairman of the court's Capital Habeas Committee, and as a member of the court's Technology and Practice Committees.

A 1981 graduate of Columbia University School of Law, he clerked for the United States Court of Appeals for the Ninth Circuit. He worked as an associate at Skadden, Arps, Slate, Meagher & Flom, and as associate then partner at Coblentz, Cahen, McCabe & Breyer (now Coblentz, Patch, Duffy & Bass). While in private practice, he trained as a mediator at Harvard Law School and served as a mediator in the Northern District's Alternative Dispute Resolution Program. He also served as a Judge Pro-Tem for the San Francisco County Superior Court. He served as pro bono counsel in a variety of cases, including federal capital habeas matters. As a result, he received the Thurgood Marshall Award from the Bar Association of the City of New York.

16

## NANDOR J. VADAS



**M**agistrate Judge Nandor J. Vadas, a part-time magistrate judge in Eureka, California was appointed in 2004. Although he maintains his chambers in Eureka, he frequently sits in San Francisco. As a magistrate judge he has presided over issues involving civil rights, employment discrimination, Indian law, Endangered Species Act violations, as well as criminal and civil settlement conferences.

Judge Vadas received his undergraduate degree at the University of California at Santa Cruz in 1974 and his law degree from the University of California, Hastings College of the Law in 1978. Following law school he was a state and federal prosecutor for twenty-one years, where he gained criminal jury trial and appellate experience. He also spent five years in family law and juvenile dependency. He also has experience as an instructor at the College of the Redwoods Police Academy.

He is a member of the Magistrate Judges' Advisory Committee to the Federal Judicial Conferences.

## BERNARD ZIMMERMAN

**M**agistrate Judge Bernard Zimmerman was appointed in 1995. With party consent, he has presided over a wide range of civil cases, including patent, trademark and copyright cases, class actions, contract and employment cases and civil rights, personal injury and admiralty cases. He has presided over more than 30 civil and criminal jury and bench trials and more than 1,000 settlement conferences. He chairs the court's Technology Committee and serves on the Media and Education Commitees.

A 1970 graduate of the University of Chicago Law School, he clerked for the Honorable Frederick J.R. Heebe in the Eastern District of Louisiana and then taught law at the Louisiana State University Law Center. Returning to California, he was an associate and then partner at Pillsbury Madison & Sutro where he had a general litigation practice focusing on media, banking, construction, insurance and business issues. In 1995, he served as Legal Consultant to the Third Constitutional Convention of the Commonwealth of the Northern Mariana Islands. For the past two years, he has taught Federal Pretrial Litigation at Hastings College of the Law. He is a master of the Intellectual Property Inn of Court and has participated in numerous panels addressing issues such as ADR, class actions and discovery.

G:\docs\P3323\0705981.DOC

1

**PROOF OF SERVICE**

2  STATE OF CALIFORNIA            )
                                 ) ss.
3  COUNTY OF SANTA CLARA         )

4        I am now, and at all times herein mentioned, was over the age of eighteen (18) years, a resident
   of the County of Santa Clara, not a party to the within action or cause; and that my business address is
5  1451 Grant Road, Mountain View, CA 94040. On the below named date, I caused to be served a copy
   of the attached:

6

7  CERTIFICATE OF SERVICE OF NOTICE OF ADVERSE PARTY OF REMOVAL TO FEDERAL
   COURT AND OTHER DOCUMENTS AS LISTED

8  on the parties in said action as follows:

9   _X_    (BY REGULAR MAIL) by placing a true copy thereof enclosed in a sealed envelope with
              postage thereon fully prepaid, for collection and mailing at my place of business following
10            ordinary business practices. Said documents will be deposited with the United States Post
              Office mailbox at Mountain View, California, addressed as follows:
11

12  ___    (BY FEDERAL EXPRESS) by placing a true copy thereof enclosed in a sealed envelope,
              prepaid, deposited with the Federal Express carrier/box at Mountain View, California,
              addressed as follows:
13

14  Attorneys for Plaintiff SECOND WALNUT            Michael J. Hughes, Esq.
    CREEK MUTUAL                                     Hughes & Gill, P.C.
15                                                   1600 South Main Street, Suite 315
                                                     Walnut Creek, CA 94596
16                                                   Telephone; (925) 926-1200
                                                     Fax: (925) 926-1202
17                                                   Email: mhughes@hughes-gill.com

18  Attorneys for Defendant TRAVELERS               Marjie D. Barrows, Esq.
    PROPERTY CASUALTY COMPANY OF                    Rudloff Wood & Barrows LLP
19  AMERICA                                         Watergate Office Towers
                                                     2000 Powell Street, Suite 900
20                                                   Emeryville, CA 94608
                                                     Phone: (510) 740-1500
21                                                   Fax: (510) 740-1501
                                                     Email: mbarrows@rwblaw.com

22

23  [ ]    [STATE] I declare under penalty of perjury under the laws of the State of California that the
              foregoing is true and correct. Executed this ___ day of June 2008, at Mountain View,
24            California.

25  [X]    [FEDERAL] I declare that I am employed in the office of a member of the bar of this Court at
              whose direction the service was made. Executed this 11th day of June 2008, at Mountain View,
26            California.

27                                                   _____
                                                     Elise Dresser
28